**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
Jerold C. Feuerstein, Esq**.**
Jason S. Leibowitz. Esq.
(212) 661-2900
(212) 661-9397 – facsimile

*Attorneys for EVFI LLC*

**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
Fred B. Ringel, Esq.
Lori A. Schwartz, Esq.
(212) 603-6300
(212) 956-2164 - facsimile

*Proposed Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————

In re:

**EAST VILLAGE PROPERTIES LLC,**
***et al.[1]*,**

                Debtors.

—————————————————————

Case No. 17-22453-rdd

(Jointly Administered)

## INTERIM STIPULATION AND ORDER BETWEEN EVF1 LLC[2] AND THE DEBTORS, (I) AUTHORIZING AND DIRECTING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION AND (III) GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  East Village Properties LLC (1437); 223 East 5th Street LLC (8999); 229 East 5th Street LLC (8348); 231 East 5th Street LLC (4013); 233 East 5th Street LLC (8999); 235 East 5th Street LLC (1702); 228 East 6th Street (2965); 66 East 7th Street LLC (1812); 27 St Marks Place LLC (1789); 334 East 9th Street LLC (7903); 253 East 10th Street LLC (4317); 325 East 12th Street LLC (0625); 327 East 12th Street LLC (7195); 329 East 12th Street LLC (0475); 510 East 12th Street LLC (1469); and 514 East 12th Street LLC (7232).

[2] EVF1 LLC was previously known as EVP1 LLC, however, on or about January 31, 2017, EVP1 LLC, filed a State of Delaware Certificate of Amendment with the State of Delaware Secretary of State Division of Corporations, whereby EVP1 LLC changed its name to EVF1 LLC.

East Village Properties LLC ("East Village"), 223 East 5th Street LLC ("223 East"), 229

East 5th Street LLC ("229 East"), 231 East 5th Street LLC ("231 East"), 233 East 5th Street LLC

("233 East"), 235 East 5th Street LLC ("235 East"), 228 East 6th Street LLC, ("228 East"). 66

East 7th Street LLC ("66 East"), 27 St. Mark's Place LLC ("27 St. Marks"), 334 East 9th Street

LLC ("327 East"), 253 East 10th Street LLC ("253 East"), 325 East 12th Street LLC ("325

East"), 327 East 12th Street LLC ("327 East"), 329 East 12th Street LLC ("329 West"), 510 East

12th Street LLC ("510 East"), and 514 East 12th Street LLC ("514 East" and together with each

of the aforementioned debtors, are collectively referred to herein as the "Debtors"), together with

the Debtors prepetition secured mortgagee, and interested party, EVF1 LLC (the "Secured

Creditor" and together with the Debtors, the "Parties") through their respective attorneys, have

entered into this Stipulation and Order (the "Stipulation") for review and consideration by the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

for the purposes of (i) authorizing the use of cash collateral (as defined herein) pursuant to 11

U.S.C. §§ 361 and 363 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

Code"); (b) approving the form of adequate protection provided to the Secured Creditor pursuant

to 11 U.S.C. §§ 361 and 363, and (c) granting related relief, and respectfully represent as

follows:

## **RECITALS**

The First Loan

**WHEREAS,** on or about September 10, 2015, the Debtors duly executed and delivered

to the Secured Creditor that certain *Mortgage Note* (the "First Note") dated September 10, 2015,

evidencing a loan (the "First Loan") in the principal amount of $89,667,660.00; and

**WHEREAS**, on or about September 10, 2015, as security for the First Note, the Debtors

duly executed and delivered that certain *Mortgage and Security Agreement* (the "<u>First Mortgage</u>", and together with the First Note, the "<u>First Loan Documents</u>") in favor of the Secured Creditor encumbering certain real properties owned by the Debtors (the "<u>Properties</u>"); and

**WHEREAS,** the Debtors failed to comply with the terms and provisions of the First Loan Documents by failing to pay the monthly interest payments which came due on July 1, 2016 and August 1, 2016 (the "<u>First Loan Default</u>"); and

**WHEREAS,** the Secured Creditor accelerated the First Loan by letter to Borrowers dated August 8, 2016; and

The Second Loan

**WHEREAS,** on or about September 10, 2015, the Debtors duly executed and delivered to the Secured Creditor, a second *Mortgage Note* (the "<u>Second Note</u>") dated September 10, 2015, evidencing a loan (the "<u>Second Loan</u>") in the principal amount of $20,000,000.00; and

**WHEREAS,** as security for the Second Note, the Debtors executed a second *Mortgage and Security Agreement* (the "<u>Second Mortgage</u>", and together with the Second Note, the "<u>Second Loan Documents</u>") in favor of the Secured Creditor encumbering the Properties; and

**WHEREAS,** Debtors failed to comply with the cross-default terms and provisions of the Second Loan Documents by failing to pay the monthly interest payments for July 1, 2016 and August 1, 2016 on the other loans set forth herein (the "<u>Second Loan Default</u>"); and

**WHEREAS,** as a result of the Second Loan Default, the Secured Creditor accelerated the Second Loan by letter to the Debtors dated August 8, 2016; and

The Third Loan

**WHEREAS,** on or about September 10, 2015, the Debtors duly executed and delivered

to the Secured Creditor, that certain *Building Loan Note* (the "Third Note") dated September 10, 2015, evidencing a loan (the "Third Loan") in the principal amount of $10,068,000.00; and

**WHEREAS,** on or about September 10, 2015, as security for the Third Note, the Debtors further duly executed and delivered that certain *Building Mortgage and Security Agreement* (the "Third Mortgage", and together with the Third Note, the "Third Loan Documents") in favor of the Secured Creditor, further encumbering the Properties; and

**WHEREAS,** Debtors further failed to comply with the terms and provisions of the Third Loan Documents, by failing to pay the monthly interest payments for July 1, 2016, and August 1, 2016 (the "Third Loan Default"); and

**WHEREAS,** as a result of the Third Loan Default, the Secured Creditor accelerated the Third Loan by letter to the Debtors dated August 8, 2016; and

The Fourth Loan

**WHEREAS,** on or about September 10, 2015, the Debtors duly executed and delivered to the Secured Creditor that certain *Project Loan Note* (the "Fourth Note") dated September 10, 2015, evidencing a loan (the "Fourth Loan") in the principal amount of $4,249,340.00; and

**WHEREAS,** on or about September 10, 2015, to secure the Fourth Note, the Debtors further executed and delivered to the Secured Creditor that certain *Project Mortgage and Security Agreement* (the "Fourth Mortgage", and together with the Fourth Note, the "Fourth Loan Documents") in favor of the Secured Creditor, further encumbering the Properties; and

**WHEREAS,** Debtors failed to comply with the terms and provisions of the Fourth Loan Documents by failing to pay the monthly interest payments for July 1, 2016 and August 1, 2016 (the "Fourth Loan Default"); and

**WHEREAS,** as a result of the Fourth Loan Default, the Secured Creditor accelerated the

Fourth Loan by letter to the Debtors dated August 8, 2016; and

The Fifth Loan

**WHEREAS,** on or about June 24, 2016, the Debtors duly executed and delivered to the Secured Creditor that certain *Mortgage Note* (the "Fifth Note" and together with the First Note, the Second Note, the Third Note and the Fourth Note, collectively, the "Notes") dated June 24, 2016, evidencing a loan (the "Fifth Loan" and together with the First Loan, the Second Loan, the Third Loan and the Fourth Loan, collectively, the "Loans") in the principal amount of $1,100,000.00; and

**WHEREAS,** on or about September 10, 2015, as security for the Fifth Note, the Debtors further executed and delivered to the Secured Creditor that certain *Mortgage and Security Agreement* (the "Fifth Mortgage", and together with the First Mortgage, the Second Mortgage, the Third Mortgage and the Fourth Mortgage, collectively. the "Mortgages") in favor of the Secured Creditor, with the Fifth Mortgage (the Fifth Mortgage together with the Fifth Note, the "Fifth Loan Documents"), further encumbering the Properties; and

**WHEREAS,** Debtors failed to comply with the cross-default terms and provisions of the Fifth Loan Documents by failing to pay the monthly interest payments for July 1, 2016 and August 1, 2016 on the other loans set forth herein (the "Fifth Loan Default" and together with all aforementioned defaults, the "Defaults"); and

**WIIEREAS,** as a result of the Fifth Loan Default, the Secured Creditor accelerated the Fifth Loan by letter to the Debtors dated August 8, 2016; and

**WHEREAS,** the Properties consist of, *inter alia,* multi-family residential apartment buildings; and

**WHEREAS,** as a result of the Defaults, the Secured Creditor commenced an action to

foreclose the Mortgages before the Supreme Court, State of New York, County of New York (the "State Court") under Index No. 850052/2107 (the "Foreclosure Action"); and

**WHEREAS,** in connection with the Foreclosure Action, an *Ex-Parte Order Appointing a Temporary Receiver in a Foreclosure Action* was entered on or about March 2, 2017, appointing Hon. Melvin L. Schweitzer as receiver (the "Receiver") over the Properties in the Foreclosure Action; and

**WHEREAS**, in connection with the Foreclosure Action, the Receiver retained Howard W. Kingsley, Esq., as legal counsel to the Receiver (the "Receiver's Counsel"); and

**WHEREAS,** on March 28, 2017 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 the Bankruptcy Code; and

**WHEREAS**, the Debtors acknowledge and agree that the Notes and the Mortgages (the "Loan Documents") are legal, valid, and binding obligations of the Debtors, and further that the Loan Documents are enforceable against the Debtors in accordance with their respective terms and the Secured Creditor's Secured Claim (defined below) is a valid claim; and

**WHEREAS**, the Debtors acknowledge and agree that the Secured Creditor has duly perfected, valid, non-avoidable, first priority liens on and security interests in any pre-petition collateral (collectively, the "Pre-Petition Liens") to secure the obligations under the Loan Documents (collectively, the "Pre-Petition Obligations"); and

**WHEREAS**, the Pre-Petition Obligations, Pre-Petition Liens, and Loan Documents are not subject to counterclaims, rights of offset, claims, or other defenses of the Debtor of any kind; and

**WHEREAS,** all cash, accounts receivable and other proceeds in the Debtors' custody, possession or control as of the Petition Date, and all cash, accounts receivable and other proceeds

coming into the Debtors' possession or control after the Petition Date, constitute cash collateral within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral"); and

**WHEREAS**, the Debtor represents that prior to the commencement of the chapter 11 case, Brookhill Management and Raphael Toledano were removed from all managerial authority of the Debtors and at the Properties; and

**WHEREAS,** the Debtors and the Secured Creditor have agreed to the Debtors' use of Cash Collateral to operate the Properties and to pay adequate protection to the Secured Creditor in accordance with the term set forth herein below, subject to the Bankruptcy Court's approval and entry of this Stipulation; and

**WHEREAS,** the Bankruptcy Court having entered an Order to Show Cause on April 12, 2017 setting an interim hearing on April 14, 2017 to consider whether to approve this Stipulation (the "First Hearing") and having directed the Debtors to provide notice thereof; and

**WHEREAS**, in addition to seeking permission to utilize Cash Collateral, the Stipulation also provides authority for the Secured Creditor to, among other things, make protective advances in order to insure, maintain and improve the ongoing operations of the Debtors under the terms and conditions set forth therein; and

**WHEREAS**, on April 14, 2017, the First Hearing on the approval of the Debtor's Motion (the "Motion") was held before the Honorable Sean H. Lane, at which time, counsel for the Debtor, the Secured Creditor, the Office of the United States Trustee ("UST"), the Office of the New York State Attorney General (the "AG"), and counsel to certain tenants at the Property represented by the Urban Justice Center ("UJC") appeared; and

**WHEREAS**, on April 24, 2017, a second interim hearing on the approval of the Debtor's Motion for approval of this Stipulation was held before the Honorable Sean H. Lane (the

{00856449.DOCX;1 }

7

"Second Hearing" and together with the First Hearing, the "Hearings"), at which hearing counsel

for the Debtor, the Secured Creditor, the UST, the AG, the UJC and Milbank, Tweed, Hadley, &

McCLoy LLP ("Milbank", and together with the UJC, "Tenant's Counsel") appeared, and

**WHEREAS**, consistent with the Bankruptcy Court's rulings on the record at the

Hearings, the Debtors and the Secured Creditor submit the following revised Stipulation

governing the use of Cash Collateral, granting adequate protection and related relief, and now,

therefore

**IT IS HEREBY STIPULATED AND AGREED,** by and between the Debtors and the

Secured Creditor as follows:

1.     The foregoing recitals are incorporated by reference herein.

2.     Upon the Debtor's unopposed Motion made at the First Hearing, the Declaration

of Philip G. Lavoie in Support of the Debtors' Motion for the Entry of an Order Approving the

Interim Stipulation and Order (a) Authorizing and Directing Use of Cash Collateral, (b)

Approving the Form of Adequate Protection and (c) Granting Related Relief [ECF Doc No. 26]

(the "Lavoie Declaration"), annexed hereto as Exhibit "C", is hereby admitted into evidence and

made part of the record of the First Hearing.

3.     The Debtors and the Secured Creditor agree that as of Petition Date, the amount

of the Secured Creditor's claims against the estates of the Debtors on account of the Loans

(before applicable legal fees and costs, unless already included in the payoff statements attached

hereto) is a sum not less than $145,428,538.38 (the "Secured Claim") as set forth in the attached

payoff statements, which sum shall continue to accrue pursuant to and in accordance with the

terms of the Loan Documents.

4.     The Debtors have an immediate need for the use of Cash Collateral for the

{00856449.DOCX;1 }

8

purpose of funding operations during the pendency of the Chapter 11 Cases, and the Debtors have requested that the Secured Creditor consent to the Debtors' use of Cash Collateral pursuant to the terms and subject to the conditions set forth herein.

5.      Based on the various acknowledgments, representations, warranties, findings, waivers, releases, and covenants contained herein, the Secured Creditor is willing to consent to the Debtors' use of Cash Collateral commencing on the date that this Stipulation is approved by the Bankruptcy Court for the limited purposes and for the term set forth herein and otherwise in accordance with the terms and subject to the conditions contained herein.

6.      The Debtors hereby agree to the full amount, extent and validity of the Secured Claim, plus any interest accrued thereon, protective advances due or to become due in accordance with this Agreement or the Loan Documents (plus any accrued interest thereon) and fees and costs due or to become due in shall be made in accordance with the applicable loan documents in favor of the Secured Creditor.

7.      In addition to the foregoing, the Debtors shall use their best efforts, consistent with their fiduciary duties, to adhere to the following agreed upon schedule, under the direction of its manager, GC Realty Advisors LLC ("GCRE"), which will require that they file with the Bankruptcy Court:

      a.   an application to set a bar date, not later than April 21, 2017; and

      b.   a complete set of schedules, statements of financial affairs and other required documents not later than April 19, 2017; and

      c.   A Plan of Reorganization (the "Plan") and Disclosure Statement pursuant to an agreement[3] (the "Agreement") between the Secured Creditor and the

---

3 The terms of which will be set forth more fully in the Debtors' Plan and Disclosure Statement.

Debtors, consistent with the Agreement and satisfactory to the Secured Creditor to be filed by the Debtors by or before May 4, 2017, <u>provided</u>, <u>however</u>, that if the Plan is not confirmed by September 15, 2017 (the "<u>Deadline</u>"), the Secured Creditor may elect not to proceed with the Plan, and in such case, will have no further obligation to perform under the Plan, and (ii) that if (a) the Secured Creditor has elected not to proceed with its obligations under the Plan on account of the Debtors' failure and/or inability to confirm the Plan by the Deadline, or (b) in the event that the Debtor revokes its Plan: then the Secured Creditor may propose its own Plan of Reorganization for the Debtors, which shall be subject to the terms and conditions of the Agreement, and, provided the Secured Creditor's Plan adheres to the Agreement, the Debtors and their affiliates shall have no right to object to such Secured Creditor's Plan.

d.  All deadlines set forth herein shall (i) be subject to the Court's calendar and availability; and (ii) be subject to extension by written agreement between Debtors and Secured Creditor without further order of the Court.

8.    The Debtors have agreed to enter into a management agreement with Silverstone Property Group, LLC ("<u>SPG</u>" and/or "<u>Managing Agent</u>") in accordance with the form of agreement attached hereto, for the purposes of permitting SPG to operate the Properties on a day to day basis, which obligations shall include, but not be limited to collection of any and all Cash Collateral generated at the Properties from the date hereof through and including the date of confirmation of any consensual Plan to be filed by the Debtors, and to pay, subject-to approval by SPG and GCRE, operating expenses and payroll.    Any surplus shall be retained by the

Secured Creditor consistent with the Agreement as additional Adequate Protection (as defined below) and any deficiency shall constitute a protective advance as defined below. SPG shall forthwith cause a flyer to be delivered to each tenant apartment and posted conspicuously at the Properties which provides, *inter alia,* the URL of SPG's web site  (http://silverstonepg.com/), information for tenants to submit requests for repairs (including its 24-hour telephone hotline number), how to contact the property manager specifically assigned to the respective building, the address and web site link for tenants to send rent payments  and any other relevant information related to the operations of the Properties.

9.      Upon the representations made on the record that Raphael Toledano ("Toledano") has consented to the entry of this order, Toledano and all persons in active concert or participation with him are hereby preliminarily enjoined and restrained, pending the Final Hearing, from (i) entering into any of the Properties, (ii) contacting any of the tenants at the Properties, (iii) collecting any rents generated by the Properties and (iv) in any way interfering with the Debtors' or SPG's operation of the Properties. The Debtors shall serve a copy of this Order upon Toledano by overnight delivery and email within forty-eight (48) hours of its entry by the Court.

10.      All Cash Collateral collected by SPG from the Properties, shall be deposited in to bank accounts to be established by SPG (the "SPG Accounts") in the name of each respective Debtor.  The SPG Accounts shall be considered debtor-in-possession accounts and the only authorized signatories of such accounts shall be authorized signatories of SPG, provided, however, that any and all disbursements made from the SPG property accounts must be approved by GCRE. as follows:  emergency repairs and ordinary course expenses shall not require GCRE approval. All other disbursements shall require retroactive approval within 48 hours of notice of

such disbursement, which notice will be provided once every calendar week.  If the Secured

Creditor or SPG does not provide such notice of disbursements once every calendar week, the

Debtor may send a seven (7) day notice to cure.  No response from GCRE shall be deemed

approval of such disbursement.  If GCRE objects to any such disbursement, such disbursement

shall be deemed a permitted protective advance which will be added to the Secured Creditor's

Secured Claim.    Regardless of their classification, SPG shall provide notice to GCRE of all

disbursements and Advances, as defined below.  GCRE shall transmit a copy of the notice in the

preceding sentence to the AG by email within ~~forty-eight (48)~~ *twenty-four (24)* hours of receipt

*if possible consistent with the religious practices of the parties involved and in any event no*

*later than forty-eight (48)*.  GCRE approvals of the Secured Creditor and/or SPG's advances

from Cash Collateral may be obtained retroactively.

11.    If the Secured Creditor believes that GCRE has acted in a manner inconsistent

with its fiduciary responsibilities to the Debtors, then the Secured Creditor may serve a notice on

GCRE with a copy to Debtors' counsel by email and overnight delivery specifying the manner in

which GCRE has allegedly so acted and the specific acts that the Secured Creditor alleges must

be taken to cure such alleged breach of duty. If such alleged breach of duty is not cured within

ten (10) business days from the receipt of such notice, then the Secured Creditor may settle an

order seeking the appointment of a Chapter 11 Trustee in the Debtors' cases by appropriate

service of a notice of settlement in accordance with the Federal Rules of Bankruptcy Procedure

and applicable local bankruptcy rule.

12.    The Debtors shall immediately provide SPG with access to, and if requested,

copies of, any and all non-privileged files in their possession related to management of the

Properties, including, but not limited to maintenance records, environmental reports or tests,

copies of all licenses and permits, personnel files, building plans, equipment manuals, records with respect to construction and/or capital improvements or expenditures at the Properties, utility bills and records, insurance claim reports and other insurance records, multiple dwelling registrations, financial reports, tenant contact information, litigation records, leases, service contracts, filings or correspondence with the New York State Division of Housing and Community Renewal, the New York City Department of Housing Preservation and Development or any other city, state or other governmental agency or department, rent rolls and/or other documents relating to income at the Properties and/or the Debtors (the "Information").  The Debtors' obligation to provide SPG with access to the Information shall continue through and including the date that the Plan is confirmed.  Notwithstanding the foregoing, upon request, the Debtors shall provide SPG with all original leases in their possession.

13.    Secured Creditor shall, in its sole discretion, be entitled to make protective advances (the "Advances" and each an "Advance") in accordance with the Loan Documents to pay outstanding pre and post-petition real estate taxes due at the Properties, or any other pre and post-petition expenses, including, without limitation, maintenance and other capital expenditures related to the Properties, provided, however, that proceeding with any capital improvement or tenant buyouts at the Properties, will in no way impair, impede, delay or in any way affect the Secured Creditor's financial ability to address health and safety issues at the Properties.

14.    Pending the entry of a final order on the Debtor's Motion, the Secured Creditor shall be permitted to pay tenant buyouts involving tenants who are currently represented by counsel in accordance with existing tenant buyout agreements/surrender agreements, after first providing five (5) days' notice to the Debtor, the AG and the UJC (except as otherwise provided hereinbelow), which notice will provide (i) the name of the tenant, (ii) the property address,(iii)

the unit related to such tenant buyout, and (iv) the tenant's attorney's contact information, provided, however, that notwithstanding the foregoing, notice will only be provided to the UJC in the event that the UJC has filed a Notice of Appearance with the Bankruptcy Court, evidencing that it has been retained by a tenant who is a party to a buyout agreement/surrender agreement to which the Secured Creditor intends to pay a tenant buyout. and such Notice of Appearance has been filed by the UJC not later than April 25, 2017 by 1:00 p.m.

15.     SPG will make good faith efforts, in consultation with the Debtor, to comply with legal requirements regarding installing and retaining appropriate superintendents and janitorial services at the Properties, as consistent with applicable law, including applicable provisions of the New York City Administrate Code §§ 27-2053(a)-(c) and 27-2054.

16.     To the extent that SPG and/or the Secured Creditor determine that their financial situation limits their ability to perform capital improvements, tenant buyouts or other capital expenditures related to the Properties and fund protective Advances related to health and safety related issues at the Properties, then SPG and the Secured Creditor will not proceed with such capital improvements or tenant buyouts, and will instead allocate funds to address health and safety related issues at the Properties.

17.     To the extent not otherwise repaid prior to the effective date of the Debtors' Plan, the amount of any such Advances will be added to the Secured Creditor's Secured Claim against the Debtors' estates as a superpriority administrative expense claim under Bankruptcy Code § 364(c)(l).  Any Advances made by the Secured Creditor may be reimbursed to the Secured Creditor from Cash Collateral collected by SPG at the Properties.

18.     Subject to SPG's ability to obtain applicable permits, SPG shall engage a carting company for the purposes of disposing of waste stored in vacant apartments at the Properties.  To

the extent that disposing of waste stored in vacant dealing with apartments at the Properties, ~~gives~~ **has given or will give** rise to lead dust, or any other hazardous conditions at the Properties, such conditions will be addressed as a health and safety issue consistent with this Stipulation.

19.      No later than ~~May 1, 2017~~ **May 14, 2017** ~~at 4:00 p.m.~~, SPG shall file with the Court, a report identifying the HPD violations at the Properties, broken down by Class "C", "B" and "A" violations and present to the Court a plan for addressing all Class "C" violations as well as violations issued by the NYC Buildings Department, Fire Department and other regulatory agencies.

20.      Secured Creditor shall, in its sole discretion but subject to its representation made in paragraph 13 above, be entitled to utilize its Cash Collateral to pay outstanding post-petition real estate taxes due at the Properties or any other post-petition expenses, including, without limitation, maintenance and other capital expenditures, related to the Properties.

21.      Any remaining sums may be utilized by the Secured Creditor to pay other post-petition obligations[4] due at the Properties or to be applied to the Secured Creditor's Secured Claim in the following order: Advances, interest, and thereafter principal.

22.      Notwithstanding the foregoing, and for the avoidance of doubt, except as provided in the Agreement at Section 2(a) with respect to the Property Related Obligations, Advances made by the Secured Creditor shall not dilute the payment of $9,500,000 to be paid to

---

[4] The Secured Creditor may make protective advances to pay certain obligations due in connection with the Properties, which include, without limitation, tenant buy out agreements, amounts due contractors in connection with the Properties, amounts due in connection with HPD liens, rent overages, prepaid rents, and security deposits (the "Property Related Obligations"), and any such advances, if made, become protective advances which amounts, to the extent not otherwise repaid prior to the effective date of the Debtors' plan of reorganization, will be added to the Secured Creditor's Secured Claims against the Debtors' estates, and such advances may diminish sums to be paid by the Secured Creditor, pursuant to, and in accordance with the Agreement, provided, however, that such advances shall not dilute the $9,500,000.00 payment to be made by Secured Creditor to the Debtors' Estates pursuant to the Agreement, inclusive of the $1,000,000.00 Carve-Out, unless provided by separate agreement between the Parties pursuant to, and/or in accordance with the Agreement.

the Debtors' Estates to fund the Debtors' Plan (inclusive of the $1,000,000 Carve-out (as hereinafter defined)).

23.     On the date that this Stipulation is entered by the Bankruptcy Court, the Secured Creditor shall transfer from the Debtors' funds currently being held in escrow by the Secured Creditor the following amounts (a) $100,000.00 to Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog") as Debtors' bankruptcy counsel and $32,000.00 to cover the Debtors' chapter 11 filing fees, and (b) $50,000.00 to Goldberg Weprin Finkel Goldstein LLP ("Goldberg Weprin"), as special counsel and conflicts counsel to the Debtors, which post-retainer retainers shall not be drawn down without prior application in accordance with sections 330 and 331 of the Bankruptcy Code.  In addition, upon the filing of the Plan, the Secured Creditor shall advance the additional sum of $100,000.00 to the Debtors' counsel which post-retainer retainers shall not be drawn down without prior application in accordance with sections 330 and 331 of the Bankruptcy Code.  The foregoing $282,000.00, (the "Initial Professional Fees") shall be advanced from, and in reduction of a sum of $675,000.00 ("Escrow Funds") currently held in escrow by the Secured Creditor. Any remaining sums from the Escrow Funds not addressed herein, shall be applied by the Secured Creditor to pay post-petition real estate taxes at the Properties.  For the avoidance of doubt, the post-petition disposition of the Escrow Funds utilized for the Initial Professional Fees shall be applied in reduction of any post-petition claims, agreed to be paid by the Secured Creditor in accordance with the Agreement.  For the avoidance of doubt, the Advance to be paid by the Secured Creditor in the amount of $282,000.00 as referenced hereinabove, shall be in reduction of the amount allocated to be paid by the Secured Creditor for administrative fees, including, Professional Fees in accordance with the Agreement.

24.     In addition, pending confirmation of the Debtors' plan, GC Realty Advisors shall continue to be the manager of all of the Debtors, responsible for all legal and financial matters, for which it will receive $10,000.00 per month for a maximum of six (6) months (or a total of $60,000.00).[5]

25.     To the extent that a reduction in the value of the Pre-Petition Liens without a corresponding reduction in the Pre-Petition Obligations owed to the Secured Creditor by the Debtors under the Pre-Petition Loan Documents (a "Diminution") exists, as adequate protection for any Diminution in the Secured Creditors collateral as security for the Loans (the "Collateral") the Secured Creditor shall receive:

a.     A superpriority administrative expense claim (the "Superpriority Claim") under Bankruptcy Code § 364(c)(l) and valid and perfected replacement security interests in and liens on, all of the Debtors' right, title and interest in and to all assets and properties of the Debtors, subject only to (i) fees due the United States Trustee, pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717 ; (ii) all accrued and unpaid claims for unpaid fees, costs, and expenses, payable to estate professionals, retained by the Debtors whose retention is approved by the Bankruptcy Court pursuant to sections 327 or 328 of the Bankruptcy Code (the "Professional Persons," and the fees, costs and expenses of Professional Persons[1], the "Professional Fees" as that term is defined in the Agreement) to the extent such Professional Fees are allowed by

---

[5] Furthermore, the Parties agree that the Secured Creditor, shall pay the first $40,000.00 out of rents generated at the Properties and the remaining $20,000.00, if needed, shall come from those sums allocated by the Parties to pay professional fees pursuant to the Agreement.
[1] The issue raised by the United States Trustee regarding a Carve-Out with respect to counsel for any Committee appointed in these cases is reserved for the Final Hearing.

the Bankruptcy Court at any time on an interim or final basis, not to exceed $1,000,000.00;[2] (iii) the fees due GC Realty Advisors (collectively, the "Carve-Out"), provided the Professionals are not in default under the terms of the Agreement and (iv) no more than $25,000.00 for the commissions, fees and expenses of any chapter 7 trustee appointed in these cases, provided, however, that none of those funds may be used to challenge or object to the Secured Creditor's claims and liens, and provided further, that the Secured Creditor has no liability for, or obligation to advance such funds.    From and after the declaration of any Event of Default, the Secured Creditor shall still be responsible for payment of the Carve Out up to the amount of $1,000,000.00[3].  For the avoidance of doubt, provided the Professionals and the Debtor comply with the Agreement, the Carve Out shall be senior to any claims arising under or relating to any liens securing the Secured Creditor's Collateral including, without limitation, any administrative or superpriority claims and all forms of adequate protection liens or security interests and shall not be diminished due to any protective advances made by the Secured Creditor due to alleged cash shortfalls at the Properties funded by the Secured Creditor through protective advances or otherwise;

b.  valid perfected and enforceable security interests (the "Adequate Protection Liens") on all of the Debtors' pre- and post-petition assets presently owned or hereinafter acquired, wherever located, of any kind and nature, including but not limited to the Collateral described in the Loan Documents together with

---

[2] Inclusive of the Initial Professional Fees referred to in ¶ 25.
[3] Inclusive of the Initial Professional Fees referred to in ¶ 25.

the proceeds and products thereof, including but not limited to accounts receivable and rental income, wherever located whether in the Debtors' possession or that of third parties, under Bankruptcy Code §§ 364(c)(2) and (3); provided, however, that such replacement liens and security interests shall not attach to any claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549 or the proceeds thereof.

26.     Within three (3) business days of this Stipulation being entered, the Debtors shall turnover any income and/or Cash Collateral in their possession as of the Petition Date to SPG for deposit into the appropriate accounts for the respective Debtors from which each of the Debtors' operations are being funded.  In the event that the Debtors receive any Cash Collateral after this Stipulation is entered, the Debtors shall similarly turn same over to SPG for deposit into the Debtors respective operating accounts within three (3) business days of receiving same.

27.     The Debtors are authorized, deemed to ratify, and adopt the Loan Documents as modified and supplemented herein. Except as specifically and expressly modified herein, the Secured Creditor's rights and remedies and the Debtors' obligations, consents, and requirements shall be governed in all respects by the terms and conditions of the Loan Documents, which are deemed incorporated herein, and which shall continue and be in full force and effect with respect to the Debtors' use of Cash Collateral. The Debtors assert that the Loan Documents, (as modified and supplemented herein), shall constitute valid, binding, and enforceable obligations of the Debtors in accordance with their terms. The Debtors are authorized to do and perform all acts, to make, execute, and deliver any and all agreements, assignments, instruments and documents and to pay all filing fees and recording fees to give effect to any of the terms and conditions of the Loan Documents as modified and supplemented herein. To the extent necessary, each officer of

{00856449.DOCX;1 }

the Debtors, and such other individuals as may be so authorized by the Debtors, are hereby authorized to execute and deliver each document necessary with respect to the Debtors' use of Cash Collateral - such execution and delivery to be conclusive of their respective authority to act in the names, and on the Debtors' behalf.

28.    The acknowledgments, representations, warranties, agreements, and findings made above shall be binding on Debtors and their estates, creditors and any official committee of unsecured creditors appointed in these Chapter 11 Cases (a "Committee"), and any trustee subsequently appointed in these Chapter 11 Cases, provided, however, that if a Committee is appointed, the Committee (or if a Committee is not appointed, any party in interest) shall have ninety (90) days from the date of entry of the final order on this Stipulation to investigate and challenge the Pre-Petition Obligations, Pre-Petition Liens, and Loan Documents and any of the other acknowledgements, representations, warranties, agreements, waivers and findings made above and bring any appropriate proceeding or thereafter be bound by the acknowledgments, representations, warranties, agreements, waivers and findings made in this stipulation and order (the "Challenge Period").

29.    Subject to expiration of the Challenge Period, this Stipulation shall be sufficient evidence of the Secured Creditor's perfected post-petition liens and security interests, in and to the Collateral, and shall be binding, enforceable, and perfected upon the entry of this Stipulation. The Debtors are authorized and directed to execute such documents including, without limitation, Uniform Commercial Code financing statements and to pay such costs and expenses as may be reasonably required to perfect the Secured Creditor's security interest in the Collateral as provided herein. The Secured Creditor is further authorized (but not required) to file and record financing statements with respect to such security interests and liens, all such financing

statements being deemed to have been filed or recorded on the Petition Date.

30.     The provisions of this Stipulation shall inure to the Secured Creditor's benefit and, subject to expiration of the Challenge Period, is binding upon the Debtors and their respective successors and assigns (including any trustee or other fiduciary herein appointed as the Debtors' legal representative in these Chapter 11 cases or in any succeeding cases under Chapter 7 or otherwise with respect to the properties of the estates of the Debtors).

31.     Any equity in the Collateral which the Secured Creditor holds as security for pre-Chapter 11 obligations due and owing to it from the Debtors, after payment in full of such pre Chapter 11 obligations, shall constitute further security for any and all obligations or indebtedness due and owing to the Secured Creditor from the Debtors following the Petition Date and as adequate protection to the Secured Creditor for the use by the Debtors of any Collateral which is also subject to the Secured Creditor's pre-Chapter 11 security interests, and, to the extent of the equity that the Secured Creditor may have had in the Collateral securing the pre-Chapter 11 obligations as of the Petition Date, in accordance with Bankruptcy Code § 361, any equity in the Collateral which the Secured Creditor holds as security for obligations due and owing to it from the Debtors, after payment in full of such Chapter 11 obligations, shall constitute additional security for the pre-Chapter 11 obligations of the Debtors owing to the Secured Creditor.

32.     The Secured Creditor is also hereby granted an allowed super-priority administrative claim as provided in Bankruptcy Code § 507(b) against the Debtors' respective estates which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Debtors' Chapter 11 cases or any superseding Chapter 7 cases,

including without limitation those specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 or 1114, subject to the Carve Out (as defined herein).

33.      Each of the following shall constitute an "Event of Default" for purposes of this Order:

a.  The Bankruptcy Court enters an order authorizing the sale of all, or substantially all of the Debtors' assets that does not provide for the payment in full to the Secured Creditor of its claims in cash upon the closing of the sale, unless otherwise agreed by the Secured Creditor in its sole and absolute discretion or is in accordance with the Agreement;

b.  The Bankruptcy Court enters an order granting relief from the automatic stay to a third party with respect to a material portion of the assets of the Debtors' estates;

c.  The Debtors' bankruptcy cases are either dismissed or converted to a Chapter 7 cases, pursuant to an order of the Bankruptcy Court, the effect of which has not been stayed;

d.  A Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Bankruptcy Court, the effect of which has not been stayed;

e.  This Stipulation is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of the Secured Creditor; (i) materially and adversely affect the rights of the Secured Creditor hereunder, or (ii) materially and adversely affect the priority of any or all of the Secured Creditor's claims and/or the liens granted herein;

    f.   The occurrence, subsequent to the Petition Date, of an event of default under the Loan Documents, as modified and supplemented herein. For the avoidance of doubt, any event of default under the Loan Documents occurring and/or existing as of the Petition Date or solely because of the commencement of the Debtors' bankruptcy cases on the Petition Date shall not constitute an Event of Default under this Order;

    g.   Non-compliance or default by the Debtors with any of the terms and provisions of this Order or the Loan Documents; provided, however. that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within five (5) business days after notice of such non-compliance or default is given to the Debtors through GCRE, Debtors' counsel, counsel to any Committee appointed in these cases and the United States Trustee by counsel to the Secured Creditor by electronic mail and overnight delivery

34.    With respect to an Event of Default which would result in the termination of the Debtor's ability to use cash collateral under this Stipulation and Order the Debtors shall have five (5) business days from the receipt of a default notice to cure such default. Such Notice shall be given to the Debtors by serving GCRE and the Debtors' counsel, counsel to any Committee appointed in these cases and the United States Trustee by email delivery and overnight mail.

35.    As consideration for the Secured Creditors performance under the Plan as set forth hereinabove, except as otherwise provided in the Agreement and under the terms of the Carve-Out, no expenses of administration of the Debtors' Chapter 11 cases or any future proceeding which may result from such cases including liquidation in these Chapter 11 case or

{00856449.DOCX;1 }

other proceedings under the Code, shall be charged against the Collateral pursuant to Bankruptcy Code § 506(c), upon entry of a final order, without the Secured Creditor's prior written consent and no such consent shall ever be implied from any other action, inaction or acquiescence by the Secured Creditor.

36.    The automatic stay, imposed by Bankruptcy Code § 362 shall be, and is hereby modified to the extent necessary, as to the Secured Creditor, with respect to the creation, perfection, and implementation of the Secured Creditor's post-petition liens and security interests in the Collateral, including, but not limited to its right to receive, collect and apply payment and proceeds in respect of the Secured Creditor's post-petition Collateral.

37.    There shall not at any time be entered in the Debtors' Chapter 11 cases or any succeeding Chapter 7 cases, any further order which authorizes (a) the use of cash collateral of the Debtors or the sale, lease or other disposition, out of the ordinary course of business, of property of the estates of the Debtors in which the Secured Creditor has an interest or (b) under Bankruptcy Code § 364, the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to the liens or security interests held by the Secured Creditor, or which is entitled to priority administrative status which is equal to or superior to that granted to the Secured Creditor herein, unless in either case:

    a.   the Secured Creditor shall have given its prior written consent thereto; or

    b.   such order requires that there shall first be indefeasibly paid in full to the Secured Creditor all of the Debtors' debts and obligations which arise or result from the Loan Documents and the obligations, security interests, and liens authorized herein.

38.    Commencing immediately, SPG shall remit to the Debtors and the Secured

Creditor, on or before the twenty-first (21st) day of each month, copies of any and all financial information, including but not limited to any information concerning protective advances, for the previous month, as such information relates to the Properties, to permit the Debtors to file monthly operating reports and provide disbursement information on a debtor-by-debtor basis.

39.    On or before the twenty-eighth (28th) day of each month, the Debtors shall file, or cause to be filed, monthly operating reports for the prior month with the Bankruptcy Court, and will further provide copies of such operating reports to counsel for the Secured Creditor, and the UST. The Debtors may file a single monthly operating report as required by the Operating Guidelines and Reporting Requirement for Debtors in Possession and Trustees, issued by the Executive Office of United States Trustees (rev. 11/27/13) for the jointly administered debtors. However, the monthly operating report shall be filed on a consolidating (not consolidated) basis. The report shall contain on a consolidating basis the information required for each debtor  that tracks and breaks out all of the specific information, e.g. receipts, disbursements, profit and loss statements, balance sheets and other required information on a debtor-by-debtor basis.

40.    SPG, with GCRE's approval, shall remit applicable fees to the UST as they come due, for the duration of these cases unless or until SPG is directed otherwise by further order of this Court, and such fees shall be paid by SPG either from Cash Collateral, or as part an Advance, which shall be added to the Secured Creditor's Secured Claims against the Debtors' estates.

41.    Nothing contained herein shall limit the Debtors' obligations to remain in compliance with the operational guidelines promulgated by the Office of the United States Trustee with respect to Chapter 11 Debtors or their fiduciary duties as debtors-in-possession.

42.    Upon the Bankruptcy Court *So Ordering* this Stipulation, and in furtherance of

the attached agreement, the Receiver, the Receiver's Counsel, and any other secondary appointees of the Receiver shall respectfully be discharged of their duties in connection with the Receiver, and the Properties, and the Receiver shall have no further duties and/or responsibilities with respect to the management and/or preservation of the Properties.

    a.  The Receiver and/or the Secured Creditor may present this Stipulation and Order to the Court in the Foreclosure Action to authorize the discharge of the Receiver's duties in the Foreclosure Action.

    b.  Within three (3) three business days of entry of this Stipulation, the Receiver shall provide to SPG, in writing, a list of all unpaid bills related to the operation of the Properties, and copies of any open invoices in the Receiver's possession.  In the event the Receiver receives invoices not otherwise known by him at the time this Stipulation and Order is entered, the Receiver shall promptly provide copies to the Debtor by emailing same to its counsel, c/o A. Mitchell Greene, Esq., at amg@robinsonbrog.com with a copy to counsel to the secured creditor, Jerold C. Feuerstein, Esq., at jfeuerstein@kandfllp.com.

43.    The provisions of this Stipulation and any action pursuant thereto shall be and remain in effect unimpaired and shall survive entry of any order which may be entered confirming a plan of reorganization of the Debtors or converting these cases from Chapter 11 to Chapter 7 and the terms and provisions of this Order, as well as the priorities, liens, and security interests created hereunder, shall continue in this or any other superseding case under the Code, and such liens and security interests shall maintain that priority as provided for in this Order until satisfied and discharged in full.

44.    Unless the Secured Creditor expressly consents in writing, no Plan confirmed in

these cases shall impair, effect, amend or otherwise modify the Secured Creditor's rights under this Order or the Loan Documents. Notwithstanding, this Order and the provisions contained herein shall terminate upon confirmation of the Debtor's Plan (as contemplated by the Agreement).

45.    This Stipulation has been negotiated in good faith and at arm's length between the Debtors and the Secured Creditor.

46.    No rights are created under this Stipulation for the benefit of any creditor of the Debtors, any other party-in-interest in the Debtors' bankruptcy cases, or any other persons or entities. or any direct. indirect or incidental beneficiaries thereof.

47.    The terms and conditions of this Stipulation shall: (a) be immediately enforceable pursuant to Bankruptcy Rule 8005, and (b) not be stayed absent (1) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005, and (2) a hearing upon notice to the Debtors, the Secured Creditor, and UST.

48.    The provisions of this Stipulation shall survive entry of any orders which may be entered confirming any Plan or which may be entered converting these bankruptcy cases from Chapter 11 to Chapter 7 of Bankruptcy Code.

49.    The terms and provisions of this Stipulation, as well as the claims and debtor-in-possession liens granted by this Stipulation, shall continue in these or any superseding case under the Bankruptcy Code, and shall continue notwithstanding any dismissal of the Debtors' bankruptcy cases, and such claims and debtor-in-possession liens shall maintain their priority as provided by this Stipulation until the obligations due the Secured Creditor are satisfied in full.

50.    To the extent that any of the provisions of this Stipulation shall conflict with any of the provisions of the Loan Documents, this Stipulation is deemed to control and shall

supersede the conflicting provision(s). To the extent that any of the provisions of this Stipulation shall conflict with any order of the Bankruptcy Court authorizing the Debtors to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Stipulation is deemed to control and supersede the conflicting provision(s) in said orders.

51.    The Secured Creditor and the Debtors may amend, modify or supplement any of the provisions of the Loan Documents (collectively, a "<u>Modification</u>") without further order of the Court, provided that (a) such Modification is not material, and (b) notice of such Modification is filed with the Court and given to the Committee - and if no Committee - to the 20 largest unsecured creditors, and the UST's counsel reasonably prior to the proposed effective date thereof, except that filing with the Bankruptcy Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial.

52.    The foregoing paragraph shall not apply to any forbearance or waiver by the Secured Creditor with respect to any Events of Default which may have occurred (and the foregoing provisions shall not limit or impair the Secured Creditor's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtors' agreeing to any Modification that is material.

53.    This Stipulation may be executed in any number of counterparts and by the different parties on separate counterparts.  Each such counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same Stipulation.

**54.**    A final hearing to consider the Debtors' use of Cash Collateral shall be held on **~~May 2, 2017~~ May 16, 2017 at 10:00 a.m. before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of**

{00856449.DOCX;1 }

**New York, 300 Quarropas Street, White Plains, New York 10601;** *this date is subject to change based on the Court's availability.* No later than 5:00 p.m. on ~~April 27, 2017~~ *May 12, 2017*, SPG, after consultation with the Debtors, shall circulate a proposed four (4) week budget for the period commencing May 1, 2017 via email to counsel to (i) the Office of the United States Trustee, Attn: Serene Nakano, Esq. at serene.nakano@usdoj.gov, (ii) the Office of the New York State Attorney General, Attn: Mark Ladov, Esq. at mark.ladov@ag.ny.gov, (iii) the Urban Justice Center, Attn: Stephanie Rudolph, Esq. at srudolph@urbanjustice.org, (iv) and Milbank, Tweed, Hadley, & McCLoy LLP, Attn: Justin E. Amirian, Esq. at jamirian@milbank.com, and (v) to counsel for any Unsecured Creditors' Committee, should counsel exist on that date. Objections may be lodged at the Final Hearing.

55.    The Court shall retain exclusive jurisdiction to enforce and interpret the terms of this Stipulation.

Dated: New York, New York
          April 25, 2017

**KRISS** & **FEUERSTEIN LLP**
*Attorneys for EVF1 LLP*

By: */s/ Jerold C. Feuerstein*
     Jerold C. Feuerstein, Esq**.**
     Jason S. Leibowitz. Esq.
     360 Lexington Avenue, Suite 1200
     New York, New York 10017
     (212) 661-2900

**ROBINSON BROG LEINWAND GREENE GENOVESE** & **GLUCK P.C.**
*Proposed Attorneys for the Debtors and Debtors in Possession*

By: */s/ A. Mitchell Greene*
     A. Mitchell Greene, Esq.
     Fred B. Ringel, Esq.
     Lori A. Schwartz, Esq.
     875 Third Avenue
     New York, New York 10022

jfeuerstein@kandfllp.com                          (212) 603-6300
jleibowitz@kandfllp.com                           amg@robinsonbrog.com
                                                   fbr@robinsonbrog.com
                                                   ls@robinsonbrog.com




Dated: White Plains, New York
       April 27, 2017
                                           SO ORDERED:



                                           /s/ Sean H. Lane
                                           HONORABLE SEAN H. LANE
                                           UNITED STATES BANKRUPTCY JUDGE