**MRFS LLC**
**825 Third Avenue, 37th Floor**
**New York, NY 10022**
**Telephone: 646-472-1900**

RE: Loan to: 27 St Marks Place LLC, 514 East 12th Street LLC, 223,229,231,233,235 East 5th St LLC, 66 East 7th Street LLC, 253 East 10th Street LLC, 510, 325, 327, 329 East 12th Street LLC, 228 East 6th Street LLC, 334 East 9th Street LLC

Date of Loan: 9/10/2015
Gross Loan Amount: $ 89,667,660.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | : | $ | 89,667,660.00 |
| Nominal Interest at | 9.00% | from | 9/10/2015 | to | 6/30/2016 | : | $ | 6,612,989.93 |
| Default Interest at | 24.00% | from | 7/1/2016 | to | 3/28/2017 | : | $ | 16,199,957.24 |
| Payments Received at Pay Rate | | | | | | : | $ | (4,265,122.50) |
| Late Fee | | | | | | : | $ | 14,353.75 |
| Exit Fee | | | | | | : | $ | 896,676.60 |
| Servicing Fee | | | | | | : | $ | 2,500.00 |
| Entity Fees | | | | | | : | $ | 794.08 |
| Legal Fees | | | | | | : | $ | 95,806.06 |
| Protective Advance Payments for ConEdison | | | | | | : | $ | 33,002.01 |

**Total Amount Due on:** 3/28/2017 **$ 109,258,617.16**

Please note that the per diem rate thereafter is: $59,778.44
This payoff letter shall expire on: 3/28/2017

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

**MRFS LLC**
**825 Third Avenue, 37th Floor**
**New York, NY 10022**
**Telephone: 646-472-1900**

RE: Loan to: 27 St Marks Place LLC, 514 East 12th Street LLC, 223,229,231,233,235 East 5th St LLC, 66 East 7th Street LLC, 253 East 10th Street LLC, 510, 325, 327, 329 East 12th Street LLC, 228 East 6th Street LLC, 334 East 9th Street LLC

Date of Loan: 9/10/2015
Gross Building Loan Amount: $ 10,068,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | : | $ | 2,397,453.50 |
| Nominal Interest on $65,000.00 at | 9.00% | from | 9/10/2015 | to | 9/30/2015 | : | $ | 341.25 |
| Nominal Interest on $65,000.00 at | 9.00% | from | 10/1/2015 | to | 11/23/2015 | : | $ | 877.50 |
| Nominal Interest on $362,500.00 at | 9.00% | from | 11/24/2015 | to | 2/24/2016 | : | $ | 8,428.13 |
| Nominal Interest on $799,585.00 at | 9.00% | from | 2/25/2016 | to | 4/13/2016 | : | $ | 9,794.92 |
| Nominal Interest on $1,469,092.50 at | 9.00% | from | 4/14/2016 | to | 6/22/2016 | : | $ | 25,709.12 |
| Nominal Interest on $2,397,453.50 at | 9.00% | from | 6/23/2016 | to | 6/30/2016 | : | $ | 4,794.91 |
| Default Interest at | 24.00% | from | 7/1/2016 | to | 3/28/2017 | : | $ | 433,139.93 |
| Prepayment Premium | | | | | | : | $ | 423,375.50 |
| Exit Fee | | | | | | : | $ | 100,680.00 |
| Payments Received at Pay Rate | | | | | | : | $ | (33,297.21) |
| **Total Amount Due on:** | 3/28/2017 | | | | | | $ | **3,371,297.54** |

Please note that the per diem rate thereafter is: $1,598.30
This payoff letter shall expire on: 3/28/2017

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

**MRPS LLC**
**825 Third Avenue, 37th Floor**
**New York, NY 10022**
**Telephone: 646-472-1900**

RE: Loan to: 27 St Marks Place LLC, 514 East 12th Street LLC, 223,229,231,233,235 East 5th St LLC, 66 East 7th Street LLC, 253 East 10th Street LLC, 510, 325, 327, 329 East 12th Street LLC, 228 East 6th Street LLC, 334 East 9th Street LLC

Date of Loan: 9/10/2015
Gross Project Loan Amount: $ 4,249,340.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| Description | Rate | | From | | To | | | Amount |
|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | : | $ | 3,738,261.67 |
| Nominal Interest on $369,000.00 at | 9.00% | from | 9/10/2015 | to | 9/15/2015 | : | $ | 553.50 |
| Nominal Interest on $469,000.00 at | 9.00% | from | 9/16/2015 | to | 9/24/2015 | : | $ | 1,055.25 |
| Nominal Interest on $519,000.00 at | 9.00% | from | 9/25/2015 | to | 9/30/2015 | : | $ | 778.50 |
| Nominal Interest on $519,000.00 at | 9.00% | from | 10/1/2015 | to | 10/21/2015 | : | $ | 2,724.75 |
| Nominal Interest on $551,000.00 at | 9.00% | from | 10/22/2015 | to | 10/29/2015 | : | $ | 1,102.00 |
| Nominal Interest on $646,000.00 at | 9.00% | from | 10/30/2015 | to | 11/5/2015 | : | $ | 1,130.50 |
| Nominal Interest on $669,000.00 at | 9.00% | from | 11/6/2015 | to | 11/12/2015 | : | $ | 1,170.75 |
| Nominal Interest on $826,000.00 at | 9.00% | from | 11/13/2015 | to | 11/24/2015 | : | $ | 2,478.00 |
| Nominal Interest on $1,184,347.00 at | 9.00% | from | 11/25/2015 | to | 12/6/2015 | : | $ | 3,553.04 |
| Nominal Interest on $1,366,167.00 at | 9.00% | from | 12/7/2015 | to | 12/22/2015 | : | $ | 5,464.67 |
| Nominal Interest on $1,456,167.00 at | 9.00% | from | 12/23/2015 | to | 1/7/2016 | : | $ | 5,824.67 |
| Nominal Interest on $1,858,167.00 at | 9.00% | from | 1/8/2016 | to | 2/9/2016 | : | $ | 15,329.88 |
| Nominal Interest on $2,700,167.00 at | 9.00% | from | 2/10/2016 | to | 2/24/2016 | : | $ | 10,125.63 |
| Nominal Interest on $2,993,681.53 at | 9.00% | from | 2/25/2016 | to | 2/25/2016 | : | $ | 748.42 |
| Nominal Interest on $3,376,681.53 at | 9.00% | from | 2/26/2016 | to | 3/3/2016 | : | $ | 5,909.19 |
| Nominal Interest on $3,462,014.41 at | 9.00% | from | 3/4/2016 | to | 4/13/2016 | : | $ | 35,485.65 |
| Nominal Interest on $3,718,261.67 at | 9.00% | from | 4/14/2016 | to | 6/22/2016 | : | $ | 65,069.58 |
| Nominal Interest on $3,738,261.67 at | 9.00% | from | 6/23/2016 | to | 6/30/2016 | : | $ | 7,476.52 |
| Default Interest at | 24.00% | from | 7/1/2016 | to | 3/28/2017 | : | $ | 675,379.28 |
| Exit Fee | | | | | | : | $ | 42,493.40 |
| Bank Monthly Administration Fees | | | | | | : | $ | 55,000.00 |
| Payments Received at Pay Rate | | | | | | : | $ | (110,653.66) |

**Total Amount Due on:** 3/28/2017 **$ 4,566,461.18**

Please note that the per diem rate thereafter is: $2,492.17
This payoff letter shall expire on: 3/28/2017

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

**MARKS LLC**
**825 Third Avenue, 37th Floor**
**New York, NY 10022**
**Telephone: 646-472-1900**

RE: Loan to: 27 St Marks Place LLC, 514 East 12th Street LLC, 223,229,231,233,235 East 5th St LLC, 66 East 7th Street LLC, 253 East 10th Street LLC, 510, 325, 327, 329 East 12th Street LLC, 228 East 6th Street LLC, 334 East 9th Street LLC

Date of Loan: 9/10/2015
Gross Loan Amount: $ 20,000,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | : | $ | 20,000,000.00 |
| Nominal Interest at | 20.00% | from | 9/10/2015 | to | 12/16/2015 | : | $ | 1,088,888.89 |
| Nominal Interest at | 20.25% | from | 12/17/2015 | to | 6/30/2016 | : | $ | 2,216,250.00 |
| Default Interest at | 24.00% | from | 7/1/2016 | to | 3/28/2017 | : | $ | 3,613,333.33 |
| **Total Amount Due on:** | | 3/28/2017 | | | | | **$** | **26,918,472.22** |

Please note that the per diem rate thereafter is: $13,333.33
This payoff letter shall expire on: 3/28/2017

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

**MRPS LLC**
**825 Third Avenue, 37th Floor**
**New York, NY 10022**
**Telephone: 646-472-1900**

RE: Loan to: 27 St Marks Place LLC, 514 East 12th Street LLC, 223,229,231,233,235 East 5th St LLC, 66 East 7th Street LLC, 253 East 10th Street LLC, 510, 325, 327, 329 East 12th Street LLC, 228 East 6th Street LLC, 334 East 9th Street LLC

Date of Loan: 6/24/2016
Gross Loan Amount: $ 1,100,000.00

To Whom It May Concern:

In accordance with the recent request, please be advised that the outstanding indebtedness of the Borrower under the above-referenced loan as of the date set forth below will be as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | : | $ | 1,100,000.00 |
| Nominal Interest at | 18.50% | from | 6/24/2016 | to | 6/30/2016 | : | $ | 3,956.94 |
| Default Interest at | 24.00% | from | 7/1/2016 | to | 3/28/2017 | : | $ | 198,733.33 |
| Exit Fee | | | | | | : | $ | 11,000.00 |
| **Total Amount Due on:** | | 3/28/2017 | | | | | **$** | **1,313,690.28** |

Please note that the per diem rate thereafter is: $733.33
This payoff letter shall expire on: 3/28/2017

Please be aware that we reserve the right to make adjustments to the above amounts in the event that a mathematical, typographical, or clerical error has occurred. This payoff letter shall not be binding until verified with Lender.

## PROPERTY MANAGEMENT AGREEMENT

This Property Management Agreement (this "Agreement") is made between **Silverstone Property Group, LLC** (hereinafter called "Agent") and the "Owners" and/or "Debtors"[1] and each a "Debtor") identified on that certain property management terms exhibit attached hereto as **Exhibit A** and made a part hereof (the "PMA Terms Exhibit"). Owner hereby appoints Agent as the exclusive managing agent for the "Property" identified on the PMA Terms Exhibit beginning on the "Effective Date" identified on the PMA Terms Exhibit.

**Section 1: Scope of the Agreement**

    A. Subject to and in accordance with the terms of this Agreement, Owner hereby authorizes Agent to undertake all of the following, in accordance with that certain Stipulation and Order between EVF1 LLC and Owner (I) Authorizing and Directing use of Cash Collateral, (II) Granting Adequate Protection and (III) Related Relief dated as of April ___, 2017 (the "Cash Collateral Agreement") in connection with the jointly administered bankruptcy matters of the Owner under the lead case In re East Village Properties LLC, Case No 17-22453-rdd (the "Bankruptcy"). In the event of any inconsistency between the terms of the Cash Collateral Agreement and the terms of this Agreement, the terms of the Cash Collateral Agreement shall govern.

        i. Act as the exclusive agent to lease, manage, operate and maintain the Property to the extent expressly set forth in this Agreement.

        ii. Collect and deposit all Property Funds (defined below). As used herein, "Property Funds" means all rentals, utility charges, common area charges, deposits, maintenance and insurance charges, vending machine income, license agreement income, concessionaire income, real estate and personal property tax and assessment charges, and any and all other charges and income derived from the Property.

        In accordance with the terms of the Cash Collateral Agreement, all Property Funds collected by the Agent from the Property, shall be deposited into bank accounts to be established by Agent (the "SPG Accounts") in the name of each Debtor, and each Debtor's respective real property. The SPG Accounts shall be considered debtor-in-possession accounts and the only authorized signatories of such accounts shall be authorized signatories of SPG, provided, however, that any and all disbursements made from the SPG

---

[1] The Debtors in the chapter 11 cases to which this Agreement pertains, and the last four digits of each Debtor's taxpayer identification number are as follows: East Village Properties LLC (1437); 223 East 5th Street LLC (8999); 229 East 5th Street LLC (8348); 231 East 5th Street LLC (4013); 233 East 5th Street LLC (8999); 235 East 5th Street LLC (1702); 228 East 6th Street LLC (2965); 66 East 7th Street LLC (1812); 27 St Marks Place LLC (1789); 334 East 9th Street LLC (7903); 253 East 10th Street LLC (4317); 325 East 12th Street LLC (0625); 327 East 12th Street LLC (7195); 329 East 12th Street LLC (0475); 510 East 12th Street LLC (1469); and 514 East 12th Street LLC (7232).

1

        Accounts must be approved by GCRE as the managing member for the Debtors as follows: emergency repairs and ordinary course expenses shall not require GCRE approval. All other disbursements shall require retroactive approval within 48 hours of notice of such disbursement, which notice will be provided once every calendar week. If SPG does not provide such notice of disbursements once every calendar week, the Debtor may send a seven (7) day notice to cure. No response from GCRE shall be deemed an approval of such disbursement by the Debtors. IF GCRE objects to any disbursement, such disbursement shall be deemed a permitted protective advance. Any inconsistencies between this Agreement the Cash Collateral Agreement, the Cash Collateral Agreement shall control. GCRE approvals of advances from Cash Collateral may be obtained retroactively.

    iii. Make and/or supervise the making of maintenance, repairs, renovations, alterations and improvements including, but not limited to, electrical, plumbing, steam fitting, carpentry, masonry and any other routine repairs and incidental alterations as may be required in the course of ordinary maintenance and care of the Property.

    iv. Enter into service contracts in the ordinary course, for utility readings, roofing, plumbing, electricity, gas, mechanical maintenance, elevator maintenance, insurance, tax reduction proceedings, inspections, fire protection services, telephone, window cleaning, rubbish removal, fuel oil, vermin extermination and other services or such of them as shall be advisable as determined by Agent; <u>provided</u> that such contracts are for a term of one (1) year or less. In addition, Agent shall use commercially reasonable efforts to ensure that such contracts are terminable without cause on no more than thirty (30) days' notice without payment of material penalty or premium.

B. Subject to and in accordance with this Agreement, Agent shall:

    i. List, offer for lease and renew existing leases for space in the Property, as agent for Owner and cooperate with any brokers with whom the Agent, acting as agent for Owner, in its discretion, may list space in the Property for rent.

    ii. Prepare or cause to be prepared lease documents for all space in the Property which may be rented.

    iii. Supervise the moving in and out of tenants and arrange the dates thereof so that there shall be a minimum of disturbance to the operation of the Property and of inconvenience to other tenants.

    iv. Acting as agent for Owner, bill, or cause to be billed tenants for rent and other charges.

v. Hire and retain attorneys selected by Agent on behalf of the Debtor, at Owner's cost and expense, to handle collections from tenants for rent and other charges, as well as to handle other issues with tenants, subject to Bankruptcy Court approval

vi. Acting as agent for Owner, use commercially reasonable efforts to collect or cause to be collected rent and other charges.

vii. Check all bills received for services, work, and supplies ordered in connection with maintaining and operating the Property and disburse and pay or cause to be paid all such bills as well as all other Operating Expenses, as and when the same shall become due and payable, but only to the extent of funds available from receipts derived from the Property or funds supplied by Owner. As used herein, "Operating Expenses" means the following: all costs and expenses of maintaining and operating the Property, including without limitation, (i) each and every installment payable under or pursuant to each mortgage or ground lease affecting the Property, (ii) water charges, (iii) steam charges, (iv) insurance premiums, (v) sewer rents, (vi) assessments, (vii) real estate taxes and assessments levied against the Property (provided that Agent shall take such actions with respect to protesting such taxes or the assessments upon which they are based as may be directed by Owner), (viii) advertising expenses, (ix) expenses for repairs and maintenance, (x) all payments due under contracts entered into by Agent on behalf of Owner as contemplated by this Agreement, (xi) rental sales tax with respect to Property leases (if applicable), and (xii) all operating expenses incurred in the proper management, operation or protection of the Property.

viii. Consider and, when reasonable and consistent with the leases of the tenants occupying the Property, as the agent for Owner, attend to complaints of tenants; any costs and expenses incurred by the Agent in this regard shall be at the Owner's expense.

ix. Maintain records to properly account for income and expenses relating to the Property.

x. Cause the Property to be maintained in good condition.

xi. Agent shall maintain complete, accurate and separate books and records of account for the Property covering the renting, maintenance and operation of the Property. The accounting entries in these books and records shall be supported by documentation sufficient to ascertain that the entries are properly and accurately recorded for the Property. Agent shall keep copies of all the Property records on a current basis.

    xii. Agent shall Provide to Owner within a reasonable time after request therefor, such monthly, quarterly and/or annual operating statements with respect to the Property as Owner shall reasonably request.

**Section 2: Compensation**

The compensation set forth in this Section 2 shall be paid in accordance with the terms of the Cash Collateral Agreement.

A. <u>Management Fee</u>:

    i. During the term of this Agreement, the Owner shall pay to the Agent the "Management Fee" identified on the PMA Terms Exhibit.

    ii. Agent may at any time after the first day of any month deduct and pay from the SPG Accounts, monthly in arrears, an amount equal to the Management Fee for the preceding month.

B. <u>Leasing Fee</u>: Upon the execution of any new Rent/Lease Agreement ("RLA"), Owner shall pay Agent the applicable fee as set forth in the "Leasing Fee" Section of the PMA Terms Exhibit for each new residential unit and/or commercial lease for costs associated with the application, credit checks, marketing, showings and broker interactions required to secure qualified tenants. Owner shall pay Agent the applicable fee as set forth in the "Leasing Fee" Section of the PMA Terms Exhibit for renewals of Residential Units and Commercial Units. All such amounts may be deducted by Agent from the SPG Accounts as and when incurred.

C. Owner shall reimburse Agent for reasonable office overhead.

**Section 3: Term of Agreement**

A. Subject to subsection B below, the term of this Agreement shall commence on the Effective Date and shall continue for the number of months set forth on the PMA Terms Exhibit, and will thereafter automatically renew for one (1) year periods, unless terminated (after the applicable term or renewal period only) by either party no less than thirty (30) days prior to any expiration.

B. <u>Termination</u>: This Agreement may not be terminated, except with the approval of the bankruptcy court overseeing the bankruptcy of the Owner or upon the earlier of (i) confirmation of the Plan or (ii) sale of the property, in accordance with the Bankruptcy (the "Bankruptcy Court"),

C. Upon any termination of this Agreement, the parties shall account to each other with respect to all uncompleted business (including, but not limited to, payment by the Owner of all amounts payable to the Agent or any other party under this Agreement), and the Agent shall deliver to the Owner all leases, permits,

4

subleases, corporate files, plans, licenses, contracts, correspondence, books and records and other instruments relating to the Property and the Owner that may be in the possession of the Agent, as well as all equipment, supplies, keys, locks, safety-combinations, and advertising and promotional materials developed, maintained, kept or possessed by Agent with respect to the Property. The Agent shall deliver to the Owner:

i. a final accounting, reflecting the income and expenses of the Property up to the effective date of termination, which accounting shall be delivered to the Owner within thirty (30) days after such effective date;

ii. any balance of monies of the Owner held by the Agent with respect to the Property (less monies owed), which monies shall be delivered to the Owner promptly upon such termination; and

iii. any lists or information prepared by Agent with respect to prospective tenants of the Property.

**Section 4: General Provisions**

A. **Representations:** Each person signing this Agreement on behalf of Owner or Agent hereby warrants and represents to the other party hereto that he or she has the lawful and proper responsibility and authority to execute this Agreement as provided herein. In addition, if either party has executed this Agreement as a corporation, partnership, or limited liability company, such party further represents and warrants that (i) it is duly authorized and existing under the laws of the applicable state of its organization, (ii) it is in good standing under the laws of such applicable state, (iii) if required by applicable law, it is qualified to do business in the state in which the Property is situated, (iv) it has full right and authority to execute this Agreement, and (v) this Agreement constitutes a valid and binding obligation, enforceable in accordance with its terms.

B. **Access and Records:** Owner shall provide to Agent 24/7 access to the Property and Owner shall provide access and copies of all records for the Property in Owner's possession to Agent within a reasonable time after the Effective Date.

C. **Attorney's Fees**: If either party shall institute any action or proceeding against the other relating to the provisions of this Agreement, the unsuccessful party in the action or proceeding shall reimburse the prevailing party for all reasonable expenses and attorneys' fees and disbursements.

D. **Assignment; Successors and Assigns:** Neither party shall have the right to assign this Agreement without the prior written consent of (a) the other party and (b) the Bankruptcy Court.

E. **Governing Law:** This Agreement shall be governed by the laws of the State of New York.

F.  **Independent Contractor Status:** This Agreement shall not in any manner be construed to be a partnership agreement and both parties expressly agree that this Agreement establishes an independent contractor relationship.

G.  **Indemnity; Insurance**:

   (i)   The Owner will indemnify, defend and hold harmless the Agent and its directors, officers, managers, members and employees from cost, loss, damage or expense (including, but not limited to, reasonable attorney's fees and disbursements) resulting from (i) fraud, willful misconduct or gross negligence of the Owner, or (ii) any action or claim against the Agent arising out of the performance of the Agent's obligations hereunder; provided that such performance was within the scope of the Agent's authority under this Agreement or based upon the direction of the Owner or the Bankruptcy Court, and such action or claim does not arise, in whole or in part, due to fraud, willful misconduct or gross negligence on the part of the Agent, or any of Agent's employees or agents. The provisions of this Section shall survive the expiration or sooner termination of this Agreement.

   (ii)  Agent will indemnify, defend and hold harmless the Owner and each of its directors, officers, managers, members and employees from cost, loss, damage or expense (including, but not limited to, reasonable attorney's fees and disbursements) resulting from (i) fraud, willful misconduct or gross negligence on the part of the Agent, or any of Agent's employees or agents, (ii) any act or omission adjudged to be a material breach by Agent or its officers, directors, agents, or employees, of the terms of this Agreement. The provisions of this Section shall survive the expiration or sooner termination of this Agreement.

   (iii) Agent shall maintain in effect throughout the term of this Agreement, insurance policies in compliance with the insurance requirements described on Exhibit B attached hereto. Owner shall reimburse Agent for the costs and expenses associated with the insurance required by this Agreement.

   (iv)  Owner and Agent (each, a "Waiving Party") each hereby waives and releases all rights of recovery against the other and the other's agents and employees on account of loss and damage to the property of the Waiving Party to the extent that such loss or damage is insured against under any insurance policies carried by the Waiving Party; provided, however, that the foregoing waiver shall not apply to the extent of deductibles under any such policies. By this waiver it is the intent of the parties that neither Owner nor Agent or their respective agents or employees shall be liable to the Waiving Party or any insurance company (by way of subrogation or otherwise) insuring the Waiving Party for any loss or damage actually insured against

6

under any such insurance policies, even though such loss or damage might be occasioned by the negligence of the other party, or its agents or employees.

(v) Owner shall include in each of its policies of property damage insurance for the Property, including rent insurance, a waiver of the insurer's right of subrogation against Agent, and the officers, directors, managers, members and employees of Agent if such waiver is obtainable without material cost, or, if such waiver at any time is or becomes unobtainable or is obtainable only at a material cost, (i) an express agreement that such policy shall not be invalidated if the insured waives or has waived before the loss the right of recovery against any party responsible for an insured casualty, or (ii) any other form of permission for the release of such responsible party, provided such waiver, agreement or permission is obtainable under normal commercial insurance practice at the time without material cost.

H. **Authority and Payment of Costs; Expense Reimbursement:** The parties acknowledge and agree that, except as otherwise provided herein, any and all obligations, costs or expenses incurred by the Agent in the performance of its obligations under this Agreement shall be borne by the Owner and not by the Agent. Any payments which are to be at the Owner's expense and which are to be made by the Agent hereunder shall be made out of such funds as the Agent may from time to time hold for the account of the Owner in the SPG Accounts or out of funds provided by the Owner for such purpose. The Agent shall not be obligated to make any advance to, or for the account of, the Owner or to pay any amount which is expressly stated in this Agreement to be at the Owner's expense except out of funds held or provided as aforesaid, nor shall the Agent be obligated to incur any extraordinary liability or obligation on behalf of the Owner unless the Owner shall furnish the Agent with the necessary funds for the discharge thereof. If the Agent shall voluntarily advance for the Owner's account any amount for the payment of any obligation or expense which is expressly stated in this Agreement to be at the Owner's expense, Agent shall properly account for such advance and the Owner shall, upon reasonable prior notice from Agent, reimburse the Agent therefor. Amongst those costs and/or expenses which shall be reimbursable by Owner to Agent shall be, by way of example, but not limitation, printing of checks, bookkeeping expenses, software-related expenses, bank fees, long distance telephone calls, cleaning supplies, stationary, postage and ordinary travel expenses, all of which shall be paid on or about the first (1st) day following the previous month in which such costs and/or expenses were incurred by the deducting by Agent of such amount(s) from the SPG Accounts.

I. **Limitations on Authority:** Notwithstanding any provision in this Agreement to the contrary, it is hereby agreed that Agent is in any event not authorized and shall not (i) convey or otherwise transfer or pledge or encumber any property or other asset of Owner, (ii) pledge the credit of Owner, (iii) borrow money or execute any

7

promissory note or other obligation or mortgage deed, security agreement or other encumbrance in the name of or on behalf of Owner, or (iv) do any act in contravention of this Agreement or which would make it impossible to carry on the business of Owner.

J. **Risk of Loss:** Owner bears all risk of loss or damage to the Property and bears all the cost of any insurance covering the loss or damage to the Property.

K. **Modification:** This Agreement may not be changed, modified or discharged except by instrument signed by each of the Owner and the Agent, and approved by the Bankruptcy Court.

L. **Invalid Provisions:** If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be held, by a court of competent jurisdiction, to be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

M. **Copies of Agreement; Signatures**: The parties agree that (i) an electronic signature shall be considered an original signature, and (ii) a copy of the fully executed Agreement shall be considered an original instrument, and each, together or separately, shall become binding and enforceable as if original and the parties may rely on the same to prove the authenticity of this Agreement. This Agreement may be executed in one or more counterparts, each of which shall be considered an original instrument, but all of which shall be considered one and the same agreement, and shall become binding when one or more counterparts have been signed by each of the party and delivered to the other party.

N. **Emergencies**: In the event of emergencies, Agent shall take whatever actions which, in Agent's opinion, using reasonable business judgment, are immediately required to be made for the preservation and safety of the Property, to avoid the suspension of any essential service to or for the Property or to avoid danger to life or property at the Property, and notwithstanding any provision in this Agreement to the contrary, in such event Agent may make expenditures or enter into temporary contracts without Owner's consent to stabilize the emergency situation.

O. **Address of Record:** Any notice required or permitted to be delivered by this Agreement shall be deemed to be delivered when received (or when receipt is refused) when sent by nationally recognized overnight courier or certified mail, return receipt requested, addressed to respective addresses contained on the signature page to this Agreement (the "Address of Record").

P. **Subordination**. This Agreement shall not constitute an interest in real estate. Owner and Agent hereby acknowledge that this Agreement is a personal service

8

contract and is not an instrument that runs with the land. This Agreement shall in all events be subject and subordinate to any mortgage, deed of trust, ground lease or underlying lease now or hereafter encumbering the Property or any portion thereof. In confirmation of such subordination, Agent shall execute and deliver to the holder of such mortgage, deed of trust, ground lease, underlying lease or beneficiary of such deed of trust such subordination instruments as the holder may request within ten (10) days after such request. The parties hereto also agree to make such modifications to this Agreement as may be reasonably requested by the holder or holders of any such mortgages, ground leases, underlying leases or beneficiary or beneficiaries of any such deed of trust.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed, as of the date set forth hereinabove.

| Owner: | Agent: |
|---|---|
| **27 St Marks Place LLC** | **Silverstone Property Group, LLC** |
| **223 East 5th Street LLC** | 825 3rd Ave. FL 37 |
| **229 East 5th Street LLC** | New York, NY 10022 |
| **231 East 5th Street LLC** | Phone: (646) 786-8000 |
| **233 East 5th Street LLC** | |
| **235 East 5th Street LLC** | |
| **228 East 6th Street LLC** | |
| **66 East 7th Street LLC** | |
| **334 East 9th Street LLC** | |
| **253 East 10th Street LLC** | |
| **325 East 12th Street LLC** | |
| **327 East 12th Street LLC** | |
| **329 East 12th Street LLC** | |
| **510 East 12th Street LLC** | |
| **514 East 12th Street LLC** | |
| 2329 Nostrand Avenue, Suite M300 | |
| Brooklyn, NY 11210 | |
| Phone: (646) 472-1900 | |

By: _____
David Goldwasser, Managing Member

By: _____
Brian Shatz, Authorized Signatory

# EXHIBIT A

## PMA Terms Exhibit

**Section 1: General Information**
a) **Owner:** 27 ST MARKS PLACE LLC, 514 EAST 12TH STREET LLC, 223 EAST 5TH STREET LLC, 229 EAST 5TH STREET LLC, 231 EAST 5TH STREET LLC, 233 EAST 5TH STREET LLC, 235 EAST 5TH STREET LLC, 66 EAST 7TH STREET LLC, 253 EAST 10TH STREET LLC, 510 EAST 12TH STREET LLC, 228 EAST 6TH STREET LLC, 325 EAST 12TH STREET LLC, 327 EAST 12TH STREET LLC, 329 EAST 12TH STREET LLC, and 334 EAST 9TH STREET LLC (collectively, the "Owner")
b) **Property Address:** 27 St. Marks Place, 514 East 12th Street, 223 East 5th Street, 229 East 5th Street, 231 East 5th Street, 233 East 5th Street, 235 East 5th Street, 66 East 7th Street, 253 East 10th Street, 510 East 12th Street, 228 East 6th Street, 325 East 12th Street, 327 East 12th Street, 329 East 12th Street, and 334 East 9th Street (collectively, the "Property")
c) **Effective Date:** April ___, 2017 (the "Effective Date")

**Section 2: Compensation**
a) **Management Fee:** A monthly amount (the "Management Fee") equal to the greater of $2,500 (two thousand five hundred dollars) and 3% (three percent) of the Gross Receipts (as hereinafter defined), which shall be determined on a cash basis. For purposes of this Agreement, "Gross Receipts" shall mean all Property Funds actually collected by Agent during the period in question less (i) security, cleaning or damage deposits until such funds are applied to a rental obligation, (ii) any sums paid by tenants of the Property representing (A) proceeds from fire or other casualty losses or (B) amounts separately enumerated in the leases for space in the Property or in tenant work letters paid to reimburse Owner for the cost of capital improvements, remodeling, and tenant changes, including any overhead or interest factor payable by tenants in connection with such reimbursement, (iii) all non-operating income, including, without limitation, interest on accounts, (iv) rents paid more than thirty (30) days in advance of the due date, provided that such payments shall be included as Gross Receipts in the month in which such payments are due, (v) casualty and condemnation loss proceeds, (vi) any proceeds arising out of awards, settlement, or any other disposition of any lawsuit or legal proceedings except to the extent the net amount of such proceeds remaining after accounting for all costs and expense, including attorneys' fees, in obtaining such proceeds represents gross receipts from the Property on which Agent would otherwise be entitled to a Management Fee as set forth herein, then to the extent such proceeds are actually collected, proceeds shall be included in the calculation of gross receipts, (vii) any funds received in nature of real estate tax refunds, (viii) proceeds of any sales or financing (or re-financing) of the Property or any portion of the Property; (ix) any free rent credits; (x) any capital contributions made by any of the

entities comprising the Owner; and (xi) any proceeds from debt or capital financing transactions with respect to the Property.

b) **Section 3: Term of Agreement**

**Term:** 60 months

# EXHIBIT B

## Insurance Requirements

Owner shall obtain and keep in full force and effect, and at its cost, the following insurance or such additional insurance as may be required under the terms of any secured financing:

(a) "All Risk" property insurance protecting against all risks of physical loss to the Property, in an amount equal to the full replacement cost of the Property. Such property insurance shall contain appropriate clauses pursuant to which the insurance carrier shall waive all rights of subrogation with respect to losses payable under such policy; any deductible or self-insured retention amounts with respect to such insurance shall be the sole and exclusive responsibility of Owner.

(b) Commercial General Liability Insurance, including personal injury liability coverage, naming Manager as an additional named insured in an amount not less than One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) in the aggregate.

(c) Any vehicles owned by Owner to which Manager or any employees have access, Owner shall carry automobile liability insurance naming Manager as an additional insured with coverage of not less than One Million Dollars ($1,000,000) Combined Single Limit; any deductible with respect to such insurance shall be the sole and exclusive responsibility of Owner. If the Property includes a parking facility not operated by a third party carrying insurance approved by Owner and Manager, Owner shall carry garage keepers legal liability and garage liability insurance naming Manager as additional insured with limits reasonably acceptable to owner, any deductible with respect to such insurance shall be the sole and exclusive responsibility of Owner.

(d) Umbrella/Excess Liability Coverage in an amount not less than Twenty Five Million Dollars ($25,000,000).

(e) Any deductible with respect to such insurance shall be primary and the sole and exclusive responsibility of Owner. Such liability insurance policies shall be primary and non-contributory with any similar insurance carried by Manager for its account.