UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In re:

**EAST VILLAGE PROPERTIES LLC,**  Case No. 17-22453-rdd
*et al.[1]*,

                Debtors.      (Jointly Administered)

_____

**DECLARATION OF PHILLIP G. LAVOIE IN SUPPORT OF THE DEBTORS'
MOTION FOR THE ENTRY OF AN ORDER APPROVING THE INTERIM
STIPULATION AND ORDER (A) AUTHORIZING AND DIRECTING USE
OF CASH COLLATERAL, (B) APPROVING THE FORM OF ADEQUATE
PROTECTION AND (C) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, Phillip G. Lavoie declares as follows:

1.    I am the Managing Director of Silverstone Property Group, LLC ("SPG"), the proposed property manager to the Debtors in the above-captioned bankruptcy proceedings.

2.    As such, I am fully familiar with all of the facts and circumstances set forth herein, and the events that have transpired to date based upon my review of the files and business records maintained by SPG in the ordinary course of business.

3.    I submit this Declaration in support of the Debtors' Motion (the "Motion") for the entry of an Order approving that certain *Interim Stipulation and Order* dated April 12, 2017 [ECF No. 20] (the "Stipulation") between the Debtors, and the Debtors' prepetition mortgagee, EVF1 LLC (the "Secured Creditor"), (a) authorizing the use of cash collateral pursuant to 11 U.S.C. §§ 361 and 363 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

---

[1] The debtors (the "Debtors") in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: East Village Properties LLC (1437); 223 East 5th Street LLC (8999); 229 East 5th Street LLC (8348); 231 East 5th Street LLC (4013); 233 East 5th Street LLC (8999); 235 East 5th Street LLC (1702); 228 East 6th Street (2965); 66 East 7th Street LLC (1812); 27 St Marks Place LLC (1789); 334 East 9th Street LLC (7903); 253 East 10th Street LLC (4317); 325 East 12th Street LLC (0625); 327 East 12th Street LLC (7195); 329 East 12th Street LLC (0475); 510 East 12th Street LLC (1469); and 514 East 12th Street LLC (7232).

Code"); (b) approving the form of adequate protection provided to the Secured Creditor pursuant to 11 U.S.C. §§ 361 and 363, and (c) granting related relief.

4. I hold a Bachelor of Science degree from Bard College, and a Master of Science degree from New York University in Real Estate. In addition, I have more than fifteen (15) years of real estate experience, including, but not limited to, construction, finance, development, asset management, property management and consulting for housing finance agencies, developers and property managers.

5. Since July 2014, I have been an adjunct instructor at the Steven L. Newman Real Estate Institute at Baruch College, where I teach courses on facilities management and property management. I am also an instructor with New York City Department Housing Preservation and Development's ("HPD") Minority/Women-owned Business Enterprises where I provide training on the management of distressed properties. In addition, I currently serve on the Young Leadership Counsel of the New York Housing Conference.

6. This Declaration is also intended to address questions and concerns directed to SPG since the filing of the Stipulation, concerning the Debtors' fifteen residential apartment buildings located in the East Village area of New York City and commonly known as: 27 St. Marks Place, 514 East 12th Street, 223 East 5th Street, 229 East 5th Street, 231 East 5th Street, 233 East 5th Street, 235 East 5th Street, 66 East 7th Street, 253 East 10th Street, 510 East 12th Street, 228 East 6th Street, 325 East 12th Street, 327 East 12th Street, 329 East 12th Street and 334 East 9th Street (collectively, the "Properties").

7. SPG has been managing multifamily real properties for approximately ten (10) years. SPG currently manages a portfolio of approximately forty (40) apartment buildings comprising of over 2,000 apartments, some of which are located in the immediate area of the

2

Properties. In addition, SPG also manages in excess of two (2) million square feet of office and industrial space.

8. As this Court may already be aware, the Secured Creditor, and affiliates of the Secured Creditor are in the business of buying distressed debt, and the process of completing foreclosures is something that is done in the ordinary course of their business. As such, SPG has experience with gaining control of situations where borrowers have mismanaged properties on a scale very similar to that before the Court in this case. In point of fact, in prior cases, SPG has held "town hall" meetings either by group, or by building, in order to engage tenants, and particularly frustrated tenants, to advise them on how SPG intended on remedying issues with their properties. The meetings served as a forum for tenants to express what their concerns and help SPG devise an action plan, and proved to be very successful in similar cases.

9. As set forth in the Stipulation (see ¶ 8), SPG intends on being as transparent with expenditures of advances and all Cash Collateral[2] collected by SPG at the Properties as possible. To that end, all Cash Collateral to be collected by SPG, shall be deposited into bank accounts to be established by SPG (the "SPG Accounts") in the name of each respective Debtor. The SPG Accounts shall be considered debtor-in-possession accounts and the only authorized signatories of such accounts shall be authorized signatories of SPG as further set forth in the Stipulation. If permitted to act as property manager to the Debtor, SPG has agreed to remit to the Debtors and the Secured Creditor, on or before the twenty-first (21st) day of each month, copies of any and all financial information, including but not limited to any information concerning protective advances, for the previous month, as such information relates to the Properties, to permit the Debtors to file monthly operating reports and provide disbursement information on a debtor-by-

---

[2] Capitalized terms used herein but not otherwise defined shall have the same meanings given to them as in the Stipulation (as defined herein).

debtor basis. In addition, SPG has agreed to provide the Debtor with a list of all expenditures at the Properties once every calendar week. This should permit the Debtors to file meaningful monthly operating reports reflecting all pertinent financial information at each of respective Properties.

10. For the avoidance of doubt, SPG maintains no connection with the former management of the Debtors, and does not take any direction from former management of the Debtors. The only connection between SPG and the Debtors, is that SPG is affiliated with the Secured Creditor, and the Secured Creditor is the Debtors' lender in connection with the Properties.

11. The Court should be further advised that SPG maintains a website at [www.silverstonepg.com](www.silverstonepg.com), where tenants may make rent payments, submit maintenance requests and log general questions and complaints with SPG. Each question and complaint will be logged and tracked in accordance with SPG's existing operating procedures. In addition, SPG maintains a twenty-four (24) hour telephone hotline to permit residents to submit service requests which will be received by the property manager specifically assigned to each of the respective properties. Emergent issues will be dealt with imminently.

12. As of the date hereof, SPG has already begun its preliminary endeavors to become familiar with the Properties and the conditions that exist at the Properties. Provided this Court permits SPG to manage the Properties, SPG will enter the Properties and thereafter devise a plan of action to be put into place with regard to how it will get the Properties operating at a standard which is reasonable in New York. As of the date hereof, SPG has paid outstanding invoices for utilities, ensured heating oil deliveries to certain Properties and set up automatic delivery with its regular heating oil supplier. In addition, SPG has engaged a boiler service company to start

inspecting all the boilers at the Properties. Furthermore, SPG has already scheduled extermination services to start performing services at the Properties, which is scheduled to start next week.

13. Through its initial visits with the Properties, SPG has determined that many of the issues are related to the prior manager's elimination of staff from the Properties, which in SPG's opinion are crucial to the smooth operations of the Properties. To this end, as of the date hereof, SPG is pleased to report that SPG has hired the three existing superintendents,[3] who are expected to start working at the Properties under SPG on Monday, April 13, 2017. Hiring the superintendents, in addition to temporary help and the existing SPG staff, will permit SPG to clean the Properties, and complete an inspection of every single unit at the Property by the end of next week in order to devise the best action plan for the Properties, which will include, but not be limited to, dealing with emergent issues at the Properties as soon as physically possible.

14. Furthermore, SPG has already begun to engage in discussions with a carting company for the purposes of disposing of waste stored in vacant apartments at the Properties by prior management, which consists mainly of construction debris and appears to be a problem that spans between twelve (12) and twenty-four (24) such apartment units.

15. SPG has already obtained a full survey, or list of code violations at the Properties. SPG is currently in the process of generating work orders for each of those violations, which will be addressed in the order of priority, with Class C, HPD violations receiving priority attention, followed by Class B violations and thereafter, Class A violations. Simultaneously, SPG will work to remove violations which have been issued by the New York City Department of Buildings, the New York City Fire Department, and other regulatory agencies.

---

[3] One of the new superintendents resides at one of the Properties.

5

16.     As a preliminary matter, upon assuming, custody, possession and control of the Properties, SPG intends to review all leases at the Properties, and take such other steps as reviewing New York City Division of Housing and Community Renewal to ensure that they are up to date.

17.     Finally, the Court should bear in mind that each of the foregoing points are solely introduced to respond to some preliminary questions presented to SPG, and to provide the Court with an initial roadmap by which SPG will be focusing its efforts at the outset of this matter. SPG is fully aware of the complexities surrounding the Properties and is prepared to address such complexities in an appropriate manner.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

**WHEREFORE**, SPG respectfully requests that this Court enter an Order approving the Interim Stipulation and Order (i) authorizing and directing use of Cash Collateral, (ii) granting adequate protection, and (iii) granting such further and related relief as this Court deems just and proper.

*s/ Phillip G. Lavoie*
PHILLIP G. LAVOIE
