UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                  Chapter 11

**EAST VILLAGE PROPERTIES LLC,**         Case No. 17-22453 (RDD)
*et al.*,[1]

                                                        (Jointly Administered)

                                Debtors.

------------------------------------------------------------X


### FIRST AMENDED JOINT PLAN OF REORGANIZATION OF
### EAST VILLAGE PROPERTIES LLC AND AFFILIATED DEBTORS


**ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.**
**Attorneys for Debtors and Debtors-in-
Possession**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300

A. Mitchell Greene, Esq.
Fred B. Ringel, Esq.
Steven B. Eichel, Esq.
Lori A. Schwartz, Esq.

New York, New York
June 23, 2017

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' taxpayer identification number are as follows:  East Village Properties LLC (1437); 223 East 5th Street LLC (8999); 229 East 5th Street LLC (8348); 231 East 5th Street LLC (4013); 233 East 5th Street LLC (8999); 235 East 5th Street LLC (1702); 228 East 6th Street LLC (2965); 66 East 7th Street LLC (1812); 27 St Marks Place LLC (1789); 334 East 9th Street LLC (7903); 253 East 10th Street LLC (4317); 325 East 12th Street LLC (0625); 327 East 12th Street LLC (7195); 329 East 12th Street LLC (0475); 510 East 12th Street LLC (1469); and 514 East 12th Street LLC (7232).

East Village Properties LLC, 223 East 5th Street LLC, 229 East 5th Street LLC, 231 East 5th Street LLC, 233 East 5th Street LLC, 235 East 5th Street LLC, 228 East 6th Street LLC, 66 East 7th Street LLC, 27 St Marks Place LLC, 334 East 9th Street LLC, 253 East 10th Street LLC, 325 East 12th Street LLC, 327 East 12th Street LLC, 329 East 12th Street LLC, 510 East 12th Street LLC, and 514 East 12th Street LLC (collectively, the "Debtors"), propose the following first amended joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.A.

## SECTION 1.    DEFINITIONS AND INTERPRETATION.

### A.    Definitions.

**1.1.    *Administrative Expense Claim*** means any Claim for costs and expenses of Administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Fee Claims; (c) Protective Advance Claim; and (d) all fees and charges assessed against the Estates pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-1401.

**1.2.    *Administrative Expense Claims Bar Date*** means the first Business Day that is 30 days following the Effective Date, except for Fee Claims (which shall be sixty (60) days following the Effective Date) and as otherwise specifically set forth in the Plan.

**1.3.    *Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 120 days following the Effective Date, except as otherwise specifically set forth in the Plan; provided that the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Plan Administrator after notice and a hearing.

**1.4.    *All Other Debts*** means the obligations to be paid under the Plan other than Property Related Obligations and the Carve-Out.  EVF1 shall fund up to $8,500,000 for payment of these obligations.

**1.5.    *Allowed*** means, (i) with reference to any Claim  (a) any Claim against the Debtors that have been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Debtors' Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Section 7.9 hereof or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the

extent such Final Order is in favor of the respective holder, or (c) any Claim expressly allowed by a Final Order.

**1.6.    *Available Cash*** means all Cash of the Debtors realized from their business operations, the sale or other disposition (other than the Sale Transaction) of its assets, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise.

**1.7.    *Avoidance Action*** means any action commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

**1.8.    *Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended from time to time, as applicable to the Chapter 11 Cases.

**1.9.    *Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**1.10.    *Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.11.    *Bar Date Order*** means that certain *Order Establishing Deadline for Filing Proofs of Claim Against or Interests in the Debtors and Approving the Form and Manner of Notice Thereof* entered on April 25, 2017 at ECF No. 36 which established June 1, 2017 as the last day for creditors to file claims against the Debtors' estates and established September 25, 2017 as the last date for creditors that are governmental units to file claims against the Debtors' estates.

**1.12.    *Bidding Procedures*** means those procedures that establish the terms and procedures under which the Properties will be auctioned.  The Bidding Procedures are set forth in Exhibit B to the Disclosure Statement.

**1.13.    *Business Day*** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**1.14.    *Carve-Out*** shall have the meaning ascribed to it in the Interim Cash Collateral Stipulation and Order.

**1.15.    *Cash*** means legal tender of the United States of America.

**1.16.    *Causes of Action*** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment,

account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

**1.17.** *Chapter 11 Cases* means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on March 28, 2017, and styled In re East Village Properties, LLC, *et al.,* Case No. 17-22453 (RDD).

**1.18.** *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.19.** *Claims Objection Bar Date* means the first Business Day that is 120 after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Plan Administrator.

**1.20.** *Class* means any group of Claims or Interests classified pursuant to Section 3.1 of the Plan.

**1.21.** *Commencement Date* means March 28, 2017.

**1.22.** *Confirmation* means the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

**1.23.** *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.24.** *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan as such hearing may be adjourned or continued from time to time.

**1.25.** *Confirmation Order* means an order of the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and EVF1 confirming the Plan.

**1.26.** *Consummation* means the occurrence of the Effective Date of the Plan.

**1.27.** *Cure Obligation* means all (a) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (b) other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

**1.28.** *Debtors* mean (i) East Village Properties LLC, (ii) 223 East 5th Street LLC, (iii) 229 East 5th Street LLC, (iv) 231 East 5th Street LLC, (v) 233 East 5th Street LLC, (vi) 235 East 5th Street LLC, (vii) 228 East 6th Street LLC, (viii) 66 East 7th Street LLC, (ix) 27 St Marks Place LLC, (x) 334 East 9th Street LLC, (xi) 253 East 10th Street LLC, (xii) 325 East 12th Street LLC, (xiii) 327 East 12th Street LLC, (xiv) 329 East 12th Street LLC, (xv) 510 East 12th Street LLC, and (xvi) 514 East 12th Street LLC.

**1.29.** *Disclosure Statement* means the Disclosure Statement for the Plan which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

**1.30.** *Disputed Claim* means with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Interest has been filed, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

**1.31.** *Disputed Claim Reserve* means the segregated account or accounts established by the Plan Administrator to escrow funds to pay those claims in dispute.

**1.32.** *Distribution Date* means a date or dates, including the Initial Distribution Date, as determined by the Plan Administrator in accordance with the terms of the Plan, on which the Plan Administrator makes a distribution to holders of Allowed Claims.

**1.33.** *Distribution Record Date* means the Effective Date of the Plan.

**1.34.** *Effective Date* means the date on which all conditions to the effectiveness of the Plan set forth in Section 11 hereof have been satisfied or waived in accordance with the terms of the Plan.

**1.35.** *Entity* has the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.36.** *Estates* means the estates of the Debtors created under section 541 of the Bankruptcy Code.

**1.37.** *EVF1* means EVF1 LLC (formerly known as EVP 1, LLC) in its capacity as the pre-petition lender to the Debtors and as secured creditor under the Cash Collateral Stipulation.

**1.38.** *EVF1 Mortgages* means the five mortgages on the Properties granted to EVF1 by the Debtors to secure EVF1's five loans to the Debtors.

**1.39.** *EVF1 First Mortgage* means that Mortgage and Security Agreement dated September 10, 2015, pursuant to which EVF1 secured the loan to the Debtors in the original principal amount of $89,667,660.00.

**1.40.**   *EVF1 Second Mortgage* means that certain Mortgage and Security Agreement dated September 10, 2015 pursuant to which EVF1 secured an additional loan to the Debtors in the original principal amount of $20,000,000.00.

**1.41.**   *EVF1 Third Mortgage* means that certain Building Mortgage and Security Agreement dated September 10, 2015, pursuant to which EVF1 secured an additional loan to the Debtors in the original principal amount of $10,068,000.00.

**1.42.**   *EVF1 Fourth Mortgage* means that certain Project Mortgage and Security Agreement dated September 10, 2015, pursuant to which EVF1 secured an additional amount in the original principal amount of $4,249,340.00.

**1.43.**   *EVF1 Fifth Mortgage* means that certain Mortgage and Security Agreement dated June 24, 2016, pursuant to which EVF1 secured an additional loan to the Debtors in the original principal amount of $1,100,000.00.

**1.44.**   *EVF1 Notes* means: (i) the certain Mortgage Note dated September 10, 2015 evidencing a loan in the principal amount of $89,667,660.00, (ii) the second Mortgage Note dated September 10, 2015 evidencing a loan in the principal amount of $20,000,000, (iii) the certain Building Loan Note dated September 10, 2015 evidencing a loan in the principal amount of $10,068,000, (iv) the certain Project Loan Note dated September 10, 2015 evidencing a loan in the principal amount of $4,249,340, and (v) the certain Mortgage Note dated June 24, 2016 evidencing a loan in the principal amount of $1,100,000.

**1.45.**   *Exculpated Parties* means collectively: (a) the Debtors; (b) EVF1, and (c) with respect to each of the foregoing entities in clauses (a) and (b), such entities' successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such.  Exculpated Parties specifically includes GC Realty Advisors, LLC and excludes Raphael Toledano and his company, Brookhill Management.

**1.46.**   *Executory Contract* means a contract or lease (other than a lease that relates to a statutory tenancy) to which the Debtors are parties that are subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**1.47.**   *Existing Equity Interests* means all Interests in each of the Debtors, including membership interests or the rights to acquire any such Interests.

**1.48.**   *Fee Claims* means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

**1.49.    *Final Cash Collateral Stipulation and Order*** means that certain Final *Stipulation and Order Between EVF1 and the Debtors (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief*, entered by the Bankruptcy Court on May 22, 2017 at ECF Doc No 85 , which  ratifies, modifies and/or amends, as the case may be, the Interim Cash Collateral Stipulation.

**1.50.    *Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

**1.51.    *General Unsecured Claim*** means any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

**1.52.    *General Unsecured Insider Claim*** means an unsecured Claim held by an insider (as defined in 11 U.S.C. § 101(31) that is not entitled to priority under the Bankruptcy Code or any other order of the Bankruptcy Court.

**1.53.    *Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.54.    *Impaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.55.    *Initial Distribution*** means the first distribution that either the Debtors or the Plan Administrator, as applicable, makes to holders of Allowed Claims.

**1.56.    *Initial Distribution Date*** means the date selected by the Debtors on or as soon as reasonably practicable after the Effective Date.

**1.57.    *Interests*** means any equity security in each of the Debtors as defined in section 101(16) of the Bankruptcy Code, including all instruments evidencing an ownership interest in the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

**1.58.** *Interim Cash Collateral Stipulation* means the *Interim Stipulation and Order Between EVF1 and the Debtors (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief*, entered by the Bankruptcy Court on April 27, 2017 at ECF Doc No 45.

**1.59.** *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.60.** *Other Priority Claim* means any Claim against the Debtors entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

**1.61.** *Other Secured Claim* means a Secured Claim, other than the Protective Advance Claim or the EVF1 Secured Claim.

**1.62.** *Person* means an individual, corporation, partnership, joint venture, association, Joint Stock Company, Limited Liability Company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

**1.63.** *Plan* means the Debtors' joint chapter 11 plan of reorganization, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Section 14.3 herein.

**1.64.** *Plan Administrator* has the meaning set forth in Section 5.8 of this Plan.

**1.65.** *Plan Fund* means the amount of Cash to be provided by EVF1 to the Plan Administrator on the Effective Date which, when added to the Available Cash held by the Debtors on the Effective Date, will be sufficient (i) to pay, as provided for in accordance with the terms and conditions set forth in the Plan, the Allowed Claims in Classes 1, 3, 4, 5, 6 and Allowed Administrative Claims (other than the Protective Advance Claim), Priority Tax Claims and the Carve-Out; (ii) to fund the payment of Disputed Claim Reserves (once the Claims become Allowed Claims); (iii) to fund reasonable reserves for post-Confirmation legal fees; and (iv) to fund reserves for reasonable Plan Administrator fees and expenses subsequent to the Effective Date.

**1.66.** *Plan Supplement* means the compilation of documents, in form and substance reasonably acceptable to the Debtors and EVF1, containing, among other things, the Schedule of Cure Costs, the Purchase Agreement, and information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; provided that, through the Effective Date, the Debtors shall have the right to amend any schedules, exhibits, and the other documents contained in, and exhibits to, the Plan Supplement.

**1.67.** *Plan Supplement Filing Date* means the date on which all documents to be included in the Plan Supplement must be filed with the Court.

**1.68.** *Plan Supplement Filing Deadline* means the date that is seven (7) days prior to the commencement of the Confirmation Hearing.

**1.69.** *Priority Tax Claim* means any unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.70.** *Pro Rata* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

**1.71.** *Professional Fees* means the compensation for services rendered and reimbursement of expenses incurred by estate professionals whose retention was approved by the Bankruptcy Court pursuant to section 327 or 328 of the Bankruptcy Code.

**1.72.** *Proof of Claim* means a proof of Claim filed against the Debtors in their respective Chapter 11 Cases.

**1.73.** *Properties* mean the real properties and improvements thereon located at (i) 223 East 5th Street, New York, NY, (ii) 229 East 5th Street, New York, NY, (iii) 231 East 5th Street, New York, NY, (iv) 233 East 5th Street, New York, NY, (v) 235 East 5th Street, New York, NY, (vi) 228 East 6th Street, New York, NY, (vii) 66 East 7th Street, New York, NY, (viii) 27 St Marks Place, New York, NY, (ix) 334 East 9th Street, New York, NY, (x) 253 East 10th Street, New York, NY, (xi) 325 East 12th Street, New York, NY, (xii) 327 East 12th Street, New York, NY, (xii) 329 East 12th Street, New York, NY, (xiv) 510 East 12th Street, New York, NY, and (xv) 514 East 12th Street, New York, NY, and owned by the Debtors, including the associated air rights.

**1.74.** *Property Related Obligations* means those obligations relating to the Properties, including the following: (i) tenant buy-out agreements; (ii) contractor expenses; (iii) HPD Liens; (iv) rent overages; (v) prepaid rent; and (vi) security deposits.

**1.75.** *Protective Advance Claim* means any claim of EVF1 arising under the Interim Cash Collateral Stipulation or the Final Cash Collateral Stipulation and Order, and treated as a super-priority administrative expense claim under Bankruptcy Code § 364(c)(1).

**1.76.** *Purchase Agreement* means an Asset Purchase Agreement, in form and substance reasonably acceptable to the Debtors, as sellers, and EVF1 (or its designee), as purchaser, which provides for the sale of the Properties to EVF1.

**1.77.** *Sale Order* means an order of the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and EVF1 (a) approving the Sale Transaction; (b) determining that EVF1 is a good faith purchaser; (c) providing that the closing of the Sale Transaction will occur in accordance with the terms and conditions of the Purchase Agreement; and (d) providing that the delivery of the deed in accordance with the terms of the Confirmation Order and Purchase Agreement approved under this Plan, if confirmed by the Court, shall constitutes the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title and may not be taxed under any law imposing a stamp tax or similar tax.

**1.78.** *Sale Transaction* means the sale of the Property pursuant to the Plan.

**1.79.    *Schedule of Cure Costs*** means the schedule the sums necessary to cure monetary defaults under Executory Contracts and Unexpired Leases to be assumed by the Debtors as set forth in a schedule to be filed with the Plan Supplement.

**1.80.    *Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

**1.81.    *Secured Claim*** means a Claim to the extent (i) secured by property of the Estates, the amount of which is equal to or less than the value of such property (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and the applicable Debtors or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.82.    *SPG*** means the Silverstone Property Group, LLC, the managing agent retained in accordance with the Management Agreement annexed as Exhibit "A" to the Interim Cash Collateral Stipulation to manage the Properties on a day-to-day basis.

**1.83.    *Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

## B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C.    Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control (unless stated otherwise in the Plan). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

### 2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors or the Plan Administrator agree to different treatment, the Debtors (or the Plan Administrator, as the case may be) shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that, the Fee Claims shall receive the treatment in Section 2.2 below and the Protective Advance Claim shall receive the treatment provided in 2.4 below; provided, further, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims and requests for payment of the Protective Advance Claim, must be filed and served on the Debtors no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, and Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Plan Administrator must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date. For the avoidance of doubt, the Administrative Expense Claims Bar Date shall not apply to the Protective Advance Claim.

### 2.2.    *Fee Claims.*

All entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is sixty (60) days after the Effective Date. No later than ten (10) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon EVF1, the Debtors and the Plan Administrator, a notice of the estimated amount of their unpaid Fee. The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course.

### 2.4.    *Protective Advance Claim.*

The Protective Advance Claim shall be allowed in the full amount due and owing under the Interim Cash Collateral Stipulation and the Final Cash Collateral Stipulation and Order, including any and all expenditures related to the Properties made by EVF1 as provided for in the Interim Cash Collateral Stipulation and the Final Cash Collateral Stipulation and Order to pay pre and post-petition real estate taxes due at the Properties or any other pre and post-petition expenses including, without limitation, maintenance and other capital advances. Except to the extent that the holder of a Protective Advance Claim agrees in writing to a different treatment, to the extent not otherwise repaid prior to the Effective Date, the amount of EVF1's advances will be added to the EVF1 Secured Claim as a super-priority administrative expense claim under Bankruptcy Code § 364(c)(1).  The unpaid advances that are not repaid prior to the Effective Date of the Plan may also diminish the purchase price for the Properties to be paid by EVF1 under the Plan (up to $12,500,000); however, such protective advance shall not reduce the $1,000,000 payment to be made by EVF1 to the Debtors' Estates to fund the Carve-Out under the Plan.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1.    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2.    *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in each Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the classes of Claims and Interests set forth in this Section 3. All of the potential Classes for each Debtor are set forth herein. The Debtors' Chapter 11 Cases are jointly administered and, on the Effective Date, will be deemed substantively consolidated in accordance with the terms of this Plan. As a result, these six classes of Claims and Interest are classes that pertain to each of the Debtors. The Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.4.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| 2 | EVF1 Secured Claim | Impaired | Yes |
| 3 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 4 | General Unsecured Claims | Unimpaired | No (presumed to accept) |
| 5 | General Unsecured Insider Claims | Impaired | Yes |
| 6 | Existing Equity Interests | Impaired | Yes |

### 3.3.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.4.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**3.5.    *Voting Classes; Presumed Acceptance by Non-Voting Classes***

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

**3.6.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code***

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan, in accordance with Article XIV hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS**.

**4.1.    *Other Priority Claims (Class 1).***

(a)    *Classification*:  Class 1 consists of Allowed Other Priority Claims against the Debtors.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim against the Debtors that has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund in an amount equal to such Claim, payable on the later of the Effective Date, the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

(c)    *Voting*:  Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.2.    *EVF1 Secured Claim (Class 2).***

(a)    *Classification*:  Class 2 consists of the EVF1 Secured Claim. The EVF1 Secured Claim is a secured claim evidenced by (i) the EVF1 Notes, which are secured by the EVF1 First Mortgage, the EVF1 Second Mortgage, the EVF1 Third Mortgage, the EVF1 Fourth Mortgage and the EVF1 Fifth Mortgage, each of which constitute a valid-non-avoidable security interest on the Properties and (ii) the protective advances made by EVF1 in accordance with the Interim Cash Collateral Stipulation and the Final Cash Collateral Stipulation and Order. On the Effective Date, the EVF1 Secured Claim shall be deemed Allowed.

(b)      *Treatment*:  The holder of the EVF1 Secured Claim shall fund up to $13,500,000 to pay obligations under the Plan, and it or its nominee will receive the Properties and any Available Cash as of the Effective Date.  However, if the Properties are sold to a higher bidder at an auction, EVF1 shall receive the proceeds from the sale of the Properties.  Pending the Closing of the Sale of the Properties, the holder of the Class 2 Claims shall retain its Liens on the Properties.

(c)      *Voting*:  Class 2 is Impaired, and the holder of the EVF1 Secured Claim in Class 2 is entitled to vote to accept or reject the Plan.

### 4.3.      *Other Secured Claims (Class 3).*

(a)      *Classification*:  Class 3 consists of the Other Secured Claims. To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 3.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim against the Debtors have agreed to less favorable treatment of such Claim, each holder of an Allowed Other Secured Claim shall receive, at the option of the Plan Administrator, (i) payment in full and final satisfaction of such Allowed Class 3 Claim, Cash from the Plan Fund in the amount of such Allowed Claim payable on the later of the Effective Date and the date on which such Other Secured Claim becomes an Allowed Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

(c)      *Voting*:  Class 3 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

### 4.4.      *General Unsecured Claims (Class 4).*

(a)      *Classification*:  Class 4 consists of General Unsecured Claims against the Debtors.

(b)      *Treatment*:  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund equal to the Allowed amount of such Claim.

(c)      *Voting*:  Class 4 is Unimpaired and holders of General Unsecured Claims in Class 4 are conclusively presumed to have accepted the Plan pursuant to section

1126(f) of the Bankruptcy Code. Therefore, holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

**4.5.**    *General Unsecured Insider Claims (Class 5).*

(a)    *Classification*:  Class 5 consists of General Unsecured Insider Claims against the Debtors.

(b)    *Treatment*:  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an General Unsecured Insider Claim agrees to less favorable treatment of such General Unsecured Insider Claim or has been paid before the Effective Date, each holder of an General Unsecured Insider Claim shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund equal to its pro rata share of the funds available to the holders of the Allowed Class 5 Claims.

(c)    *Voting*:  Class 5 is Impaired and the holders of the General Unsecured Insider Claim in Class 5 are entitled to vote to accept or reject the Plan.

**4.6.**    *Existing Equity Interests (Class 6).*

(a)    *Classification*:  Class 6 consists of Existing Equity Interests in the Debtors.

(b)    *Treatment*:  In the event that the Property Related Obligations, All Other Debts and Professional Fees are less than $13,500,000, then any sums remaining shall be distributed to holders of Existing Equity Interests in the Debtors.  The holders of the Existing Equity Interests shall transfer their interests to Raphael Toledano unless there are no remaining funds available in the Plan Fund to distribute to Class 6 in which case the membership interests in Class 6 shall be cancelled.

(c)    *Voting*:  Class 6 is Impaired by the Plan, and the holders of the Allowed Existing Equity Interests are entitled to vote to accept or reject the Plan.

## SECTION 5.    MEANS FOR IMPLEMENTATION.

**5.1.**    *Substantive Consolidation.*

On the Effective Date, the Chapter 11 Cases and the Debtors and their Estates shall be deemed to be substantively consolidated. The assets and liabilities of the Debtors shall be pooled and all claims shall be satisfied from the assets of a single consolidated estate.  Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under the Plan only with respect to such single Claim.

**5.2.**    *Cancellation of Intercompany Claims.*

On the Effective date, all claims by any Debtor against any other Debtor shall be extinguished.

### 5.3.   *Purchase Agreement*

The Confirmation Order shall authorize the Sale of the Properties under sections 363, 365, 1123(b)(4), 1129(b)(2)(A)(iii) and 1146(a) of the Bankruptcy Code in accordance with the Purchase Agreement. The form of Purchase Agreement shall be included in the Plan Supplement.

### 5.4.   *Bidding Procedures*

The ultimate purchaser of the Properties will either be EVF1 or its nominee or a third party that is a successful bidder under the terms of the Bidding Procedures set forth in Exhibit B to the Disclosure Statement.

### 5.5.   *Plan Fund.*

The Plan Fund is the cash consideration to be provided by EVF1 to the Debtors as part of the consideration for the transfer of the Properties and will be used to fund the Plan Fund.  It is comprised of (i) $4,000,000 for Property Related Obligations, (ii) $8,500,000 for All Other Debts, and (iii) $1,000,000 for the Carve Out (which includes Professional Fees) and is subject to adjustment as provided for in this Plan.

### 5.6.   *Payment of Property Related Obligations; Adjustments to Plan Fund; Protective Advances by EVF1.*

The Property Related Obligations must be paid in full in the final amounts allowed by the Bankruptcy Court upon the closing without any outstanding disputes related thereto unless the Bankruptcy Court approves reserves for such disputed claims.  The Property Related Obligations includes the following: (i) tenant buy out agreements in an amount not to exceed $1,650,000; (ii) contractor expenses in the amount of $1,800,000; (iii) HPD Liens not to exceed $250,000; (iv) rent overcharge claims not to exceed $250,000; (v) prepaid rent claims not to exceed $380,000; and (vi) security deposits not to exceed $200,000.  The Debtors reserve the right to dispute the Property Related Obligations.

If the aggregate amounts of the Property Related Obligations exceed $4,000,000, the shortfall will be paid from the $8,500,000 allocated to pay All Other Debts and paid before All Other Debts.  Protective advances made by EVF1 in accordance with the Interim Cash Collateral Stipulation and the Final Cash Collateral Stipulation and Order, to the extent not otherwise re-paid prior to the Effective Date of the Debtors' Plan, will be added to EVF1's Secured Claims against the Debtors' estates, and such advances will first diminish the $4,000,000 allocated for the payment of Property Related Obligations, and if the protective advances exceed $ 4 million, it will reduce the $8.5 million payment to be made by EVF1 to the Debtors' Estates for All Other Debts.  Protective advances will not dilute the Carve-Out, which is a $1 million fund to pay (a) U.S. Trustee Fees, (b) Professional Fees and (c) GC Realty Advisors.   If Property Related Obligations are less than $4,000,000, then the difference between $4 million and the Property Related Obligations shall be allocated to pay All Other Debts.

**5.7.    *All Other Debts.***

Subject to the allocations provided for in section 5.5 of this Plan, the sum of $8,500,000 from the cash proceeds paid by EVF1 to purchase the Debtors Properties shall be utilized by the Debtors to pay all other claims and expenses under the Plan other than (i) the Property Related Obligations and (ii) the Carve-Out.  After payment of all such claims against the estates, any remaining surplus is to be paid to Class 6 Existing Equity Interests.

**5.8.    *Plan Administrator.***

(a)    *Appointment*. Kevin J. Nash shall serve as Plan Administrator for the Debtors.

(b)    *Authority*. Subject to Section 6.2 of the Plan, the Plan Administrator shall have the authority and right on behalf of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)    except to the extent Claims have been previously Allowed, to implement a claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)    to advise the Debtors to make Distributions to holders of Allowed Claims in accordance with the Plan and the claims reconciliation process;

(iii)    to direct the wind down, liquidation, sale and/or abandoning of the remaining assets, if any, of the Debtors under the Plan and in accordance with applicable law;

(iv)    prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon,  dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors;

(v)    make payments to existing professionals who will continue to perform in their current capacities;

(vi)    retain professionals to assist in performing its duties under the Plan;

(vii)    maintain the books and records and accounts of the Debtors;

(viii)    invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Causes of Action, and any income earned thereon;

(ix)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(x)     administer the Debtors' tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of the Debtors or its estate under Bankruptcy Code section 505(b) for all taxable periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, and (iii) representing the interest and account of the Debtors or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)     prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xii)    pay statutory fees in accordance with Section 14.1 of the Plan; and

(xiii)   perform other duties and functions that are consistent with the implementation of the Plan.

**5.9.    *Other Transactions.***

In the discretion of the Debtors, after the Effective Date, the Debtors may engage in any other transaction in furtherance of the Plan. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members of the Debtors.

**5.10.    *Withholding and Reporting Requirements.***

(a)     *Withholding Rights.* In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)     *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator (which entity shall  subsequently deliver to the Plan Administrator any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax Code and so notifies the Plan Administrator. If such request is made by

the Plan Administrator or such other Person designated by the Plan Administrator and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtors and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtors and its respective properties.

### 5.11. *Exemption From Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including an instrument of transfer executed in furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the sale of the Properties in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.12. *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 5.13. *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Plan Administrator may pursue such Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or

approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

### 5.14.  *Cancellation of Notes, Instruments, Debentures and Equity securities.*

On the Effective Date, all notes, instruments, debentures, certificates and other documents evidencing Claims and all Interests in any of the Debtors shall be canceled and deemed terminated and surrendered  (regardless of whether such notes, instruments, debentures, certificates or other documents are in fact surrendered for a cancellation to the appropriate indenture trustee or other such person), except for purposes of distribution in accordance with the terms of this Plan, *provided however*, that at its election, EVF1 or its nominees, may elect to take title of the Properties subject to the existing  EVF1 Mortgages.

### 5.15.  *Reserves.*

Any reserves maintained by the Debtors or the Plan Administrator, as the case may be, in connection with the distribution of funds on account of Allowed Claims, may be maintained by bookkeeping entries alone; the Debtors or the Plan Administrator, as the case may be, need not (but may) establish separate bank accounts for such purposes.

### 5.16.  *Termination of Plan Administrator.*

The duties, responsibilities and powers of the Plan Administrator shall terminate upon the closing of the Chapter 11 Cases.

### 5.17.  *Closing of the Chapter 11 Cases.*

After the Debtors' Chapter 11 Cases have been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to file a final decree and close such Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6.    GOVERNANCE

### 6.1.  *Managing Member.*

The Managing Member of the Debtors, who held such position on the Commencement Date, shall continue to serve as the Managing Member of the Debtors until the next annual meeting or upon the removal or resignation of such individual.

### 6.2.  *Limited Liability Company Existence.*

After the Effective Date, the Managing Member may decide to (a) maintain the Debtors as limited liability companies in good standing until such time as all aspects of the Plan pertaining to the Debtors have been completed, or (b) at such time as the Managing Member considers appropriate and consistent with the implementation of the Plan pertaining to the Debtors, dissolve the Debtors and complete the winding up of such Debtors without

the necessity for any other or further actions to be taken by or on behalf of the Debtors or their members or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities; provided, however, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in one or more of the Debtors.

### 6.3.    *Wind Down*

After the Effective Date, pursuant to the Plan, the Plan Administrator shall wind-down, sell and otherwise liquidate assets of the Debtors.  The wind-down, sale and liquidation of the Debtors' assets (as determined for federal income tax purposes) shall occur over a period not to exceed twelve (12) months after the closing of the Sale of the Properties.

### 6.4.    *Certificate of Organization and By-Laws*.

As of the Effective Date, the certificate of organization and by-laws of the Debtors shall be amended to the extent necessary to carry out the provisions of the Plan. The amended certificate and by-laws of the Debtors (if any) shall be contained in the Plan Supplement.

## SECTION 7.    DISTRIBUTIONS.

### 7.1.    *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtors shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Debtors or the Plan Administrator shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

### 7.2.    *Date of Distributions*

Except as otherwise provided herein, the Debtors shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and, thereafter, the Debtors shall from time to time determine the subsequent Distribution Dates, if any. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Plan Administrator shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Plan Administrator shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

### 7.3.   *Delivery of Distributions.*

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors or the Plan Administrator, as applicable, have determined the then current address of such holder, at which time such distribution shall be made to such holder without Interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Plan Administrator shall have no obligation to locate the current address for a returned distribution.

### 7.4.   *Manner of Payment Under Plan.*

At the option of the Debtors or the Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer.

### 7.5.   *Minimum Cash Distributions.*

The Plan Administrator shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; provided, however, that if any distribution is not made pursuant to this Section 7.5, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Plan Administrator shall not be required to make any final distributions of Cash less than $50 to any holder of an Allowed Claim. If either (a) all Allowed Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed Claims would be $50 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $2,500, then no further distribution shall be made by the Plan Administrator and any surplus Cash shall be donated and distributed to an I.R.C. § 501(c)(3) tax-exempt organization selected by the Plan Administrator.

### 7.6.   *Setoffs*.

The Debtors and the Plan Administrator may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors or the Plan Administrator may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the

Debtors or the Plan Administrator of any such Claim the Debtors or the Plan Administrator may have against the holder of such Claim.

### 7.7. *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 7.8. *Allocation of Distributions Between Principal and Interest*.

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 7.9. *Payment of Disputed Claims*

As Disputed Claims are resolved pursuant to Section 8 hereof, the Plan Administrator shall advise the Debtors to make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Plan Administrator in the Plan Administrator's sole discretion.

## SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS.

### 8.1. *Allowance of Claims*.

After the Effective Date, the Debtors or the Plan Administrator shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

### 8.2. *Objections to Claims.*

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator. Such objections and requests for estimation shall be served and filed (a) on or before the 60th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Plan Administrator.

### 8.3.    *Estimation of Claims.*

The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 8.4.    *No Distributions Pending Allowance*.

If an objection to a Claim is filed as set forth in Section 8, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.5.    *Resolution of Claims*.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Plan Administrator or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

### 8.6.    *Disallowed Claims*.

All Claims held by persons or entities against whom or which any of the Debtors or the Plan Administrator has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes

until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Plan Administrator from such party have been paid.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 9.1.  *Assumption and Assignment of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically assumed pursuant to sections 365 and 1123 of the Bankruptcy Code, and assigned to the Purchaser of the Property unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Purchase Agreement as being rejected in connection with Confirmation of the Plan or under the Purchase Agreement; (2) as of the Effective Date is subject to a pending motion to reject such Unexpired Lease or Executory Contract; (3) was previously assumed or assumed and assigned to a third party during the pendency of the Chapter 11 Cases; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

### 9.2.  *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim or by EVF1, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (1) the amount of the Cure Obligation, (2) the ability of the Debtors' Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that, depending on whether the Plan Administrator or the Purchaser has the obligation to pay the Cure Obligation, such party may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed Cure Obligations to be sent to applicable counterparties to the Executory Contracts and Unexpired Leases. Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than ten (10) days after service of notice of the Debtors' proposed assumption and associated Cure Obligation. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount will be deemed to have assented to such Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 9.3. *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Plan Administrator no later than fourteen (14) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Plan Administrator, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

### 9.4. *Purchase Agreement*

The Debtors' assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to EVF1's rights and obligations, including any Cure Obligations assumed by it in accordance with the Purchase Agreement, with respect to any such Executory Contracts or Unexpired Leases assigned to EVF1 pursuant to the terms of the Purchase Agreement.

### 9.5. *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 9.6. *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability there under.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## SECTION 10.    *[Intentionally Omitted]*

## SECTION 11.    CONDITIONS TO THE EFFECTIVE DATE.

### 11.1.  *Condition to the Confirmation Hearing*

The Confirmation Hearing shall not commence unless the Plan is not confirmed by September 15, 2017.  Section 11.1(a) may be waived in writing by EVF1.

### 11.2.  *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b)    Funds from EVF1 necessary to fund the Plan pursuant to the terms of this Plan have been transferred to the Plan Administrator;

(c)      all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtors and EVF1, and the transactions and other matters contemplated thereby, shall have been effected or executed;

(d)      all governmental and third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

(e)      all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

### 11.3.   *Waiver of Conditions Precedent.*

Each of the conditions precedent to the Effective Date in Section 11.2 other than the condition set forth in section 11.2(a) may be waived in writing by the Debtors.

### 11.4.   *Effect of Failure of Conditions to Effective Date*.

If the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur, (i) no distributions under the Plan shall be made; (ii) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred; and (iii)  all monies transferred to the Plan Administrator for confirmation shall be held in escrow within three (3) business days of the Confirmation Order being vacated.

## SECTION 12.    EFFECT OF CONFIRMATION.

### 12.1.   *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the Debtors free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided pursuant to this Plan and the Confirmation Order.  To the extent the Properties are transferred to EVF1 or its nominee, EVF1 Liens shall remain on the Properties.

### 12.2.   *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and

interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors, unless sold to EVF1 pursuant to the Sale Transaction, provided however, that the Lien securing EVF1 Secured Class 2 Claim shall not be deemed released until the EVF1 Class 2 Secured Claim and the Protective Advance Claim has been paid in full by transfer of the Properties to EVF1 in accordance with the terms of this Plan.

### 12.3.  *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Plan Administrator to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 12.4.  *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

### 12.5.  *Discharge of Claims and Termination of Interests.*

Except as otherwise provided in the Plan, effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates; (b) all Claims and Interests shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (c) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Plan Administrator, EVF1, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

### 12.6.  *Term of Injunctions or Stays*.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**12.7.**  *Plan Injunction.*

**Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtors' obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtors as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtors, from the Properties, or from properties of the Estates that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Properties and any property of the Estates that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtors, from the Properties, or from property of the Estates, any claim, any obligation or debt that was held against the Debtors by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.**

**12.8.**  *Limitation of Liability*

To the extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.  Nothing in this Section 12.8 shall limit the liability of the Debtors' professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtors or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtors or any of their respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever,

including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtors or any of their respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority.

### 12.9. *Release*

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtors, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtors, their Creditors or Interest Holder ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtors may assert on their own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtors absent bankruptcy, any claims based on the conduct of the Debtors' business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan).

### 12.10. *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

### 12.11. *Plan Supplement.*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court by no later than seven (7) days prior to the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## SECTION 13.    RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

(b)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)    to insure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)    to enter the Sale Order and adjudicate any dispute related to such order, or the Sale Transaction;

(g)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)    to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Purchase Agreement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtors' tax liability under section 505(b) of the Bankruptcy Code);

(n)    to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)    to enter a final decree closing the Chapter 11 Cases;

(r)    to enforce all orders previously entered by the Bankruptcy Court;

(s)    to recover all assets of the Debtors and property of the Debtors' Estate, wherever located; and

(t)    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 14.    MISCELLANEOUS PROVISIONS.

### 14.1.    *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Debtors or the Plan Administrator shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtors' Chapter 11 Cases; provided, however, that after the Effective Date such fees shall only be payable with respect to the Debtors' Chapter 11 Cases until such time as a final decree is entered closing the Debtors' Cases, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Debtors' Cases is entered.

### 14.2.    *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 14.3.    *Amendments.*

(a)    *Plan Modifications*. The Plan may be amended, modified or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided that such amendments, modifications, or supplements

shall be satisfactory in all respects to the Debtors and EVF1. In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)     *Other Amendments.* Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

### 14.4.   *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right, after good-faith consultation with EVF1, to revoke or withdraw the Plan, prior to the Confirmation Date. If the Debtors, in good-faith, in consultation with EVF1, revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

If the Plan is revoked, the Debtors will not object to a plan proposed by the Secured Creditor, and any revocation shall be subject to the terms and conditions contained in the Final Cash Collateral Stipulation and Order.

### 14.5.   *Severability of Plan Provisions upon Confirmation*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as the case may be); and (3) nonseverable and mutually dependent.

### 14.6.  *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 14.7.  *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 14.8.  *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 14.9.  *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, EVF1, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Plan Administrator.

### 14.10.  *Successor and Assigns*.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

### 14.11.  *Entire Agreement*.

On the Effective Date, the Plan, the Plan Supplement, the Purchase Agreement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

### 14.12.  *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided

herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> (i) if to the Debtors:
>> c/o FIA Capital Partners LLC
>> 7280 West Palmetto Park Road
>> Suite 203-N
>> Boca Raton, Florida 33433
>> Facsimile: (866)353-6360
>> Attention: David Goldwasser
>
> - and –
>> Robinson Brog Leinwand Greene Genovese & Gluck P.C.
>> 875 Third Avenue, 9th Floor
>> New York, New York 10022
>> Telephone: (212) 603-6300
>> Facsimile: (212) 956-2164
>> Attention: Steven B. Eichel, Esq.
>
>
> (ii) if to the Plan Administrator:
>> Goldberg Weprin Finkel Goldstein
>> 1501 Broadway, 22nd Floor
>> New York, NY  10036
>> Telephone: (212) 221-5700
>> Facsimile: (212) 730-4518
>> Attention:  Kevin J. Nash, Esq.

After the Effective Date, the Debtors shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

### 14.13. *Orders in Aid of Consummation.*

Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

### 14.14. *Due Authorization by Creditors.*

Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way

defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

### 14.15. *Request for Relief Under Section 1129(b).*

If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtors may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Creditors, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

### 14.16. *Filing of Additional Documents.*

Except as otherwise provided in the Plan, on or before the Effective Date, the Debtors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtors shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree.  The Debtors shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree.

*[signatures on following page]*

Dated: June 23, 2017
      New York, New York

East Village Properties LLC, 223 East 5th Street LLC, 229 East 5th Street LLC, 231 East 5th Street LLC, 233 East 5th Street LLC, 235 East 5th Street LLC, 228 East 6th Street LLC, 66 East 7th Street LLC, 27 St Marks Place LLC, 334 East 9th Street LLC, 253 East 10th Street LLC, 325 East 12th Street LLC, 327 East 12th Street LLC, 329 East 12th Street LLC, 510 East 12th Street LLC, and 514 East 12th Street LLC

By:  /s/ David Goldwasser
      David Goldwasser
      Managing Member

ROBINSON BROG LEINWAND GREENE
  GENOVESE & GLUCK P.C.
Attorneys for the Debtors
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.:  (212) 603-6300

By: /s/ A. Mitchell Greene
      A. Mitchell Greene