JAMES B. FISHMAN
**FISHMAN ROZEN, LLP**
305 Broadway, Suite 900
New York, NY 10007
jbfishman@fmlawoffices.net
 (212) 890-5840

*Attorney for Michiveni Tigrai*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| EAST VILLAGE PROPERTIES LLC et al., | Case No. 17-22453-RDD |
| Debtors. | Jointly Administered |

**MACHIVENI TIGRAI'S OPPOSITION TO DEBTORS' FIRST OMNIBUS OBJECTION SEEKING TO REDUCE OR EXPUNGE CLAIMS RELATING TO EAST VILLAGE PROPERTIES LLC**

Claimant Machiveni Tigrai ("Tigrai"), by and through his undersigned counsel, respectfully

submits this Opposition (the "Opposition") to the Debtor's First Omnibus Objection Seeking to

Reduce or Expunge Claims Relating to East Village Properties LLC (the "Omnibus Objection"),

filed by debtor East Village Properties (the "Debtor"), dated July 11, 2017, Dkt. No. 147. In

response to the Omnibus Objection, Tigrai respectfully requests that the Court approve his Proof of

Claim and confirm that he has a fully executed written agreement with which he expects the creditor

to abide.

## PRELIMINARY STATEMENT

Mr. Tigrai became a rent stabilized tenant of the 327 East 23th Street LLC ("creditor") on

February 11, 2008. In or about March 2015, Mr. Tigrai discovered that he had been overcharged by

the creditor. Accordingly, in or about August 2015 he filed a complaint of rent overcharge with the

Department of Housing and Community Renewal ("DHCR"). In or about April 2016, Rafael

Toledano, as representative of the Creditor, approached Mr. Tigrai with an offer to vacate the

subject apartment and withdraw his rent overcharge claim in exchange for a payment of money.

Over the following six months, Toledano and Tigrai reached an agreement, which was

reduced to a written document dated October 1, 2016 (the "Agreement", Exhibit A), drafted by the

creditor, which provided for Mr. Tigrai's agreement to vacate the subject apartment on or before

January 31, 2017 and withdraw his rent overcharge complaint in exchange for the simultaneous

payment of $260,000.00.

Notably, the agreement failed to include a provision which would have provided for the

funds to be placed in an escrow account until the both parties complied with the agreement. Such

escrow provision is a standard component in agreements such as this, when by attorneys.

Mr. Tigrai fully complied with all of his obligations under the agreement, including timely

and completely vacating and surrendering possession of the subject apartment on the vacate date and

withdrawing his rent overcharge complaint. Despite his full compliance, the creditor failed and refused to comply with its obligation under the Agreement to make payment to the Mr. Tigrai of the promised $260,000.00.

Paragraph 11 of the Agreement threatens that Mr. Tigrai would be sued in an "action or holdover proceeding" if he failed to vacate and in such action he "waive[d] all defenses… and consent[ed] to the immediate entry of a final judgment of possession [and] execution of a warrant of eviction forthwith and a money judgment…". Accordingly, he vacated the apartment under the Agreement because he was concerned he would be evicted if he did not.

On February 15, 2017, the creditor, by an authorized agent, advised the Plaintiff "[W]e don't have the funds available at this moment. The owner will have to advise you as of when he can provide funding." (Emails attached as Exhibit B)

As a result of the creditor's breach of the agreement, Mr. Tigrai was rendered homeless and was forced to sleep in a U-Haul truck containing his possessions for an extended period of time.

The creditor utterly failed in its obligations under the agreement. Mr. Tigrai filed an Order to Show Cause in New York County Supreme Court, which was entered on March 6, 2016 (Exhibit C). Only by virtue of that emergency court process was Mr. Tigrai restored to possession of his apartment. However, his continued possession of the apartment in no way vitiates the agreement he entered into with the creditor; nor does it obviate the creditor from his obligation, under the lease and the Order to Show Cause, to reimburse Mr. Tigrai for his reasonable attorney's fees.

The instant bankruptcy case was filed on March 28, 2017, nearly six months after the Agreement was signed. See Dkt. No. 1, Petition # 17-22465-rdd. As a result, Mr. Tigrai filed a timely amended Proof of Claim outlining the funds owed and attaching the agreement. See Claim No. 10.

Debtor mentions in the Omnibus Objection, in order to retain the presumption that the claim

- 3 -

is *prima facie* valid under Bankruptcy Rule 2001(f), the objecting party only has to refute "at least one of the allegations that is essential to the claim's legal sufficiency." *In re WorldCom, Inc.*, No. 02-13533, 2005 WL 3832065, at \*4 (Bankr. S.D.N.Y. 2005) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). However, Debtor did not present any evidence to negate the *prima facie* validity of the filed claim.[1] The alleged support for assertion that Mr. Tigrai's claim is deficient is simply "No money due as per the Debtors' books and records." Omnibus Opposition at Exhibit N. There is no supporting documentation showing that there is in fact no money due.

Instead, the fully executed Agreement clearly shows that, despite what the Debtor's books might represent, these funds are properly owed to Mr. Tigrai, as part of the instant bankruptcy proceeding. A claim is defined as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or right to any equitable remedy." 11 U.S.C. §101(5)(2000). Further, "a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition." *LTV Steel Co. v. Shalala* (In re Chateaugay"), 53 F.3d 478,498 (2d Cir. 1995).

There can be no question that Mr. Tigrai's Agreement is enforceable. In fact, Debtors admit that "the sale is subject to all existing tenant leases, so that there will be no rejection claims." Omnibus Opposition at 6. Mr. Tigrai only wants what was agreed to and to be made whole pursuant to the terms of the Agreement, including, but not limited to, specific performance payment, in exchange for vacature from the apartment.

## **CONCLUSION**

---

[1] Even if Debtor has provided enough evidence to negate the prima facie validity of the filed claim, Mr. Moffett's executed Agreement and the Relocation Apartment Lease are sufficient to prove the validity of the claim by the preponderance of the evidence. See *In re Allegheny Int' l, Inc., 954 F2d at 173-74.*

Mr. Tigrai respectfully requests that Court approve his Proof of Claim and confirm that he has a

fully executed written agreement with which he expects the owner to abide.


Dated: January 29, 2018
      New York, New York

*James B. Fishman*

_____
JAMES B. FISHMAN
FISHMAN ROZEN, LLP
305 Broadway, Suite 900
New York, New York 10007
Attorneys for Machiveni Tigrai