| | |
|---|---|
| **ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**<br>875 Third Avenue<br>New York, New York 10022<br>A. Mitchell Greene<br>*Attorneys for the Debtors and Debtors in Possession* | **Presentment Date and Time:**<br>**January 6, 2021 at 12:00 p.m.** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

| | |
|---|---|
| In re:<br><br>**EAST VILLAGE PROPERTIES, LLC,**<br>*et al.*[1]<br><br>                              Debtors. | Chapter 11<br><br>Case No: 17-22453-rdd<br><br>(jointly administered) |

----------------------------------------------------------X

**MOTION FOR ORDER (A) APPROVING
SETTLEMENT AGREEMENT PURSUANT TO RULE 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE; (B) RESOLVING DEBTORS'
OBJECTION TO PROOFS OF CLAIM FILED BY THE OFFICE OF THE ATTORNEY
GENERAL OF THE STATE OF NEW YORK
<u>AND (C) GRANTING RELATED RELIEF</u>**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

  East Village Properties, LLC, et al., the debtors and debtors in possession (the

"Debtord"), by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., seek

entry of an order (a) approving the Assurance of Discontinuance (the "Settlement Agreement")[2]

between the Office of the Attorney General of the State of New York ("AG") and Madison

Realty Capital Advisors, LLC ("Madison") pursuant to Section 105 of Title 11 of the United

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' taxpayer identification number are as follows:  East Village Properties LLC (1437); 223 East 5th Street LLC (8999); 229 East 5th Street LLC (8348); 231 East 5th Street LLC (4013); 233 East 5th Street LLC (8999); 235 East 5th Street LLC (1702); 228 East 6th Street LLC (2965); 66 East 7th Street LLC (1812); 27 St Marks Place LLC (1789); 334 East 9th Street LLC (7903); 253 East 10th Street LLC (4317); 325 East 12th Street LLC (0625); 327 East 12th Street LLC (7195); 329 East 12th Street LLC (0475); 510 East 12th Street LLC (1469); and 514 East 12th Street LLC (7232).
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.  The Settlement Agreement is attached hereto as Exhibit A.

{01062560.DOCX;6 }

States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (b) resolving the Debtors' objection to the proofs of claim filed by the AG against the Debtors' Estates; and (c) granting related relief. In support thereof, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this application pursuant to sections 1334 and 157 of title 28 of the United States Code (the "Judicial Code").

2. This motion has been referred to this Court for consideration pursuant to Section 157 of the Judicial Code and the *Standing Order of Reference Regarding Title 11* (S.D.N.Y. Feb 1, 2012) (Preska, C.J.).

3. This is a core proceeding arising under title 11 of the United States Code. See 28 U.S.C. §157(b)(1).

4. Venue of this application in this district is proper pursuant to section 1409 of the Judicial Code. The statutory predicate for the relief sought herein are sections 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

5. On March 28, 2017 (the "Petition Date"), the Debtors commenced with this Court voluntary cases under the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only.

6. The Debtors own fifteen residential apartment building located in the East Village area of New York City located at 27 St. Marks Place, 514 East 12th Street, 223 East 5th Street, 229 East 5th Street, 231 East 5th Street, 233 East 5th Street, 235 East 5th Street, 66 East 7th Street,

253 East 10th Street, 510 East 12th Street, 228 East 6th Street, 325 East 12th Street, 327 East 12th Street, 329 East 12th Street and 334 East 9th Street (collectively, the "Properties"). The Debtors' Properties are encumbered by five mortgages granted in favor of its secured creditor, EVF1 LLC ("EVF1"). EVF1 is an affiliate of Madison. As of the Petition Date, the Debtors were in default of their obligations to EVF1. EVF1 accelerated each of the loans and commenced an action to foreclose the mortgages in the Supreme Court of the State of New York, County of New York, Index No. 850052/2017. In order to avoid the potential loss of the Properties to a foreclosure, the Debtors sought the protections afforded them by the Bankruptcy Code in order to preserve the Properties and resolve their disputes with EVF1.

7. Debtors engaged in discussions with EVF1 in an effort to globally resolve the EVF1 claims both prior and subsequent to the Petition Date. Negotiations with EVF1 were lengthy and extensive and resulted in an agreed to cash collateral stipulation which established various milestones for the Debtors' cases including deadlines for filing and confirming a plan of reorganization. Debtors complied with or otherwise obtained written extensions of the milestone deadlines and prepared and filed a plan and disclosure statement, which documents were subsequently amended and/or modified and which provided for either EVF1 to fund the plan or for the proceeds of the sale of the Properties to an entity that outbids EVF1 to fund the plan. A notice of auction sale of the Properties was published in the New York Real Estate Journal, but did not result in there being any qualified bidders for the Properties.

8. In addition, prior to the Petition Date, Debtors' prior management, Brookhill Management and Raphael Toledano ("Toledano"), were removed from managerial authority of the Debtors and the Properties by their Board, including the Independent Director. Part of the global resolution of the EVF1 claims included installing new management over the Properties.

Silverstone Property Group ("SPG") has acted as property manager throughout these proceedings.

9.  An order entered on April 25, 2017 established June 1, 2017 as the bar date for the filing of general proofs of claim against the Debtors and September 25, 2017 as the bar date for the filing of claims by governmental units. After the general bar date passed, Debtors, through their counsel filed various motions objecting to claims and have successfully resolved a significant amount of claims filed in these cases by stipulation or order expunging, reducing or otherwise fixing the claims in agreed to amounts.

10. Debtors' plan and disclosure statement were initially filed in May 2017 and were subsequently amended. The Debtors' second amended disclosure statement was approved by order entered on July 5, 2017. RBLGGG served the required solicitation materials and a ballot certification with respect to the Debtors' second amended plan[3] was filed on October 19, 2017 reflecting that three impaired classes of claims cast ballots voting to accept the plan and one impaired class of claims cast ballots voting to reject the plan.

11. The Debtors' proposed third amended joint plan of reorganization[4] provided for the substantive consolidation of the Debtors and their estates for purposes of implementing the plan. The plan, which was to be implemented by funding in the amount of $13,500,000 from EVF1, in exchange for EVF1 taking title to the Properties, provided for distribution to general unsecured creditors on a pro rata basis. Debtors anticipated a substantial distribution to general unsecured creditors holding allowed claims.

---

[3] The plan was amended by the filing of the Third Amended Joint Plan of Reorganization of East Village Properties LLC and Affiliate Debtors on October 10, 2017, a date after the solicitation materials were served in accordance with the order approving the disclosure statement. Debtors submit that the modifications to the third amended plan did not require further solicitation of ballots.

[4] See Third Amended Joint Plan of Reorganization of East Village Properties LLC and Affiliated Debtors (ECF doc. no. 248).

12. However, in September 2017, the AG, through their Consumer Frauds Bureau filed proofs of claim[5] (the "AG Proofs of Claim") against each of the Debtors alleging as their basis: "Investigation for fraud, illegality and deceptive practices" and seeking restitution and statutory penalties in the amount of $5,000,000, which claims, if recognized as valid, would result in a substantial dilution of the unsecured creditor distribution, including tenants, the constituency the AG is charged with protecting.

13. The investigation referenced in the AG Proofs of Claim was the investigation of Madison and Toledano and certain of their respective affiliates and included an investigation into Toledano's acquisition of the subject Properties which acquisition was funded by loans originated by EVF1.

14. On November 8, 2018, the Debtors' filed their objection to the AG Proofs of Claim on the basis that, amongst other arguments, the AG Proofs of Claim are duplicative; failed to attach documentation to support the claims being asserted; sought remedies that were injunctive in nature and inapplicable in the Debtors' cases; and if allowed would serve only to negatively impact other creditors, including the tenants at the Properties, the constituency the AG is charged with protecting. The claim objection has been carried as the parties engaged in settlement negotiations.

15. In June 2019, the AG filed a complaint against Toledano and certain other defendants which was resolved by a consent and stipulation signed on June 19, 2019 and a consent order and judgment entered on August 5, 2019.

---

[5] A total of 16 claims were filed by the AG. A $5,000,000 claim was filed in each of the jointly administered Debtors' cases, each duplicative of the other. For purposes of this motion, the resolution of the AG Proofs of Claim assumes that the claim filed in the lead Debtor case: In re East Village Properties LLC, claim no. 30, will be the governing claim and all of the claims filed in the related cases will be expunged in their entirety.

16.     The AG and Madison subsequently engaged in negotiations to resolve the AG investigation of Madison which resulted in the Settlement Agreement, a copy of which is attached hereto as Exhibit A.

17.     While the Debtors are not parties to the Settlement Agreement, the Settlement Agreement globally resolves the AG investigation of Madison and the Debtors and contains a number of provisions regarding the Properties and EVF1 (or its designee's) responsibilities in connection with its eventual ownership of the Properties. These responsibilities include, but are not limited to, EVF1 contributing the sum of $150,000 to the Debtor's plan to fund the settlement of the AG Proofs of Claim; EVF1 consenting to a $1,050,000 rent credit[6] to be distributed to current tenants at the Properties at the AG's discretion; EVF1 committing to the placement of ten (10) formerly-homeless families in apartments at the Properties; EVF1 or its designee taking title to the Properties subject to an agreed upon rent roll which will serve as the basis for any future rent increases at the Properties in accordance with the terms and conditions of the Settlement Agreement; EVF1 establishing certain protocols to protect tenant health and safety; and various reporting requirements.

18.     The Settlement Agreement requires certain financial and other commitments from EVF1 (or its designee) that impacted EVF1's funding of the Debtors' plan and required Debtors and EVF1 to modify the plan previously filed and EVF1's funding commitments therein.

19.     Simultaneous with the filing of this 9019 motion, the Debtors are filing their proposed disclosure statement for their joint plan of liquidation, their plan of liquidation and a motion to consider approval of the disclosure statement and establishing related confirmation deadlines. The date secured for a telephonic hearing in the event of any objections to the

---

6 The $1,050,000 rent credit will be issued upon the earlier of (1) approval of the Settlement Agreement; or (2) March 1, 2021.

{01062560.DOCX;6}                               6

Settlement Agreement is January 7, 2021 at 10:00 a.m. The requested return date for the telephonic hearing to consider the adequacy of the information contained in the disclosure statement is also January 7, 2021 at 10:00 a.m.

20. The Debtors' previously filed plan as well as the proposed plan of liquidation being filed simultaneously herewith provide for EVF1, or its nominee or designee, to take title to the Properties on the effective date of the plan. Approval of the Settlement Agreement is therefore a necessary precursor to the Debtors' proposed plan of liquidation, which liquidating plan encompasses the terms of the Settlement Agreement.

21. The Settlement Agreement also specifically resolves the AG Proofs of Claim and the Debtors' objection to the AG Proofs of Claim. The Plan incorporates the resolution of the AG Proofs of Claim, separately classifying the AG Proofs of Claim, and providing for its resolution by the $150,000 settlement sum payment by the Debtors with such payment to be funded by EVF and the other relief agreed upon in the Settlement Agreement.

22. Debtors submit that approval of the Settlement Agreement which specifically provides for the resolution of the AG Proofs of Claim, advanced their negotiations with EVF1. As a result, Debtors and EVF1 reached an agreement on EVF1's funding commitment for the Debtors' plan as set forth in the disclosure statement and plan of liquidation being filed simultaneously herewith, and, subject to Bankruptcy Court approval, the resolution and conclusion of the Debtors' cases. Approval of the Settlement Agreement is therefore appropriate under the circumstances.

23. Moreover, the Settlement Agreement requires Bankruptcy Court approval.

24. Debtors respectfully refer the Court to the Settlement Agreement for its specific terms[7].

25. With respect to the AG Proofs of Claim and the resolution of the Debtors' objection to the AG Proofs of Claim, Debtors refer the Court to Paragraph 24 of the Settlement Agreement which provides that the AG Proofs of Claim will be fully and finally resolved in exchange for EVF1 funding the sum of $150,000 to the AG through the Debtors' plan and the other relief agreed upon in the Settlement Agreement.

26. The Settlement Agreement requires that the $150,000 settlement sum be paid by the earlier of the Bankruptcy Court's approval of this Motion and March 1, 2021. As the hearing to consider approval of the disclosure statement is scheduled for January 7, 2021 and the confirmation hearing is currently calendared for February 12, 2021, the parties have agreed that EVF1 will fund the $150,000 to be held in escrow by Debtors' counsel prior to December 31, 2020 with such payment to be released to the Attorney General, subject to, and upon approval of the Settlement Agreement and to the extent released prior to the confirmation hearing, will be considered a pre-paid plan obligation.

## RELIEF REQUESTED

## APPROVAL OF THE SETTLEMENT AGREEMENT

27. By this motion, the Debtors seek entry of an order approving the Settlement Agreement pursuant to Bankruptcy Rule 9019 and resolving the Debtors' objection to the AG Proofs of Claim. The Debtors submit that approval of the Settlement Agreement is in their best interest and the best interests of their jointly administered estates because it resolves the $5,000,000 claim asserted against the estates by the AG and promoted the resolution of EVF1's

---

[7] Any summary of the Settlement Agreement contained is this Motion is qualified entirely by the terms of the Settlement Agreement, a copy of which is attached hereto as **Exhibit A**. In the event of a conflict between this Motion and the terms of the Settlement Agreement, the Settlement Agreement shall govern.

funding of the Debtors' plan, providing for the Debtors' exit from chapter 11 by way of a confirmed liquidating plan.

28. Absent the settlement, the AG, Debtor and EVF1 would be engaged in complex, time-consuming and expensive litigation.

29. Approval of a proposed settlement is within the sound discretion of the bankruptcy court, See, In re Remsen Partners, Ltd., 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2002) (citing Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.), 762 F.2d 185, 189 (2d Cir. 1985)).

30. Bankruptcy Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

31. Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established in the case law, focusing upon whether the proposed settlement is reasonable and in the best interests of creditors. *See* Protective Committee v. Anderson, 390 U.S. 414 (1968), *reh'g denied*, 391 U.S. 909 (1968).

32. In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated by the Supreme Court in Anderson, as developed and applied by the case law. Thus, courts assess a proposed settlement based upon a consideration of some or all of the following factors:

(i) the relative benefits to be received by creditors under the proposed settlement;
(ii) the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;
(iii) the prospect of complex and protracted litigation if settlement is not approved;
(iv) the attendant expense, inconvenience and delay of litigation;
(v) the probable difficulties of collecting on any judgment that might be obtained;
(vi) the competency and experience of counsel who support the proposed settlement;
(vii) the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;
(viii) the nature and breadth of any releases to be issued as a result of the proposed settlement; and
(ix) the paramount interest of the creditors and proper deference to their reasonable views.

See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974); In re Ionosphere Clubs, Inc., 156 B.R. 414, 427 (S.D.N.Y. 1993); In re Purified Down Products Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); In re International Distribution Centers, Inc., 103 B.R 420, 422 (S.D.N.Y. 1989); In re Fugazy, 150 B.R. 103,106 (Bankr. S.D.N.Y. 1993); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991).

33. In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial, "mini-trial," or "a rehearsal of the trial" on the merits to actually resolve the extant factual and legal issues, but must simply consider whether against the background of those issues, the settlement is reasonable. Newman v. Stein, 464 F. 2d 689, 692 (2d Cir. 1972), *cert. denied sub nom.* Benson v. Newman, 409 U.S. 1039 (1972). *See also,* International Distribution Centers,103 B.R. at 423; Drexel Burnham, 134 B.R. at 496. In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims

and the settlement arose. *See* Anderson, 390 U.S. at 444; Purified Down Products, 150 B.R. at 519, 524; International Distribution Centers, 103 B.R. at 423.

34. The settlement evaluation process is not designed to substitute the court's judgment for that of a trustee. In re Carla Leather, Inc., 44 B.R. 457, 465 (S.D.N.Y. 1984). While the Court is not expected to "rubber stamp" a proposed settlement, the Court should "give considerable weight to the informed judgment of the Debtor that the compromise is fair and equitable and the support of the Committee to the settlement." *See* Anderson, 390 U.S. at 444; Ionosphere, 156 B.R. at 426; International Distribution Centers, 103 B.R. at 423; Drexel, 134 B.R. at 496; Carla Leather, 44 B.R. at 472. As articulated by the district court in International Distribution Centers, the Court should give weight to the support not only of the Debtor's counsel but of other counsel to a settlement in determining the wisdom of the compromise. International Distribution Centers, 103 B.R. at 423.

35. In determining whether the proposed settlement is fair and equitable, two principles should guide this Court. First, "[c]ompromises are favored in bankruptcy," 10 Collier on Bankruptcy, ¶ 9019.01 (Richard Levin & Henry J. Sommer eds.,16th ed.) (citing In re Sassalos, 160 B.R. 646, 653 (D. Ore. 1993)), and are "a normal part of the reorganization process." Anderson, 390 U.S. at 424, 88 S.Ct. at 1163 (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130, 60 S.Ct. 1, 14 (1939)); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake…."); In re Michael, 183 B.R. at 232 (Bankr. D. Mont. 1995) ("[I]t is also well established that the law favors compromise."); In re Best Products Co., 16 B.R. at 50; Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Court recognizes "the general rule that settlements are favored….").

36. Second, settlements should be approved if they rise above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide

the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983); Drexel Burnham, 138 B.R. at 758–59 (Bankr. S.D.N.Y. 1992); In re Planned Protective Servs., Inc., 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); *see generally* In re Blair, 538 F.2d 849, 851 (9th Cir. 1976) (Court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. Nellis, 165 B.R. at 123; In re Tech. for Energy Corp., 56 B.R. 307, 311-312 (Bankr. E.D. Tenn. 1985); In re Mobile Air Drilling Co., Inc., 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985).

       37.     In In re Iridium Operating LLC, 478 F.3d 452 (2d Cir. 2007), the Second Circuit identified the following factors in determining whether a settlement is fair and equitable:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

Id. at 462 (citations omitted). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the cost of the proposed settlement.

38.     Applying the above factors to the Settlement Agreement, the Debtors believe that it should be approved because it is fair and equitable and clearly falls within the "range of reasonableness" thereby satisfying the standard for approval.

39.     The Settlement Agreement, which was negotiated by and between the AG and EVF1 and which negotiations included the Debtors as it related to the resolution of the AG Proofs of Claim, was agreed to after a significant and lengthy period of time. The Settlement agreement provides for the resolution of the $5,000,000 claim of the AG against the Debtors' estates for a payment in the amount of $150,000 to be funded by EVF1. The Settlement Agreement also requires various commitments to the tenants at the Properties including a $1,050,000 rent credit and various safety protocols, all of which will inure to the benefit of the tenants, many of whom are creditors of the Debtors' estates. The $1,050,000 rent credit will be issued on the earlier of (1) approval of the Settlement Agreement; or (2) March 1, 2021. The full and final resolution of the AG Proofs of Claim for $150,000 to be funded by EVF1 not only relieves the estate of a significant financial burden, it eliminates the need to prosecute the pending claim objection motion. Approval of the Settlement Agreement will also further advance these chapter 11 cases, including the Debtors seeking approval of the disclosure statement for plan of liquidation being filed simultaneously herewith and thereafter, resoliciting and confirming their liquidating plan. The resolution of the $5,000,000 AG Proof of Claim for $150,000 is equivalent to a 3% distribution. The modified liquidating plan provides for an approximate aggregate 25% return, to be paid over time, to allowed unsecured creditors and allowed tenant claims. Approval of this financial component of the Settlement Agreement clearly benefits creditors in addition to the other components of the Settlement Agreement which provide for significant protections, both financial and otherwise, for the tenant constituency. Ultimately, the Settlement Agreement provides a substantial benefit to the Debtors, their estates

and creditors and its approval will result in the anticipated February 12, 2021 confirmation of the Debtors' liquidating plan.

40. The Debtors submit that the Settlement Agreement is fair and reasonable, falls well above the lowest level of reasonableness and is in the best interests of the Debtors and their jointly administered estates and accordingly, the Debtors requests that the Court approve the Settlement Agreement.

41. The Debtors have served a copy of this motion by mail upon (i) the Office of the United States Trustee, Attn: Serene Nakano, Esq./Shara Cornell, Esq; (ii) all creditors entitled to notice pursuant to Bankruptcy Rule 9019; and (iii) all parties who filed notices of appearance or are otherwise entitled to notice in the Debtors' cases.

42. No prior motion for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtors request that this Court enter an order approving the Settlement Agreement, resolving the Debtors' objection to AG Proofs of Claim, and that such other and further relief be granted as may be just and proper.

**DATED:**    New York, New York
December 14, 2020

>                     ROBINSON BROG LEINWAND GREENE
>                      GENOVESE & GLUCK P.C.
>                     Attorneys for the Debtors
>                     and Debtors in Possession
>                     875 Third Avenue, 9th Floor
>                     New York, New York 10022
>                     Tel. No.: 212-603-6300
>
>                     By: /s/ A. Mitchell Greene
>                         A. Mitchell Greene