# **EXHIBIT A**

ATTORNEY GENERAL OF THE STATE OF NEW YORK
CONSUMER FRAUDS AND PROTECTION BUREAU
_____

In the Matter of

**Investigation by LETITIA JAMES,**
**Attorney General of the State of New York,** of

**MADISON REALTY CAPITAL ADVISORS, LLC**


                    Respondent.
_____

Assurance No. #20-067

## <u>ASSURANCE OF DISCONTINUANCE</u>

The Office of the Attorney General of the State of New York ("OAG") commenced an

investigation pursuant to N.Y. Executive Law § 63(12) and General Business Law § 349 into

transactions between Madison Realty Capital Advisors, LLC ("Respondent" or "Madison") and

certain affiliates and subsidiaries and Raphael Toledano and/or his affiliates (collectively

"Toledano"), including but not limited to the purchase of a portfolio of buildings in the East

Village of Manhattan (the "East Village Portfolio," the "Portfolio" or "EVP").[1]  This Assurance

of Discontinuance ("Assurance") contains the relief agreed to by the OAG and Respondent,

whether acting individually or through business entities under its control or otherwise affiliated.

_____

[1] The Portfolio originally included 16 properties located at: 223 East 5th Street; 229 East 5th Street; 231 East 5th Street; 233 East 5th Street; 235 East 5th Street; 228 East 6th Street; 66 East 7th Street; 95 East 7th Street; 27 St. Mark's Place; 334 East 9th Street; 253 East 10th Street; 325 East 12th Street; 327 East 12th Street; 329 East 12th Street; 510 East 12th Street; and 514 East 12th Street.  Toledano ultimately purchased 15 properties, as the building at 95 East 7th Street was instead sold to one of his business partners in order to settle litigation surrounding this deal.

## OAG's FINDINGS

Based on its investigation into Madison and Toledano, the OAG alleges its following findings of fact (which as set forth in paragraph 20 of this Assurance, Respondent neither admits nor denies such findings of fact):[2]

1.    Respondent, Madison Realty Capital Advisors, LLC, is a real estate investment and management firm located at 520 Madison Avenue, Suite 3501, New York, NY 10022. Madison's affiliated entities include EVF1 LLC ("EVF"), which originated a loan in connection with Toledano's acquisition of the East Village Portfolio.

2.    Respondent's affiliates have at times originated mortgage loans involving the acquisition of rent-regulated housing where the borrower intended to increase the property's market value by vacating current tenants and deregulating their rent-stabilized apartments among other strategies.

3.    Beginning in 2014, Respondent's affiliates entered into multiple loan transactions with Toledano involving rent-stabilized apartment buildings in lower Manhattan.  Altogether Respondent's affiliates loaned Toledano funds totaling over $100 million to acquire these properties.

4.    Respondent's affiliates' first mortgage loans to Toledano helped enable Toledano's unlawful schemes which caused tenants to suffer harassment, loss of services and

---

[2] The OAG has filed a related Complaint against Toledano and the businesses under his control describing his repeated and persistent use of fraud, deceptive business practices, tenant harassment and other unlawful conduct in real estate investment and management activities.  *See People v. Toledano*, Index No. 450919/2019 (Sup. Ct. N.Y. Cnty., Complaint filed June 19, 2019) (hereinafter "Toledano Complaint").  Toledano has admitted all the facts cited in the Toledano Complaint, as stated in a Consent and Stipulation filed in that case.

basic utilities, exposure to lead-contaminated construction dust, and other harms, while reducing the number of affordable apartments in New York City.

**Financing of Toledano's Purchase of the East Village Portfolio**

5.      On or about May 27, 2015, Toledano signed a Purchase and Sale Agreement for the East Village Portfolio.

6.      The East Village Portfolio properties included approximately 280 apartments, of which approximately three-quarters were registered by the prior owner as rent-stabilized or rent-controlled.  Toledano told Respondent that a part of his business plan was to vacate existing tenants and renovate apartments in order to increase rents in the East Village Portfolio's units.

7.      In September, 2015, Toledano, through its mortgage broker, Meridian Capital Group ("Meridian Capital") engaged EVF to originate four loans (the "EVP Loans") in the aggregate principal sum of up to $123,985,000 to the various entities which owned the East Village Portfolio properties (each, a "Debtor" and collectively, the "Debtors") controlled by Toledano, and Meridian Capital was paid a fee for its services in the amount of $1,440,000.  The EVP Loans included reserves equal to $10,832,840 for renovations and related soft costs and $3,055,000 to be used by Toledano when he negotiated and entered into buyout agreements with tenants.

8.      Respondent knew or should have known that Toledano's renovation plan included adding bedrooms that did not comply with New York's building codes.  When Toledano purchased these properties all the units were one-bedroom apartments according to Respondent's investment memo.  Respondent approved financing to Toledano when it knew or should have known that Toledano planned to create rooms that lacked windows or were smaller than the minimum size for a bedroom under New York City and that Toledano further planned to

advertise and rent these renovated apartments as two-, three- and even four-bedroom apartments, even though they could not legally be advertised as such.

9.      Respondent also knew or should have known that Toledano had no experience managing a residential portfolio of this size; that he had been sued for tenant harassment at 444 East 13th Street, an apartment building with 16 rent-stabilized units that Toledano had purchased with financing from an affiliate of Respondent in January, 2015; and that Toledano entered into a confidential settlement with tenants at 444 East 13th Street, in which he agreed to pay $1,000,000 to resolve the lawsuit.[3]

10.      Respondent knew that Toledano's business plan at the East Village Portfolio was to buy out and vacate rent-stabilized tenants, renovate units, and make further improvements in these buildings in order to increase the rents so that he could sell the buildings at a higher price. Respondent also knew or should have known that Toledano was engaging in improper conduct, including harassing tenants into leaving their rent-stabilized apartments.

11.      Notwithstanding the foregoing, EVF provided Toledano with mortgage financing to acquire the East Village Portfolio, which ultimately aided and abetted Toledano's unlawful conduct.

12.      Toledano used the proceeds of the EVP Loans to engage in unlawful conduct at the East Village Portfolio, including improperly inducing tenants to accept buyout agreements; misleading tenants about their status and rights under New York's rent-stabilization law; illegally

---

[3] Toledano has also pleaded guilty in a parallel criminal investigation brought by the OAG to a criminal misdemeanor charge of unlawful eviction based on his conduct at 444 East 13th Street, including his use of dangerous construction and demolition practices to force rent-controlled and rent-stabilized tenants from their homes. *See People v. Toledano*, Case No. CR-031698-19NY (N.Y. County Criminal Court).

converting one-bedroom apartments into non-code-compliant multi-bedroom apartments;

engaging in unsafe construction practices that exposed tenants to lead and other environmental

hazards; and illegally removing units from rent regulation.

13.    Toledano defaulted on his loans to EVF as soon as a pre-paid interest reserve that

covered approximately nine months of interest payments to EVF ran out.

14.    On June 19, 2019, the OAG filed a Complaint in New York State Supreme Court

against Toledano and entities controlled by Toledano, setting forth findings, including that

Toledano used funding from EVF to engage in unlawful conduct.  Toledano admitted to the facts

set forth in the OAG's Complaint pursuant to a Consent and Stipulation that he signed on June

19, 2019.  On July 12, 2019, Justice Verna L. Saunders so ordered a Consent Order against

Toledano based on the OAG's Complaint.  The Consent Order was entered on August 5, 2019.

### EVF's Management of the Portfolio in Bankruptcy

15.    Toledano defaulted on his debt to EVF by missing the interest payment due July

1, 2016.  After EVF offered numerous modifications and extensions to give Toledano adequate

time to sell or refinance the East Village Portfolio, EVF filed an action to foreclose on its

mortgage loans approximately six months later.  *See EVF1 LLC v. 27 St Marks Place LLC, et al.,*

Index No. 850052/2017 (Sup. Ct. N.Y. County, Complaint filed Feb. 3, 2017).

16.    Shortly thereafter, on or about March 28, 2017, an equity investor of the Debtors

took over management of the Debtors and filed a series of Chapter 11 bankruptcy petitions

covering each of the Portfolio's properties.  Pursuant to an Order issued by Bankruptcy Judge

Hon. Robert D. Drain of the Southern District of New York Bankruptcy Court (the "Bankruptcy

Court"), these cases are being jointly administered as *In re: East Village Properties LLC*, et al.,

Case No. 17-22453-rdd (the "Bankruptcy Proceedings").

17.     The Bankruptcy Court approved a "Cash Collateral Order" that allows EVF to fund the East Village Portfolio's expenses during the Bankruptcy Proceedings, and through its affiliated property management company, Silverstone Property Group, LLC ("Silverstone"), to manage the East Village Portfolio. Since the approval of the Cash Collateral Order, Silverstone has continued to manage the East Village Portfolio.

18.     The Debtors have proposed a Chapter 11 Plan (the "Plan") that will result in EVF or its designee taking ownership of the properties encompassing the East Village Portfolio following confirmation by the Bankruptcy Court.

19.     OAG finds that Respondent, including through the actions described above, aided and abetted conduct in violation of Executive Law § 63(12) and General Business Law ("GBL") Article 22-A, §§ 349-350.

20.     Respondent neither admits nor denies any of the OAG's Findings of Fact and Law, as set forth in paragraphs (1)-(19) above and in this Assurance.

21.     Respondent has agreed to this Assurance in settlement of any potential claims asserted by the OAG based on the Findings in this Assurance and to avoid the time, expense, and distraction of litigation.

22.     The OAG finds the relief and agreements contained in this Assurance appropriate and in the public interest.  THEREFORE, the OAG is willing to accept this Assurance pursuant to Executive Law § 63(15), in lieu of commencing a statutory proceeding for violations of Executive Law § 63(12) and GBL §§ 349 and 350 based on the Findings described above, and to discontinue its investigation into Respondent and/or its affiliates as of the effective date of this Assurance.

IT IS HEREBY UNDERSTOOD AND AGREED, by and between the Parties:

**RELIEF**

23.      This Assurance shall be incorporated into the Plan that will be confirmed in the

Bankruptcy Proceeding through a Motion to Approve Compromise and Settlement pursuant to

Rule 9019(a) Fed. R. Bankr. P. and 11 U.S.C. § 105(a) ("Motion to Approve") seeking approval

of this Assurance.  Respondent shall be responsible for ensuring that the Motion to Approve is

filed by itself or another entity it designates, including the Debtors.  The parties to this Assurance

agree that nothing in the confirmed Plan or Disclosure Statement, any Motion to Approve or any

proposed Order of the Bankruptcy Court shall contradict the terms of this Assurance, and that if

any are found to contradict the terms of this Assurance then that conflict shall be resolved in a

manner that gives full force and effect to the provisions of this Assurance.

**<u>Monetary Relief</u>**

24.      Respondent, through the Debtors in the Bankruptcy Proceeding, will fund the sum

of $150,000 (the "Monetary Relief Amount") on account of the claims filed by the OAG against

the Debtors, including without limitation, the Proof of Claim filed in the amount of $5,000,000,

related to the Bankruptcy Proceeding pending before the Bankruptcy Court in full and final

satisfaction of such claims.  EVF will make the foregoing contribution to the Debtors' estate

under the Debtors' bankruptcy plan in the Bankruptcy Proceeding to pay such claims.  The

payment of the contribution by EVF as well as the other relief set forth in this Assurance shall be

in lieu of and resolve and settle any claims or causes of action that the OAG has alleged against

EVF and Madison (and their affiliates, principals, officers and investors) with respect to (i) the

conduct alleged in this Assurance and (ii) EVF and Respondent and/or their affiliates' lending

relationship with Toledano and his affiliates.

25.    The Debtor shall provide and EVF or its designee shall take title to the East Village Portfolio properties subject to rent credit to be awarded by the Debtor in the cumulative amount of $1,050,000 (the "Rent Credits"), which will be distributed to current tenants in the sole and absolute discretion of the OAG.  The Rent Credits will be a credit against rental arrears, as applicable.

26.    Within ten (10) business days of receiving the OAG's instructions on the distribution of Rent Credits, EVF or its designee shall send by email, regular mail and/or hand delivery a written notice to each tenant of record residing in the East Village Portfolio, utilizing a form letter provided by the OAG, as attached hereto as Exhibit A.  EVF shall provide proof of delivery of the letters to each tenant to the OAG within thirty (30) days of effecting delivery.

27.    Payment of the Monetary Relief Amount owed directly to the State of New York shall be made, by wire transfer, from the Debtors in full in the manner provided in this paragraph.  No later than December 31, 2020, EVF shall wire transfer the Monetary Relief Amount to Debtors' counsel to be held in escrow pending the earlier of (i) the Bankruptcy Court's approval of the Motion to Approve and (ii) March 1, 2021.  The Monetary Relief Amount shall not revert to EVF under any circumstances.  Until such time that the OAG can identify individuals and entities, if any, entitled to restitution, the OAG shall hold these funds in reserve to be distributed as follows:

a.    As restitution to individuals or entities determined by the OAG to have been specifically injured or harmed by the conduct alleged in this Assurance; and, in the event that the OAG determines no funds should be distributed and/or any funds remain after distribution to individuals and entities entitled to restitution, then

b.   To the Affordable Housing-AG Settlement Fund established by the City of New York Department of Housing Preservation and Development.

### Injunctive Relief

28.   EVF or its designee shall accept referrals from the City of New York, and shall commit to the placement of ten (10) formerly-homeless families in apartments in the East Village Portfolio, whose rent vouchers will cover the legal regulated rent, within one year of EVF or its designee taking title to the East Village Portfolio.  In implementing the requirements of this paragraph:

a.   EVF or its designee shall make all reasonable efforts to comply with program requirements set by the New York City Human Resource Administration (HRA) and/or Department of Homeless Services (DHS) for acceptance of those Agencies' rent vouchers.  EVF or its designee shall not be in default of the one-year deadline if EVF or its designee has taken all reasonable steps to comply with the deadline and the default was caused solely by circumstances outside its control.

b.   EVF or its designee shall not accept the landlord bonus or any broker's fees that are offered by HRA.

c.   EVF or its designee may retain a third-party administrative agent to screen homeless families (or any other leasing applicants) and administer the application and/or leasing process for homeless families in accordance with applicable law. EVF's agents shall use non-discriminatory screening criteria for homeless families and all other leasing applicants, and such tenant application practices shall fully comply with applicable law.

d.   EVF or its designee shall provide tenants who pay rent with vouchers the same services and rights as other tenants.

e.   If EVF or its designee has not satisfied the requirements in this paragraph 28 prior to the sale of the EVP Properties, it shall require an unaffiliated bona fide purchaser for value (hereinafter a "Third-Party Purchaser") to comply with the remaining requirements by including a provision in a contract of sale with respect thereto, except that EVF, or its designee, may count toward this commitment units rented to voucher-holders in buildings that are later sold to a Third-Party Purchaser.

29.    Madison shall implement the New York State Department of Financial Services' guidelines for state-chartered banks if it lends to an owner of rent-stabilized or rent-regulated multi-family housing in the future.  *See* NYS DFS Guidance on Permissible Lending Practices Regarding Rent-Stabilized Multi-Family Residential Buildings (Sept. 25, 2018), *available at* https://www.dfs.ny.gov/system/files/documents/2020/03/il180925.pdf.  If DFS's guidelines for lending on rent-regulated multi-family housing change in the future, then Madison shall implement either the current guidance (as of the effective date of this Assurance) or DFS's amended guidance in its discretion.  For the avoidance of doubt, this paragraph shall not apply to loans made by Madison for the purpose of financing the construction of new buildings.

30.    EVF or its designee shall take title to the East Village Portfolio properties subject to the rent roll that is attached as Exhibit B.  This rent roll was negotiated between the parties to settle any potential claims asserted by the OAG, and shall establish the legal regulated rents for each apartment.  Respondent represents, to the best of its knowledge, that it has calculated the legal regulated rents appearing in this rent roll based on the following criteria:

a.  In the absence of a prior Order issued by the Division of Housing and Community Renewal ("DHCR") or a Court, a Stipulation of Settlement, or agreement with a current or prior tenant, Respondent recalculated the rents for apartments in the East Village Portfolio by using the most recent reliable rent determined by the OAG as the basis upon which to apply lawful rent increases;

b.  Rent increases have only been applied for vacancy leases, renewal leases, longevity increases, Individual Apartment Improvements ("IAI") or other increases permitted by law for which Respondent has documentary proof; and

c.  For certain units, Respondent agrees that it has not applied any vacancy rent increases based on vacancies that occurred between May 1, 2015 and the effective date of this Assurance.

31.     Future rent increases at the East Village Portfolio shall be applied in accordance with applicable law, and shall use the legal regulated rents attached as Exhibit B as the basis for calculating future rent increases (in the event such law requires), unless an order by DHCR or a court requires the legal regulated rent for an apartment to be lowered.

32.     Based on the representations in paragraph 30 above, OAG agrees not to dispute EVF or its designee's ability to register the rents (including rents with IAI increases) on the attached rent roll (Exhibit B).  Respondent understands and acknowledges that the OAG cannot waive the rights of anyone who is not a party to this Assurance to raise any dispute related to this rent roll.

33.     Subject to limitations and/or restrictions due to COVID-19, a similar pandemic and/or applicable law upon the filing of annual apartment rent registrations, Respondent agrees that the 2020 DHCR annual apartment registrations will be filed by no later than the earlier of (i)

ten (10) days from the Bankruptcy Court's approval of the Motion to Approve and (ii) January 22, 2021 and will reflect the rents set forth in the rent roll attached as Exhibit B ("2020 Rent Registrations"), subject to any lawful increases from the effective date of this Assurance forward.

34.     EVF shall cause the Debtors to serve the 2020 Rent Registrations upon the tenants in occupancy by no later than seven (7) days after the filing of the 2020 Rent Registrations.  At time of lease renewal, EVF or its designee, shall provide a renewal lease as required by law based on the legal regulated rent for that tenant's apartment contained in Exhibit B.

35.     Subject to limitations and/or restrictions due to COVID-19, a similar pandemic and/or applicable law, within ten (10) business days of filing, EVF shall send or if applicable cause the Debtors to send a copy of the 2020 Rent Registrations to the OAG so that the OAG may confirm that EVF or its designee's registrations match the rent roll attached as Exhibit B.

36.     EVF, or its designee, shall not seek any Major Capital Improvement ("MCI") rent increases from rent-stabilized tenants in the Portfolio for work in place at the East Village Portfolio as of the effective date of this Assurance.

37.     If EVF or its designee transfers any of the East Village Portfolio properties to a Third-Party Purchaser prior to the full distribution of Rent Credits to tenants, then EVF or its designee shall either (a) ensure the new owner takes title subject to any remaining Rent Credits owed to tenants of that property; or (b) pay any remaining Rent Credits owed to tenants as a lump sum in cash at the time of such transfer.

38.     Notwithstanding anything to the contrary set forth in this Assurance, any contract entered into by EVP or its designee to sell the East Village Portfolio to a Third-Party Purchaser shall have a covenant that shall survive closing stating that such Third-Party Purchaser shall not

in the future utilize any documentation which was obtained prior to the effective date of this
Assurance to increase legal rents for units which are vacant as of the effective date of this
Assurance in excess of the legal rents for such currently vacant units, as set forth on the rent roll
attached hereto as Exhibit B, provided however, such Third-Party Purchaser may use such
documentation to defend any challenge to such rents.  If EVF or its designee transfers any of the
East Village Portfolio properties to a Third-Party Purchaser within three years of the effective
date of this Assurance, then Respondent shall notify the OAG of such transfer no later than ten
(10) business days after the sale has been completed.

      39.      EVF or its designee shall not initiate buyout discussions with tenants unless in
writing and in full compliance with New York City's tenant harassment law, N.Y.C. Admin.
Code § 27-2004(48).

### Protections for Tenant Health, Safety and Habitability During Construction

      40.      EVF or its designee shall set and implement protocols in a commercially
reasonable manner for the protection of tenant health and safety whenever construction is being
done in an apartment or building in accordance with applicable law.  Such protocols shall
provide that all construction, demolition, repair and alteration work in the buildings owned
comprising the East Village Portfolio fully complies with applicable tenant protection plans, lead
mitigation plans and any other federal, state and local requirements, including the United States
Environmental Protection Agency's ("EPA") lead-safe work practices (as described at 40 C.F.R
§ 745.80, et seq.) and the Department of Housing Preservation and Development's ("HPD")
lead-safe work practices (issued pursuant to NYC Admin. Code § 27-2056.11), all in accordance
with applicable law

41.     For the purpose of implementing these laws and regulations, all vacant apartments in the East Village Portfolio shall be presumed to contain lead-based paint, and EVF or its designee shall conduct work in vacant apartments using the same protective measures required for work conducted in common areas, in order to ensure worker safety and to protect all residents from exposure to lead or construction dust.  Accordingly, EVF or its designee's protocols for lead-safe work practices which shall be implemented in a commercially reasonable and legally compliant manner shall include, but not be limited to:

  a.   Employing construction firms and workers who have been certified by the EPA in lead-safe work practices;

  b.   Posting notices in the building lobby to advise residents of lead-safe renovation requirements no less than 48 hours prior to commencing work;

  c.   E-mailing notices to residents who opt into the construction-notice e-mail thread of lead-safe renovation requirements no less than 48 hours prior to commencing work;

  d.   Testing for lead dust as required by law;

  e.   Sealing off work areas with plastic sheeting to protect building occupants from exposure to construction dust or materials;

  f.   Using HEPA air scrubbers and other ventilation protections as required by law;

  g.   Keeping all construction debris and waste bagged and wet during work and when carting through common areas;

  h.   Wet mopping and HEPA vacuuming work areas, surrounding areas, and common areas through which debris and waste are transported for disposal; and

  i.   Complying with any other safety and health measures described in applicable law

and regulations.

42.     EVF or its designee shall set and implement protocols to ensure that tenants have advance notice of any construction activities, including through the following:

    a.  E-Mail & Posting:

        i.  EVF or its designee shall develop a distribution e-mail list to which any tenant may opt in to receive updates including the notices described in paragraph 41 above, and any other available notices concerning planned construction work;

        ii.  All such updates shall also be posted in building common areas.

    b.  Shut Off Notices:

        i.  EVF or its designee shall use commercially reasonable efforts to notify tenants of any anticipated heat, water, or electrical shut offs in writing by e-mail and posting (if applicable) with 48 hours' notice, including when service can be expected to be restored;

        ii.  In the event of unforeseen circumstances, EVF or its designee shall provide notice as soon as reasonably practicable via e-mail and by posting advising tenants of when service can be anticipated to be restored.

43.     EVF or its designee's protocols to provide tenants with a mechanism for submitting complaints or questions to EVF or its designee's or the management company retained to manage the East Village Portfolio is attached hereto as Exhibit C.

44.     To the extent a property has tenants, EVF or its designee shall agree that construction work in vacant apartments and common areas shall not take place on weekends or federal holidays, and that construction work shall not take place outside the hours of 8 a.m. and 5

p.m., provided, however, that quiet or preparatory work shall be permitted between the hours of

7 a.m. and 8 a.m.

45.    The protocols described in paragraphs 40-44 are attached hereto as Exhibit C.

46.    EVF or its designee shall share these protocols with any Third-Party Purchaser

who takes ownership of any East Village Portfolio property prior to the completion of

construction work in vacant apartments and common areas.  For the avoidance of doubt, it shall

not be a breach or violation of this Assurance if a Third-Party Purchaser does not abide by these

protocols.

47.    A *de minimus* or non-material violation of the protocols described in paragraphs

40-44 shall not constitute a violation of this Assurance unless it is intentional and repeated or

continuous.


**Oversight/Monitoring**

48.    *Periodic Certification of Compliance:*  Within ninety (90) days from the effective

date of EVF or its designee taking title to the East Village Portfolio, Respondent shall provide

the OAG with a certification affirming to the best of its knowledge, its compliance with the

requirements set forth in this Assurance.  This certification shall be in writing and signed by a

party with authority to bind the Respondent.  Thereafter, a certification of compliance, to the best

of its knowledge, shall be submitted to the OAG on an annual basis for the following three (3)

years, due within thirty (30) days of the anniversary of the effective date of this Assurance.

49.    Respondent shall provide the OAG, on a quarterly basis, a status report regarding

the requirement of renting to ten (10) formerly-homeless families within one (1) year of taking

title to the EVP properties until the earlier of such time that (i) Respondent has fully complied

with that requirement or (ii) the EVP Properties are sold and Respondent has complied with

paragraph 28(e) of this Assurance.

## MISCELLANEOUS

### Subsequent Proceedings

50.     The OAG shall provide thirty (30) days' written notice to cure any act or omission

by Respondent, EVF or its designee that would be a violation of this Assurance, **provided,**

**however**, if such purported violation is not reasonably susceptible to a cure within such thirty

(30) day time period, the time to cure such purported violation shall be extended so long as

Respondent, EVF or its designee is making reasonable efforts to cure such act or omission

(collectively, the "Cure Period").  Respondent expressly agrees and acknowledges that the OAG

may initiate a subsequent investigation, civil action, or proceeding to enforce a violation of this

Assurance after the expiration of the Cure Period, and agrees and acknowledges that in such

event:

> a.   any statute of limitations or other time-related defenses related to a violation of
>
>       this Assurance will only begin to run upon the OAG's discovery of such violation
>
>       of this Assurance;
>
> b.   the OAG may use statements, documents or other materials produced or provided
>
>       by the Respondent prior to or after the effective date of this Assurance; and
>
> c.   evidence of a violation of this Assurance shall constitute prima facie proof of a
>
>       violation of the applicable law pursuant to Executive Law § 63(15).

In addition to curing the violation, the Respondent may respond to the OAG's written notice with

evidence that the alleged violation did not take place or no longer exists; that the conduct

described in the OAG's notice should not be considered a violation of the Assurance because it

was due to the gross negligence or willful misconduct of its employees, agent or third parties,

provided that Respondent, EVF or its designee takes appropriate action upon learning of such

gross negligence or willful misconduct, including terminating the employee, agent or third party,

if appropriate; or that Respondent, EVF or its designee's compliance with this Assurance has

been rendered impossible despite its reasonable efforts due to extraordinary events or

circumstances outside its control.

51.    For the avoidance of doubt, any violation of this Assurance by EVF or its

designee (provided such designee is not a Third-Party Purchaser) shall be deemed a violation of

the Assurance by Madison.

## **Effects of Assurance**

52.    Acceptance of this Assurance by the OAG is not an approval or endorsement by

OAG of any of Respondent's policies, practices or procedures, and the Respondent shall make

no representation to the contrary.

53.    Except as otherwise set forth in this Assurance, all terms and conditions of this

Assurance shall continue in full force and effect and shall be binding on any successor, assignee,

or transferee that is an affiliate of Respondent.

54.    Nothing contained herein shall be construed as to deprive any person of any

private right under the law.

55.    Any failure by the OAG to insist upon the strict performance by Respondent of

any of the provisions of this Assurance shall not be deemed a waiver of any of the provisions

hereof, and the OAG, notwithstanding that failure, shall have the right thereafter to insist upon

the strict performance of any and all of the provisions of this Assurance to be performed by the

Respondent.

## Communications

56.     All notices, reports, requests, and other communications pursuant to this

Assurance must reference Assurance No. #20-067, and shall be in writing and shall, unless

expressly provided otherwise herein, be given by hand delivery; express courier; or electronic

mail at an address designated in writing by the recipient, followed by postage prepaid mail, and

shall be addressed as follows:

> If to the Respondent, to: its counsel, Jerold C. Feuerstein, Esq., Kriss &
>
> Feuerstein LLP, 360 Lexington Avenue, 12th Floor, New York, New York 10017
>
> and by email at jfeuerstein@kandfllp.com.
>
> If to the OAG, to: Mark Ladov or Elena González, State of New York, Office of
>
> the Attorney General, Consumer Frauds and Protection Bureau, 28 Liberty Street,
>
> New York NY 10005 and by email at mark.ladov@ag.ny.gov and
>
> elena.gonzalez@ag.ny.gov; or in his/her absence, to the person holding the title of
>
> Bureau Chief, Consumer Frauds and Protection Bureau.

## Representations and Warranties

57.     The Respondent represents and warrants that, to the best of its knowledge, it has

not made any material representations to the OAG in this Assurance that are inaccurate or

misleading.

58.     No representation, inducement, promise, understanding, condition, or warranty

not set forth in this Assurance has been made to or relied upon by the Respondent in agreeing to

this Assurance.

59.     The Respondent represents and warrants that the terms and conditions of this

Assurance are duly approved.  Respondent further represents and warrants that David Speiser,

the signatory to this Assurance on behalf of Respondent, is a duly authorized officer of Respondent.

### General Principles

60.    Respondent shall not in any manner discriminate or retaliate against any of its employees or tenants, including but not limited to employees or tenants who cooperated or are perceived to have cooperated with the investigation of this matter or any future investigation related to enforcing this agreement.

61.    Nothing contained herein shall be construed to limit the remedies available to the OAG in the event that the Respondent violates the Assurance after its effective date.

62.    This Assurance may not be amended except by an instrument in writing signed on behalf of the parties to this Assurance.

63.    In the event that any one or more of the provisions contained in this Assurance shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, in the sole discretion of the OAG, such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

64.    Respondent acknowledges that it has entered this Assurance freely and voluntarily and upon due deliberation with the advice of counsel.

65.    This Assurance may be executed in multiple counterparts by the parties hereto. All counterparts so executed shall constitute one agreement binding upon all parties, notwithstanding that all parties are not signatories to the original or the same counterpart. Each counterpart shall be deemed an original to this Assurance, all of which shall constitute one agreement to be valid as of the effective date of this Assurance. For purposes of this Assurance, copies of signatures shall be treated the same as originals. Documents executed, scanned and

transmitted electronically and electronic signatures shall be deemed original signatures for purposes of this Assurance and all matters related thereto, with such scanned and electronic signatures having the same legal effect as original signatures.

66.    Upon the conveyance of any of the properties encompassing the East Village Portfolio to an affiliate of Respondent, such affiliate shall execute a Joinder to this Assurance (the "Joinder").  Upon such party executing the Joinder it shall be deemed to be a Respondent hereunder and thereby bound to the terms and conditions of this Assurance.

67.    The effective date of this Assurance shall be December 11, 2020.

LETITIA JAMES
Attorney General of the State of New York
28 Liberty Street
New York, NY 10005

By:   _____
      Jane Azia, Esq.
      Bureau Chief, Bureau of Consumer
      Frauds and Protection

MADISON REALTY CAPITAL ADVISORS, LLC

By:   _____
      Name: David Speiser, Esq.
      Title:  Managing Director and General Counsel

STATE OF _____NEW JERSEY_____ )
                                   )  ss.:
COUNTY OF _BERGEN_____ )

On the _11th_ day of December in the year 2020 before me personally came David Speiser to me known, who, being by me duly sworn, did depose and say that he is a Managing Director  and the General Counsel of Madison Realty Capital Advisors, LLC, the company described in and which executed the above document and he has the authority to execute this document.


Sworn to before me this
___11___ day of _DECEMBER_____, 2020                 _____
                                                        NOTARY PUBLIC

DOV EISENBERGER
NOTARY PUBLIC OF NEW JERSEY
Commission # 50105626
My Commission Expires 5/23/2024

# Exhibit A

**[Date]**

Dear Tenant of Apartment **[number]**, Building **[address]**:

**[Landlord name]** (the "Landlord") has settled an investigation with the Office of the New York Attorney General (the OAG) where we are issuing a rent credit of **$[amount]** to all eligible tenants who started their tenancies on or before **April 7, 2017**.

The terms of the rent credit are as follows:

- The credit will first be applied to rent arrears, if any, and then to your ongoing rent until expired.

- Tenants who move out before the entire credit is used, will receive a check from the Landlord for the balance.

**According to our records, you are a tenant entitled to a rent credit.** Here are your specific calculations:

- Our records show that you owe arrears in the amount of $**[amount]**

- After applying the rent credit to arrears, you have a remaining credit of $**[amount]**

- Starting **[date]**, you will be credited $**[amount]**/ per month against the entire amount of your monthly rent.

- Assuming no rent increases, this credit will last for **[number]** months (CREDIT AMOUNT/ TENANT RENT = # of Months).

- Accordingly, you do not have to pay any rent through **[month]**, **[year]** and you will need to make a partial payment of $**[amount]** for **[month]**, **[year]**.

- Starting **[date]**, your rent credit will be exhausted, and your monthly payment will go back to the full rent amount including any lawful increases, such as renewal lease increases.

If you believe the above calculations are inaccurate, contact the Landlord's managing agent, **[name]**, at **[telephone number]** or via e-mail at: **[email address]** and include all supporting

documentation to show why there is an error.  You are advised to retain copies of all papers that you provide to the Landlord/Managing Agent.

Should you have any immediate questions, please call **[Landlord's Managing Agent]** at **[telephone number]** and ask to speak with **[name]** about this Notice.

Very truly yours,

**[Landlord]**

# Exhibit B

| Address | Unit | LEGAL RENT |
|---|---|---|
| 223 E5TH ST | 1 | $ 1,362.47 |
| 223 E5TH ST | 2 | TE |
| 223 E5TH ST | 3 | $ 4,285.00 |
| 223 E5TH ST | 4 | $ 781.34 |
| 223 E5TH ST | 5 | $ 1,230.22 |
| 223 E5TH ST | 6 | $ 4,084.12 |
| 223 E5TH ST | 7 | $ 2,927.40 |
| 223 E5TH ST | 8 | $ 526.00 |
| 223 E5TH ST | 9 | $ 1,698.28 |
| 223 E5TH ST | 10 | $ 1,619.96 |
| 223 E5TH ST | 11 | PE |
| 223 E5TH ST | 12 | $ 1,663.43 |
| 223 E5TH ST | 13 | $ 1,252.37 |
| 223 E5TH ST | 14 | $ 1,658.24 |
| 223 E5TH ST | 15 | $ 1,702.90 |
| 223 E5TH ST | 16 | PE |
| 228 E6TH ST | 1 | $ 1,742.00 |
| 228 E6TH ST | 2 | $ - |
| 228 E6TH ST | 3 | $1,463.74 |
| 228 E6TH ST | 4 | $ 930.00 |
| 228 E6TH ST | 5 | $ 4,000.00 |
| 228 E6TH ST | 6 | $ 1,732.81 |
| 228 E6TH ST | 7 | $ 1,169.73 |
| 228 E6TH ST | 8 | $ 1,261.49 |
| 228 E6TH ST | 9 | $ 1,605.70 |
| 228 E6TH ST | 10 | $ - |
| 228 E6TH ST | 11 | $ 804.38 |
| 228 E6TH ST | 12 | $ 1,789.94 |
| 228 E6TH ST | 13 | $ 1,494.90 |
| 228 E6TH ST | 14 | $ 1,458.44 |
| 228 E6TH ST | 15 | PE |
| 228 E6TH ST | 16 | $ 432.00 |
| 228 E6TH ST | 17 | PE |
| 228 E6TH ST | 18 | $ 711.15 |
| 228 E6TH ST | 19 | $ 1,067.57 |
| 228 E6TH ST | 20 | $ 674.79 |
| 229 E5TH ST | 1 | $ 860.64 |
| 229 E5TH ST | 2 | $ 2,053.72 |
| 229 E5TH ST | 3 | $ 904.59 |
| 229 E5TH ST | 4 | $ 717.04 |
| 229 E5TH ST | 5 | PE |

| | | | |
|---|---|---|---|
| 229 E5TH ST | 6 | PE | |
| 229 E5TH ST | 7 | PE | |
| 229 E5TH ST | 8 | $ | 4,719.58 |
| 229 E5TH ST | 9 | PE | |
| 229 E5TH ST | 10 | $ | 800.00 |
| 231 E5TH ST | 1 | $ | 849.15 |
| 231 E5TH ST | 2 | $ | 851.92 |
| 231 E5TH ST | 3 | $ | 1,294.39 |
| 231 E5TH ST | 4 | $ | 778.35 |
| 231 E5TH ST | 5 | $ | 1,393.77 |
| 231 E5TH ST | 6 | $ | 861.78 |
| 231 E5TH ST | 7 | $ | 1,913.88 |
| 231 E5TH ST | 8 | $ | 859.40 |
| 233 E5TH ST | 1 | PE | |
| 233 E5TH ST | 2 | $ | 1,086.05 |
| 233 E5TH ST | 3 | $ | 2,011.08 |
| 233 E5TH ST | 4 | PE | |
| 233 E5TH ST | 5 | $ | - |
| 233 E5TH ST | 6 | $ | 1,132.85 |
| 233 E5TH ST | 7 | $ | - |
| 233 E5TH ST | 8 | PE | |
| 233 E5TH ST | 9 | $ | 2,774.13 |
| 233 E5TH ST | 10 | $ | 2,424.00 |
| 235 E5TH ST | 1 | $ | 1,084.99 |
| 235 E5TH ST | 2 | $ | 1,946.09 |
| 235 E5TH ST | 3 | $ | 621.00 |
| 235 E5TH ST | 4 | PE | |
| 235 E5TH ST | 5 | $ | 1,398.43 |
| 235 E5TH ST | 6 | $ | 2,273.85 |
| 235 E5TH ST | 7 | $ | 1,932.39 |
| 235 E5TH ST | 8 | $ | 2,066.28 |
| 235 E5TH ST | 9 | $ | 1,124.74 |
| 235 E5TH ST | 10 | PE | |
| 253 E10TH ST | 1 | $ | 1,061.35 |
| 253 E10TH ST | 2 | $ | 1,618.30 |
| 253 E10TH ST | 3 | $ | 587.59 |
| 253 E10TH ST | 4 | $ | 563.06 |
| 253 E10TH ST | 5 | $ | 3,600.00 |
| 253 E10TH ST | 6 | $ | 1,585.00 |
| 253 E10TH ST | 7 | $ | 752.62 |
| 253 E10TH ST | 8 | TE | |
| 253 E10TH ST | 9 | $ | 1,788.00 |

| | | | |
|---|---|---|---|
| 253 E10TH ST | 10 | $ | 4,120.26 |
| 253 E10TH ST | 11 | $ | 752.62 |
| 253 E10TH ST | 12 | $ | 2,300.00 |
| 253 E10TH ST | 13 | $ | 1,501.54 |
| 253 E10TH ST | 14 | $ | 1,358.11 |
| 253 E10TH ST | 15 | $ | 1,256.80 |
| 253 E10TH ST | 16 | $ | 663.55 |
| 253 E10TH ST | 17 | $ | 1,724.41 |
| 253 E10TH ST | 18 | $ | 1,651.24 |
| 253 E10TH ST | 19 | $ | 3,600.00 |
| 253 E10TH ST | 20 | $ | 1,167.49 |
| 27 SAINT MARKS PL | 2A | $ | 1,313.29 |
| 27 SAINT MARKS PL | 2B | TE | |
| 27 SAINT MARKS PL | 2C | $ | 1,564.42 |
| 27 SAINT MARKS PL | 2D | $ | 765.28 |
| 27 SAINT MARKS PL | 3A | $ | 1,805.93 |
| 27 SAINT MARKS PL | 3B | $ | 1,646.78 |
| 27 SAINT MARKS PL | 3C | $ | 1,115.92 |
| 27 SAINT MARKS PL | 3D | $ | 1,270.54 |
| 27 SAINT MARKS PL | 4A | $ | 1,311.62 |
| 27 SAINT MARKS PL | 4B | $ | 1,915.43 |
| 27 SAINT MARKS PL | 4C | $ | 1,882.06 |
| 27 SAINT MARKS PL | 4D | $ | 1,822.96 |
| 27 SAINT MARKS PL | 5A | $ | 1,921.48 |
| 27 SAINT MARKS PL | 5B | $ | 2,024.33 |
| 27 SAINT MARKS PL | 5C | $ | 1,534.68 |
| 27 SAINT MARKS PL | 5D | PE | |
| 27 SAINT MARKS PL | 6A | $ | 2,111.29 |
| 27 SAINT MARKS PL | 6B | $ | 1,496.82 |
| 27 SAINT MARKS PL | 6C | $ | 1,280.33 |
| 27 SAINT MARKS PL | 6D | $ | 1,408.74 |
| 325 E12TH ST | 1A | $ | 1,324.94 |
| 325 E12TH ST | 1B | $ | 1,798.44 |
| 325 E12TH ST | 1C | $ | 1,153.30 |
| 325 E12TH ST | 1D | $ | 2,089.08 |
| 325 E12TH ST | 1E | $ | 1,677.04 |
| 325 E12TH ST | 1F | $ | 1,211.64 |
| 325 E12TH ST | 2A | $ | 1,961.95 |
| 325 E12TH ST | 2B | $ | - |
| 325 E12TH ST | 2C | $ | 1,733.27 |
| 325 E12TH ST | 2D | $ | 1,804.40 |
| 325 E12TH ST | 2E | $ | 3,409.00 |

| | | | |
|---|---|---|---|
| 325 E12TH ST | 2F | $ | 1,454.36 |
| 325 E12TH ST | 3A | $ | 713.09 |
| 325 E12TH ST | 3B | $ | 2,095.00 |
| 325 E12TH ST | 3C | $ | 4,182.00 |
| 325 E12TH ST | 3D | $ | 1,778.32 |
| 325 E12TH ST | 3E | $ | 756.65 |
| 325 E12TH ST | 3F | $ | 1,725.55 |
| 325 E12TH ST | 4A | $ | 1,446.13 |
| 325 E12TH ST | 4B | $ | 780.60 |
| 325 E12TH ST | 4C | $ | 2,655.00 |
| 325 E12TH ST | 4D | $ | 1,029.00 |
| 325 E12TH ST | 4E | $ | 1,952.25 |
| 325 E12TH ST | 4F | $ | 1,244.95 |
| 325 E12TH ST | 5A | $ | 1,022.37 |
| 325 E12TH ST | 5B | $ | 723.25 |
| 325 E12TH ST | 5C | $ | 2,139.48 |
| 325 E12TH ST | 5D | $ | 745.53 |
| 325 E12TH ST | 5E | $ | 1,694.82 |
| 325 E12TH ST | 5F | $ | 1,125.14 |
| 325 E12TH ST | 6A | $ | 562.00 |
| 325 E12TH ST | 6B | $ | 492.00 |
| 325 E12TH ST | 6C | $ | 846.50 |
| 325 E12TH ST | 6D | $ | 1,950.00 |
| 325 E12TH ST | 6E | $ | 2,078.84 |
| 325 E12TH ST | 6F | $ | 1,213.78 |
| 325 E12TH ST | MW | $ | 2,049.18 |
| 327 E 5TH ST | ME | $ | - |
| 327 E12TH ST | 1 | $ | 1,215.00 |
| 327 E12TH ST | 2 | $ | 1,157.50 |
| 327 E12TH ST | 3 | $ | 1,518.18 |
| 327 E12TH ST | 4 | $ | 1,221.04 |
| 327 E12TH ST | 5 | $ | 1,324.60 |
| 327 E12TH ST | 6 | $ | 1,778.54 |
| 327 E12TH ST | 7 | $ | 2,223.17 |
| 327 E12TH ST | 8 | $ | 1,889.64 |
| 327 E12TH ST | 9 | $ | 1,806.72 |
| 327 E12TH ST | 10 | $ | 1,772.16 |
| 327 E12TH ST | 11 | $ | 1,400.99 |
| 327 E12TH ST | 12 | $ | 2,323.69 |
| 327 E12TH ST | 13 | $ | 748.75 |
| 327 E12TH ST | 14 | $ | 1,545.21 |
| 327 E12TH ST | 15 | $ | 652.00 |

| | | | |
|---|---|---|---|
| 327 E12TH ST | 16 | $ | 3,264.00 |
| 327 E12TH ST | 17 | $ | 876.76 |
| 327 E12TH ST | 18 | $ | 1,263.09 |
| 327 E12TH ST | 19 | $ | 901.73 |
| 327 E12TH ST | 20 | $ | 3,083.06 |
| 327 E12TH ST | 21 | $ | 2,300.10 |
| 327 E12TH ST | 22 | $ | 946.98 |
| 329 E12TH ST | 1 | $ | 1,660.15 |
| 329 E12TH ST | 2 | $ | 859.72 |
| 329 E12TH ST | 3 | $ | 1,789.91 |
| 329 E12TH ST | 4 | $ | - |
| 329 E12TH ST | 5 | $ | 1,542.10 |
| 329 E12TH ST | 6 | $ | 611.00 |
| 329 E12TH ST | 7 | $ | 1,751.00 |
| 329 E12TH ST | 8 | $ | 2,283.37 |
| 329 E12TH ST | 9 | $ | 1,539.58 |
| 329 E12TH ST | 10 | $ | 1,639.51 |
| 329 E12TH ST | 11 | $ | 1,409.81 |
| 329 E12TH ST | 12 | $ | 1,789.66 |
| 329 E12TH ST | 13 | $ | 1,813.79 |
| 329 E12TH ST | 14 | $ | 1,232.74 |
| 329 E12TH ST | 15 | $ | 842.81 |
| 329 E12TH ST | 16 | $ | 2,176.85 |
| 329 E12TH ST | 17 | $ | 1,219.27 |
| 329 E12TH ST | 18 | $ | 1,460.63 |
| 329 E12TH ST | 19 | $ | 998.54 |
| 329 E12TH ST | 20 | $ | 2,045.45 |
| 329 E12TH ST | 21 | $ | 2,576.03 |
| 329 E12TH ST | 22 | $ | 2,478.00 |
| 329 E12TH ST | MAINEAST | $ | 2,101.09 |
| 329 E12TH ST | MAINWEST | $ | 1,123.85 |
| 334 E9TH ST | 1 | $ | 1,809.40 |
| 334 E9TH ST | 2 | $ | 919.24 |
| 334 E9TH ST | 3 | $ | 1,343.93 |
| 334 E9TH ST | 4 | $ | 1,622.28 |
| 334 E9TH ST | 5 | PE | |
| 334 E9TH ST | 6 | $ | 3,209.43 |
| 334 E9TH ST | 7 | $ | 1,589.78 |
| 334 E9TH ST | 8 | $ | 1,739.79 |
| 334 E9TH ST | 9 | $ | 1,761.50 |

| | | | |
|---|---|---|---|
| 334 E9TH ST | 10 | $ | 2,605.38 |
| 334 E9TH ST | 11 | $ | 2,561.96 |
| 334 E9TH ST | 12 | $ | 1,303.80 |
| 334 E9TH ST | 13 | $ | 2,399.13 |
| 334 E9TH ST | 14 | $ | 998.53 |
| 334 E9TH ST | 15 | $ | 1,089.35 |
| 334 E9TH ST | 16 | $ | 1,383.31 |
| 334 E9TH ST | 17 | $ | 1,427.54 |
| 334 E9TH ST | 18 | $ | 1,165.79 |
| 334 E9TH ST | 19 | $ | 2,031.46 |
| 334 E9TH ST | 20 | $ | 1,895.42 |
| 510 E12TH ST | 1 | $ | 670.96 |
| 510 E12TH ST | 2 | $ | 1,432.28 |
| 510 E12TH ST | 3 | $ | 1,386.41 |
| 510 E12TH ST | 4 | $ | 1,147.11 |
| 510 E12TH ST | 5 | TE | |
| 510 E12TH ST | 6 | $ | 1,184.01 |
| 510 E12TH ST | 7 | $ | 1,679.96 |
| 510 E12TH ST | 8 | $ | 473.72 |
| 510 E12TH ST | 9 | $ | 1,265.15 |
| 510 E12TH ST | 10 | $ | 910.18 |
| 510 E12TH ST | 11 | $ | 1,443.23 |
| 510 E12TH ST | 12 | $ | 3,549.60 |
| 510 E12TH ST | 13 | $ | 2,328.75 |
| 510 E12TH ST | 14 | $ | 3,755.70 |
| 510 E12TH ST | 15 | $ | 1,117.22 |
| 510 E12TH ST | 16 | $ | 1,454.34 |
| 510 E12TH ST | 17 | $ | 1,788.95 |
| 510 E12TH ST | 18 | PE | |
| 510 E12TH ST | 19 | $ | 1,501.04 |
| 510 E12TH ST | 20 | $ | 1,276.98 |
| 514 E12TH ST | 1 | $ | 2,180.76 |
| 514 E12TH ST | 2 | $ | 1,345.56 |
| 514 E12TH ST | 3 | $ | 1,429.03 |
| 514 E12TH ST | 4 | $ | 1,393.92 |
| 514 E12TH ST | 5 | $ | 1,312.76 |
| 514 E12TH ST | 6 | $ | 5,000.00 |
| 514 E12TH ST | 7 | $ | 2,393.17 |
| 514 E12TH ST | 8 | $ | 2,162.40 |
| 514 E12TH ST | 9 | $ | 1,631.76 |
| 514 E12TH ST | 10 | $ | 2,379.41 |
| 514 E12TH ST | 11 | $ | 892.97 |

| | | | |
|---|---|---|---|
| 514 E12TH ST | 12 | $ | 3,424.41 |
| 514 E12TH ST | 14 | $ | 686.96 |
| 514 E12TH ST | 15 | $ | 2,777.78 |
| 514 E12TH ST | 16 | $ | 4,565.00 |
| 514 E12TH ST | 17 | $ | 4,006.29 |
| 514 E12TH ST | 18 | $ | 626.36 |
| 514 E12TH ST | 19 | $ | 1,501.04 |
| 514 E12TH ST | 20 | $ | 2,492.33 |
| 514 E12TH ST | 12A | $ | 1,750.00 |
| 66 E7TH ST | 1 | PE | |
| 66 E7TH ST | 2 | $ | 1,435.32 |
| 66 E7TH ST | 3 | $ | 1,344.39 |
| 66 E7TH ST | 4 | $ | 1,358.18 |
| 66 E7TH ST | 5 | $ | 2,230.35 |
| 66 E7TH ST | 6 | $ | 1,420.69 |
| 66 E7TH ST | 7 | $ | 1,912.45 |
| 66 E7TH ST | 8 | PE | |
| 66 E7TH ST | 9 | $ | 1,111.13 |
| 66 E7TH ST | 10 | $ | 502.00 |
| 66 E7TH ST | 11 | $ | 1,453.75 |
| 66 E7TH ST | 12 | $ | 1,081.00 |
| 66 E7TH ST | 13 | PE | |
| 66 E7TH ST | 14 | $ | 1,373.29 |
| 66 E7TH ST | 15 | $ | 1,186.79 |
| 66 E7TH ST | 16 | PE | |
| 66 E7TH ST | 17 | $ | 1,923.75 |
| 66 E7TH ST | 18 | $ | 1,914.69 |
| 66 E7TH ST | 19 | $ | 1,461.30 |
| 66 E7TH ST | 20 | $ | 1,824.77 |
| 66 E7TH ST | 21 | $ | 3,521.94 |
| 66 E7TH ST | 22 | $ | 462.00 |

# Exhibit C

## <u>CONSTRUCTION PROTOCOLS FOR THE EAST VILLAGE PORTFOLIO</u>

1.      The protocols for lead-safe work practices which shall be implemented in a commercially reasonable and legally compliant manner shall include, but not be limited to:

a.   Employing construction firms and workers who have been certified by the EPA in lead-safe work practices;

b.   Posting notices in the building lobby to advise residents of lead-safe renovation requirements no less than 48 hours prior to commencing work;

c.   E-mailing notices to residents who opt into the construction-notice e-mail thread of lead-safe renovation requirements no less than 48 hours prior to commencing work;

d.   Testing for lead dust as required by law;

e.   Sealing off work areas with plastic sheeting to protect building occupants from exposure to construction dust or materials;

f.   Using HEPA air scrubbers and other ventilation protections as required by law;

g.   Keeping all construction debris and waste bagged and wet during work and when carting through common areas;

h.   Wet mopping and HEPA vacuuming work areas, surrounding areas, and common areas through which debris and waste are transported for disposal; and

i.   Complying with any other safety and health measures described in applicable law and regulations.

2.      Tenants shall have advance notice of any construction activities, including through the following:

    a.  E-Mail & Posting:

        i.  An e-mail list will be developed to which any tenant may opt in to receive updates including the notices described in Paragraph 1 above, and any other available notices concerning planned construction work;

        ii.  All such updates shall also be posted in building common areas.

    b.  Shut Off Notices:

        i.   Commercially reasonable efforts will be used to notify tenants of any anticipated heat, water, or electrical shut offs in writing by e-mail and posting (if applicable) with 48 hours' notice, including when service can be expected to be restored;

        ii.  In the event of unforeseen circumstances, notice will be provided as soon as reasonably practicable via e-mail and by posting advising tenants of when service can be anticipated to be restored.

3.       There will be protocols to provide tenants with a mechanism for submitting complaints or questions with respect to the properties.

4.      To the extent a property has tenants, construction work in vacant apartments and common areas shall not take place on weekends or federal holidays, and that construction work shall not take place outside the hours of 8 a.m. and 5 p.m., provided, however, that quiet or preparatory work shall be permitted between the hours of 7 a.m. and 8 a.m.