**ROBINSON BROG LEINWAND**
  **GREENE GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone No.: (212) 603-6300
A. Mitchell Greene
Steven B. Eichel
Lori Schwartz
*Attorneys for the Debtors*

<u>**Hearing Date and Time**</u>
February 12, 2021 at 10:00 a.m.

The hearing will be
 held telephonically

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                                     Chapter 11

**IN RE EAST VILLAGE PROPERTIES, LLC,**          Case No. 17-22453-rdd
*ET AL*,[1]

                                        Debtors.          (Jointly Administered)
-----------------------------------------------------------X

<u>**FIRST SUPPLEMENT TO DEBTORS' FIRST OMNIBUS OBJECTION TO CLAIMS**</u>

<u>**325 East 12th Street LLC, 17-22464 (RDD)**</u>

**Claimants:**
**Kathleen Berry, Claim No. 6**
**Trissy Callan, Claim Nos. 20 and 28**
**William Engel, Claim Nos. 9 and 33**
**Elizabeth Haak, Claim Nos. 10 and 27**
**Anna Hutchings, Claim Nos. 12, 29 and 30**
**Ellen Hutchings, Claim No. 13**
**James Keegan, Claim No. 23**
**Cate McNider, Claim No. 21**
**Kathleen Wakeham, Claim Nos. 7, 26 and 31 and ECF Doc. Nos. 164-167**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' taxpayer identification number are as follows:  East Village Properties LLC (1437); 223 East 5th Street LLC (8999); 229 East 5th Street LLC (8348); 231 East 5th Street LLC (4013); 233 East 5th Street LLC (8999); 235 East 5th Street LLC (1702); 228 East 6th Street LLC (2965); 66 East 7th Street LLC (1812); 27 St Marks Place LLC (1789); 334 East 9th Street LLC (7903); 253 East 10th Street LLC (4317); 325 East 12th Street LLC (0625); 327 East 12th Street LLC (7195); 329 East 12th Street LLC (0475); 510 East 12th Street LLC (1469); and 514 East 12th Street LLC (7232).

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

East Village Properties, LLC, *et al*., the debtors and debtors in possession (the "Debtors"), by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., file this supplement (the "Supplemental Objection") to the Debtors' first omnibus objection to claims (the "Initial Omnibus Claims Objection") to disallow and expunge the claims filed by the Debtors' tenants residing at 325 East 12th Street (the "Tenants").[2]  In the event the claims filed by these Tenants (the "Tenant Claims") are not disallowed and expunged in their entirety, they should be reduced to an amount no greater than the amount set forth in Exhibit B attached hereto for each particular claim.  In support of the Supplemental Objection, the Debtors respectfully represent and allege as follows:

**<u>Jurisdiction</u>**

1.       Jurisdiction over the Initial Omnibus Claims Objection and Supplemental Objection is vested in the United States District Court for this District pursuant to 28 U.S.C. §§157 and 1334.  The Initial Omnibus Claims Objection and Supplemental Objection has been referred to this Court for consideration pursuant to Section 157 of the Judicial Code and the Standing Order of Reference Regarding Title 11 (S.D.N.Y. Feb 1, 2012) (Preska C.J.).

---

[2] The Tenants that are the subject of this Supplemental Objection are as follows: (i) Kathleen Berry, (ii) Trissy Callan, (iii) William Engel, (iv) Elizabeth Haak, (v) Anna and Ellen Hutchings, (vi) James Keegan, (vii) Cate McNider, and (viii) Kathleen Wakeham.  As a result of the Claims Scheduling Order defined in paragraph 10 herein, many of the claims were amended or supplemented.  In certain cases, new, rather than amended claims were filed. The subject claims are specifically identified in the chart attached hereto as Exhibit B.

2.      This is a core proceeding pursuant to 28 U.S.C. §157(b).  The statutory

predicates for the relief sought are sections 105 and 502(b) of title 11 of the United States

Code (the "Bankruptcy Code") and Bankruptcy Rule 3007(a).

3.      Venue is proper in this District pursuant to 28 U.S.C §§1408 and 1409.

**Background**

4.      On March 28, 2017 (the "Petition Date"), the Debtors commenced with this

Court voluntary cases under the Bankruptcy Code.  The Debtors are authorized to operate

their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases are being jointly

administered for procedural purposes only.

5.      The Debtors own fifteen residential apartment buildings located in the East

Village area of New York City located at 27 St. Marks Place, 514 East 12th Street, 223 East

5th Street, 229 East 5th Street, 231 East 5th Street, 233 East 5th Street, 235 East 5th Street, 66

East 7th Street, 253 East 10th Street, 510 East 12th Street, 228 East 6th Street, 325 East 12th

Street, 327 East 12th Street, 329 East 12th Street and 334 East 9th Street (collectively, the

"Properties").  The Debtors' Properties are encumbered by five mortgages granted in favor of

its secured creditor, EVF1 LLC ("EVF1").  EVF1 is an affiliate of Madison Realty Capital.

As of the Petition Date, the Debtors were in default of their obligations to EVF1.  EVF1

accelerated each of the loans and commenced an action to foreclose the mortgages in the

Supreme Court of the State of New York, County of New York, Index No. 850052/2017.  In

order to avoid the potential loss of the Properties to a foreclosure, the Debtors sought the

protections afforded them by the Bankruptcy Code  in order to preserve the Properties and

resolve their disputes with EVF1.

6. On April 14, 2017, the Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities.

7. On April 25, 2017, this Court entered the Order Establishing Deadline for Filing Proofs of Claim Against and Interests in the Debtors and Approving the Form and Manner of Notice Thereof (the "Bar Date Order"). The Bar Date Order established (i) June 1, 2017 (the "Bar Date") as the deadline for all creditors, with the exception of governmental units, to file proofs of claim against and interests in the Debtors, and (ii) September 25, 2017 (the "Government Bar Date") as the deadline for governmental units to file proofs of claim. As set forth in paragraph 10 herein, pursuant to an order entered on August 8, 2017. the Tenants were provided an opportunity to file amended claims to supplement their timely filed proofs of claim with documentation to support their respective claims.

8. On July 12, 2017, the Debtors filed their Initial Omnibus Claims Objection (ECF Doc. No. 147), which, among other things, objected to duplicate claims and the Tenant Claims. Additional supplemental objections to the Initial Omnibus Claims Objection will be filed with respect to other claims that are not the subject of this Supplemental Objection.

9. On July 12, 2017, the Debtors also filed an objection to proofs of claim nos. 11, 12 and 13 filed by Ellen Hutchings and Anna Hutchings (the "Hutchings Objection"). (ECF No. 144) and the Declaration of Scott Loffredo (the "Loffredo Declaration") in support thereof. (ECF No. 145). While the Debtor and Hutchings resolved the Hutchings Objection as it related to claim no. 11 by a stipulation entered on September 21, 2017 (ECF Doc. No. 233), substantively, the Hutchings Objection and the Loffredo Declaration (including the exhibits thereto) demonstrate that the litigation commenced by the Debtors against the

Hutchings was justified and not baseless.[3]   Hutchings claims nos. 12 and 13 are duplicative in their $16,645 demand other than being filed by Anna Hutchings (claim no. 12, as supplemented by Claims 29 and 30) and Ellen Hutchings (claim no. 13)[4].  The duplicative claim should be expunged for administrative purposes.

10.    After the initial hearing on the Debtors' Initial Omnibus Claims Objection, the Court entered an order (the "Claims Scheduling Order") (ECF Doc. No. 208) that directed certain of the claimants, including the Tenants whose claim are subject to this Supplemental Objection, to file amendments to their claims in liquidated amounts on or before September 15, 2017.  The order further provided that failure to file claims in liquidated amounts with backup documentation supporting the claim would result in the claim being expunged.

11.    In accordance with the terms of the Claims Scheduling Order, a number of claimants, including the Tenants whose claims are subject to this Supplemental Objection, filed additional, new or amended claims against the various Debtors.

12.    The Tenants have asserted a variety of claims, most of which are based on the alleged condition of the property prior to the Petition Date.  A summary of the Tenant Claims is set forth in Exhibit B hereto.

13.    Silverstone Property Group ("Silverstone") took over management of the Properties post-petition, and has repaired and cleaned up the Properties, including resolving the majority of the violations against the Properties.  It is the Debtors' position that the repair

---

[3] A copy of the Hutchings Objection and the Loffredo Declaration (and exhibits) are incorporated into this Supplemental Objection.

[4] The Hutchings claims each include as the basis for the claim a demand for a rent abatement, including for "Class C violations" which are not specifically identified. Debtors submit that this abatement demand overlaps with the general demand for abatement as well as the more specific demand for abatement for lack of services, each of which are addressed herein.

work and resolution of the property violations resolved many of the tenant complaints, including many of those asserted in the claims that are the subject of this Supplemental Objection.

14.    On December 14, 2020, the Debtors filed a motion seeking the approval of a settlement agreement between the Office of the Attorney General of the State of New York (the "AG") and Madison Realty Capital Advisors, LLC, an affiliate of EVF1.  The settlement agreement resolves the Debtors' objection to the $5 million proofs of claim that the AG filed against each of the Debtors.  As part of the settlement agreement, EVF1 consented to a $1,050,000 rent credit to be distributed to the current tenants at the Property, including the Tenants whose claims are the subject of this Supplemental Objection, at the discretion of the AG.  Silverstone has advised that each current tenant will receive a rent credit in the amount of $9,210.52.  The motion to approve the settlement agreement was granted pursuant to an order entered on January 12, 2021 (ECF Doc. No. 757).

## Relief Requested

15.    By this Supplemental Objection, the Debtors seek the entry of an order, substantially in the form annexed hereto as Exhibit A, to disallow and expunge the Tenant Claims.  In the event the Court does not disallow and expunge these Tenant Claims in their entirety, they should be reduced to an amount set forth in Exhibit B hereto.

## Basis for Relief

16.    Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §502(a).  A chapter 11 debtor has the duty to object to the allowance of any claim that is improper.  *See* 11 U.S.C. §§704(a)(5), 1106(a)(1) and 1107(a);

*see also Int'l Yacht & Tennis, Inc. v. Wasserman. (In re Int'l Yacht & Tennis, Inc.)*, 922 F.2d

659, 661-62 (11th Cir. 1991).

17.     As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of

claim constitutes prima facie evidence of the validity and the amount of the claim under

section 502(a) of the Bankruptcy Code.  *See In re Vanegas*, 290 B.R. 190, 193 (Bankr. D.

Conn. 2003); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 n.13 (Bankr. S.D.N.Y. 2000).

However, a proof of claim must "set forth the facts necessary to support the claim" for it to

receive the prima facie validity accorded under the Bankruptcy Rules.  *In re Chain*, 255 B.R.

278, 280 (Bankr. D. Conn. 2000) (internal quotation omitted); *In re Marino*, 90 B.R. 25, 28

(Bankr. D. Conn. 1988).

18.     Under Bankruptcy Rule 3001(f), a proof of claim retains that presumption only

until an objecting party refutes "at least one of the allegations that is essential to the claim's

legal sufficiency."  *In re WorldCom, Inc.*, No. 02-13533, 2005 WL 3832065 at * 4(Bankr.

S.D.N.Y. 2005) (*quoting Allegheny*, 954 F.2d at 173-74).  Once such an allegation is refuted,

"the burden reverts to the claimant to prove the validity of the claim by a preponderance of

the evidence."  *Id.*  In other words, once the *prima facie* validity of a claim is rebutted (as it

has been here), "it is for the claimant to prove his claim, not for the objector to disprove

it." *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

## **Tenant Claims That Were Amended and Superseded Should Be Disallowed**

19.     Claims that are amended and superseded by subsequent claims filed by the

same creditor are routinely disallowed and expunged.  *See e.g. In re Dewey & Leboeuf LLP*,

Case No. 12-12321 (MG), 2014 WL 201586, at *2 (Bankr. S.D.N.Y. Jan. 16, 2014)

(concluding that claim number 833 was amended and superseded, and thus the claim should be disallowed and expunged); *In re Enron Corp.*, Case No. 01 B 16034 (AJG), 2005 WL 3874285, at *1 n.1 (Bankr. S.D.N.Y.  Oct,5, 2005) (noting that "[i]n as much as the Initial Claim was amended and superseded by the Amended Claim, it was disallowed and expunged….").  Thus, to the extent that the Tenant Claims on Exhibit B were amended and superseded, they should be disallowed and expunged in their entirety.

### Tenant Claims Should Be Reduced

20.     In the event that the Court does not disallow and expunge the Tenants Claims in their entirety, these claims should be reduced as set forth in Exhibit B. The basis of those reductions are set forth below and in Exhibit B.

### Standard of Damages for Alleged Breach of Warranty of Habitability

21.     Many of the Tenants Claims seek damages based on a purported breach of warranty of habitability.  As detailed herein, the Tenants Claims for damages are overstated and should be reduced.   The seminal case in New York on determining damages for breach of warranty of habitability is *Park West Management Corp. v. Mitchell*, 47 N.Y. 2d 316 (1979).  In that case, the Court of Appeals set forth the formula to calculate damages:

> [I]nasmuch as the duty of the tenant to pay rent is coextensive with the landlord's duty to maintain the premises in habitable condition, the proper measure of damages for breach of the warranty is the difference between the fair market value of the premises if they had been as warranted, as measured by the rent reserved under the lease, and the value of the premises during the period of the breach.

*Id*. at 329.

22.     In determining the amount of damages, the Court must "weigh the severity of the violation and duration of the conditions giving rise to the breach as well as the

effectiveness of steps taken by the landlord to abate those conditions." *Id*.

23.     Each of the Tenants have asserted claims against the Debtor 325 East 12th Street LLC and seek a 100% rent abatement based on the assertions set forth in their claims. As set forth in *Park West Management Corp.*, the measure of the tenants' damages are the differences between the value of their apartment lease, measured by the monthly lease payment (as applicable to each tenant), and the value of the premises of each tenant during the period of the breach.  The value of each lease in habitable condition is set forth on Exhibit B. The maximum abatement that could be claimed would be a 100% rent abatement. However, the tenants are not entitled to a 100% rent abatement, but rather a much smaller rent abatement.  The Tenants have previously received an abatement, which must be considered in connection with reducing any potential claim that each Tenant may have.

        <u>10% Abatement for Mice and Vermin</u>

24.     In *Park West Management Corp.,* the landlord appealed an order of the Appellate Term of the Supreme Court, First Judicial Department, which affirmed the Civil Court granting tenants a ten percent rent abatement on a counterclaim for breach of warranty of habitability. As a result of a strike by building maintenance and janitorial employees, essential services that impacted the health and safety of the tenants was curtailed. The issue was whether the conditions during the strike constituted a breach of the implied warranty of habitability. In that case, uncollected trash piled up and exposure of the accumulated garbage to the elements caused it to fester and exude noxious odors.  *Id.* at 326. Regular extermination service was not performed which, together with the accumulated garbage, created conditions in which rats, roaches and vermin flourished.  *Id*. Routine maintenance service was not performed, common areas were not cleaned and there were sporadic

interruptions of other services. *Id.* at 326-327. The Civil Court determined that the conditions constituted a breach of the implied warranty of habitability and found that the loss in rental value justified a reduction of 10% in their monthly bill for that one month. *Id*. at 327. The Appellate Term and the Appellate Division affirmed and the Court of Appeals affirmed the order of the Appellate Division.

25.     Thus, based on *Park West Management Corp.*, the claims for an abatement based on lack of extermination (and the resulting mice and insects), and failure to properly maintain the premises and similar issues should be limited to a 10% abatement.[5]

<u>10% to 15% Abatement for Lack of Cooking Gas</u>

26.     Seven of the eight Tenants have asserted claims based on lack of gas.  Those Tenants should be entitled to an abatement between 10% and 15% for the lack of gas in their apartment[6].  *See Inwood Ventura II LLC v. Jackson*, 63 Misc.3d 1223(A) at *3 (N.Y. Civ Ct. 2019) ("Courts have awarded abatements between 10% and 15% for lack of gas."); *see also B-U Realty Corp v. Kiebert-Boss*, 50 Misc. 3d 1220(A), 2016 WL 697575, at *5 (N.Y. Civ. Ct. 2016) (tenant entitled to a 15% abatement for lack of gas).

27.     In *Inwood*, the primary issue at trial was the amount of the tenant's rent abatement based on a lack of gas in the apartment.  The tenant sought a 50% rent abatement

---

[5]  Certain of the Tenants assert claims arising from lack of cooking gas starting in mid-May 2016 and seek a 14.5 month rent abatement.  It is unclear why the tenants seek a rent abatement for 14.5 months.  This time period goes from May 2016 through the end July 2017, covering both pre and post-Petition Date time periods, including time after the bar date.  Regardless, the Debtors have not sought to limit the Tenant Claims to the prepetition claim period; however, in calculating any damage claim that a Tenant may be entitled to, the Debtors have applied the full amount of the abatements previously provided to the particular Tenant.

[6]  Tenant Kathleen Wakeham separately filed a proceeding with the State of New York Division of Housing and Community Renewal, ET 410159 S, which reduced her rent based on decreased services.  That rent reduction was reversed based on an application to restore the rent based on the restoration of services, Docket No. GQ 410124 OR which restored the rent effective as of July 1, 2018.

for lack of gas, and he testified that he incurred significant additional costs for food due to

having no gas in the apartment.  The Court rejected the tenant's request for a 50% abatement.

Noting that courts have awarded rent abatements between 10% and 15% for lack of gas, the

*Inwood* court found that the tenant was entitled to an additional 5% abatement above the

10% abatement that was already provided by the landlord for the lack of gas.  *Id*. at *3.  The

Court did not grant the tenant a separate claim for damages for his additional food costs due

to the lack of gas in his apartment.

28.     Similarly, in *Graham Court Owners Corp., v. Thomas*, 62 Misc. 3d 1088,

(N.Y. Civ. Ct. 2019), the landlord commenced a summary proceeding against a rent

controlled tenant for a money judgment and possession of the apartment, and tenant

counterclaimed for rent overcharge and breach of warranty of habitability. With respect to

the issue as to lack of gas, the tenant testified that she had no gas during a certain time period

and that the landlord gave her a hotplate when she had no gas, but she could not use the

hotplate.   The *Graham* Court found that this condition diminished the habitability of the

premises by ten percent. *Id.* at 1097.

29.     Based on the above, for those seven Tenants that claim a rent abatement due to

lack of gas in their apartment, they should be entitled to an abatement between 10% and 15%

of their rent.  As demonstrated by *Inwood*, *supra*, the Tenants' claim for out of pocket

expenses for food due to lack of gas is included in the 10% to 15% rent abatement and is not

a separate line item of damages.   Thus, the abatement for lack of gas and out of pocket

expenses for food should be no more than a 15% rent abatement.  From this potential

abatement, the Court must take into consideration the approximate 10% rent abatement that

Silverstone advises that each of the tenants has received.  See Exhibit A to the Declaration of

Rocio Cabra in Support of First Supplement to Debtors' First Omnibus Objection to Claims

("Cabra Declaration"). Thus, the amount of any abatement awarded based on the Tenant

Claims should be reduced or offset by the abatement already received by the Tenant as set

forth in the Cabra Declaration (and Exhibit A thereto) and Exhibit B hereto. In addition, to

the extent any of the Tenants are in arrears on account of their rental obligations, any amount

awarded on account of Tenant Claims should be offset first as against rental arrears.

<u>Abatement Due to Lack of Heat and Hot Water</u>

30.    Several of the Tenants have asserted that they are entitled to an abatement as a

result of lack of heat and hot water. However, the Tenants have not satisfied their burden to

demonstrate a claim for lack of heat and hot water.

31.    With respect to the Tenants' claims for lack of heat, they have not provided

any details regarding the temperatures inside or outside the apartment and failed to

sufficiently prove the dates (with one exception), the duration and intensity of the alleged

deficiencies, relative to the outdoor temperatures to permit the court to quantify the

deprivation as an abatement. Thus, the Court should not sustain the Tenants request for an

award of an abatement. *See Titus v. Doe*, 52 Misc. 3d 134(A), *1 (App Term, 2nd Dept, 2d,

11th & 13th Jud Dists 2016) ("tenant here failed to offer any details whatsoever regarding the

temperatures inside or outside the apartment and therefore 'failed sufficiently to prove the

dates, duration and intensity of the alleged deficiencies, relative to the outdoor temperatures,

to permit the court to quantify the deprivation as an abatement'…. In light of this, … the

proof tenant offered at trial was insufficient to sustain the award of abatement) Thus, except

for Mr. Engel, none of the Tenants have provided any evidence of the lack of heat and thus

the portion of their proof of claim based on lack of heat should be $0.

32.    With respect to Mr. Engel, as part of his Claim 9-2, there is some evidence that

he made service requests and/or filed notice with the New York City Department of Housing

Preservation and Development for lack of heat and hot water.  However, without any further

documentation, Debtors believe that Mr. Engel has not satisfied his burden.  In addition, Mr.

Engel filed a proceeding with the State of New York Division of Housing and Community

Renewal, which reduced his rent based on decreased services, Docket No. EQ 410236.  That

rent reduction was reversed based on an application to restore the rent based on the

restoration of services, Docket No. GQ 410136 OR which restored the rent effective as of

July 1, 2018.  Notwithstanding the above, the Debtors believe that he should be awarded a

5% abatement of rent for a full year in the amount of $819.55.  However, proof of claim no.

9-3 and 33 each attached a rent statement that confirms that Mr. Engel was receiving a rent

concession.

33.    Courts have awarded abatements for lack of hot water ranging from 5% to

20%.  Compare *Whitehall Hotel v. Gaynor,* 121 Misc2d 736, 747 (Civ. Ct. N.Y. Cty 1983)

(5% abatement for intermittent lack of hot water) with *Parker 72nd Assocs. V. Isaacs*, 109

Misc.2d 57, 58 (Civ. Ct. N.Y. Cty. 1980) ( 20% abatement for lack of hot water).  However,

with the exception of Mr. Engel above, the Tenants have not satisfied their burden to

establish a claim based on lack of hot water.  There is no evidence of  the days and duration

of a lack of hot water.  Without such evidence, the Court should not sustain an abatement

claim for lack of hot water.  Thus, the portion of  their proof of claim based on lack of hot

water should be $0.

No Consequential Damages for Breach of Warranty of Habitability

34.    Consequential damages are indirect damages and compensate for the

additional losses incurred as a result of a breach. *Latham v. Land I, LLC v. TGI Friday's Inc.*, 96 A.D.3d 1327, 1330-1331 (N.Y. App. Div. 3rd Dept. 2012). They are extraordinary in that they do not directly flow from the breach and are recoverable only upon a showing that they were foreseeable and within the contemplation of the parties at the time that the contract was entered into. *Id.* at 1131. However, "[a] tenant is not entitled to recover consequential damages for a landlord's breach of the implied warranty of habitability." *Bay Park One Co. v. Crosby*, 109 Misc. 2d 47 (Sup Ct. App. Term 2nd and 11th Dists. 1981) (citing *Curry v. New York City Housing Authority*, 77 A.D. 2d 534 (N.Y. App. Div. 1st Dept. 1980). Thus, a Tenant's claim for medical bills, missed days of work for court and out of pocket expenses to purchase food at restaurants or small appliances should not be recoverable. *See Madrid v. Netherlands Garden Corp.*, 47 Misc.3d 147(A) (Sup Ct. 1st Dept. 2015) (Tenant was not entitled to consequential damages, such as lost pay, for breach of statutorily implied warranty of habitability); *303 Beverly Group, L.L.C v. Alster*, 190 Misc.2d 69 (Sup Ct. 2nd Dept. 2001)("Denial of tenant's claim for money damages was proper for the . . . reason that consequential damages are not recoverable for the breach of warranty of habitability.").

<u>No Damages for Alleged Pain and Suffering</u>

35.    Two of the Tenants, Ms. Callan and Ms. Anna Hutchings, have asserted a claim based on pain and suffering. That portion of their respective claims should be disallowed because a tenant is not entitled to a monetary award for pain and suffering based on a breach of warranty of habitability claim. *See Sheffield v. Pucci*, 63 Misc. 3d 1216(A), at *11 (N.Y. Sup. Ct. 2019) ("To the extent plaintiff seeks to recover damages for diminution in value of property, personal injury or **pain and suffering** on a claim for breach of the implied warranty of habitability, any claim to that effect must be denied.") (emphasis added); *Elkman*

*v. Southgate Owners Corp.,* 233 A.D.2d 104, 105 (N.Y. App. Div. 1st Dept. 1996) ("[L]oss or diminution in value of personal property as well as personal injuries and pain and suffering are not recoverable" under the warranty of habitability statute Real Property Law §235-b.)

### Intentional Infliction of Emotional Distress

36.    Two Tenants, Ms Callan and Ms. McNider, have asserted a claim of intentional infliction of emotional distress (the "Intentional Infliction of Emotional Distress Claims").  The mere allegation by these two Tenants of such a claim is insufficient to establish a claim.  "The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress*." Petkewicz v. Dutchess County Dept of Community & Family Servs*., 137 A.D.2d 990 (N.Y. App. Div. 2nd Dept. 2016) (citing *Klein v. Metropolitan Child Servs., Inc.,* 100 A.D.3d 708, 710 (N.Y. App. Div. 2nd Dept. 2012); *Taggart v. Costabile*, 131 A.D.3d 243, 249 (N.Y. App Div. 2nd Dept 2015) (citations omitted).

37.    The first element of outrageous conduct serves a dual function: (i) filtering out petty and trivial complaints that do not belong in court and (ii) assuring that plaintiff's claim of severe emotional distress is genuine.  *Taggart*, 131 A.D. 3d at 249 (citation omitted). "The element of outrageous conduct has been described as 'rigorous, and difficult to satisfy.'" "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community.'"[7] *Id*. at 249-250.  The proofs of

claim filed by these Tenants do not establish the second and third requirements as they do not

establish an intent to cause severe emotional distress or demonstrate a causal connection

between the conduct and the injury.  Moreover, Hutchings cannot rely on the commencement

of litigation by the Debtors to support such a claim.  *Walents v. Johnes,* 257 A.D.2d 352, 353

(N.Y. App. Div. 2nd Dept 1999) (The commencement of litigation, even if alleged to be for

the purpose of harassment and intimidation, is insufficient to support a claim for intentional

infliction of emotional distress.  Furthermore, the requirement of severe emotional distress

must be supported by medical evidence, not the mere recitation of speculative claims.

*Walents v. Johnes,* 257 A.D.2d 352, 353 (N.Y. App. Div. 2nd Dept 1999).  No medical

evidence has been provided.  Thus, the Intentional Infliction of Emotional Distress Claims do

not satisfy all four requirements to establish a claim for intentional infliction of emotional

distress, and this portion of the respective claims of these Tenants should be valued at $0.

<u>Anna and Ellen Hutchings' Claims</u>

38.     Anna and Ellen Hutchings have filed several proofs of claim asserting a

variety of claims against 325 East 25th Street LLC.  One such claim was for negligent

infliction of emotional distress. Claim 11-1 which claim was resolved by stipulation.[8]  The

remaining claims filed by Anna and Ellen Hutchings also assert claims for or allude to a

claim for negligent infliction of emotional distress. However, the mere allegation of such a

---

[7]   In *Taggart*, the Court noted that in 1993, the Court of Appeals recognized that the intentional infliction of
emotional distress claims that it had considered to date had failed because the alleged conduct was not sufficiently
outrageous.  *Id.* at 250

[8] Unless otherwise indicated, all proofs of claim cited in this Supplemental Objection relate to claims filed against
325 East 12th Street LLC.

claim is insufficient to establish a claim.  There are three distinct lines of cases involving recovery for negligent infliction of emotional harm.  *Taggart v. Costabile*, 131 A.D.3d at 252.  The first line of these cases recognizes "that when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable, even though no physical injury occurred."  *Id*.  (citations omitted)  In a discussion of negligent infliction of emotional distress, the Court of Appeals stated: "[a] breach of duty of care resulting directly in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct, rather than a consequential, result of the breach and when the claim possesses some guarantee of genuineness."  *Id*. (citing *Ornstein v. New York City Health & Hosps. Corp*., 10 N.Y.3d 1, 6 (2008)).  Thus, the Court of Appeals has required that (i) the mental injury be a direct, rather a consequential, result of the negligence, *id*. (citing *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 506 (1983), and (ii) that the claim of emotional distress possess "some guarantee of genuineness." *Id*. (citing *Ferrara v. Galluchio*, 5. N.Y. 2d 16, 21 (1958)).  The guarantee of genuineness generally requires that the breach of the duty owed to the injured person must have at least endangered the claimants' physical safety or cause the claimant to fear for his or her own physical safety. Id.[9]  *See Glendora v. Gallicano*. 206 A.D.2d 456 (2nd Dept. 1994) ("[A] cause of action to recover damages for negligent infliction of emotional distress must generally be premised upon conduct which 'unreasonably endangers' the plaintiff's physical safety.").

39.    Based on the above, Anna and Ellen Hutchings have neither provided medical

---

[9] There is a split in the case law as to whether extreme and outrageous conduct is an essential element of this claim. *Compare Taggart*, 131 A.3d at 255 ( extreme and outrageous conduct is not an element of negligent infliction of emotional distress claim) with *Katehis v. Sovereign Associates, Inc*., 44 Misc.3d 1220(A) (extreme and outrageous conduct is an element of negligent infliction of emotional distress).

evidence of their emotional distress nor evidence that their physical safety was in danger.

Thus, this portion of their claim should be disallowed and valued at $0.

40.    Ellen Hutchings also asserted a claim for harassment, legal fees and pain and suffering[10] related to the infliction of emotional distress. Claim 13-1.  With respect  to the claim of harassment, as more fully set forth on paragraphs 16 through 18 of the Hutchings Objection [Dkt No. 144], Hutchings filed (i) a counterclaim for harassment against 325 East 12th Street LLC in a holdover proceeding in Civil Court, New York County under Index No. 60378/2016 (the "Holdover Proceeding") and (ii) a harassment complaint (the "Harassment Complaint") with the New York State Division of Housing and Community Renewal (the "NYSDHCR").  In connection with the Harassment Complaint, on June 22, 2016, a conference was held with the representatives of 325 East 12th Street LLC and Ellen Hutchings.  In a memorandum dated June 30, 2016, the NYSDHCR found (i) that the Holdover Proceeding was not baseless and (ii) no evidence of harassment and recommended that the Harassment Complaint be closed, which it was by its letter dated July 5, 2016. The July 5, 2016 letter stated that the harassment complaint be closed because of an absence of sufficient evidence, however, this was without prejudice to a subsequent re-filing based on new evidence. Pursuant to the Claims Scheduling Order, the Tenants, including Hutchings were provided with an opportunity to supplement their filed proofs of claim with documentation to support the claim.  The proofs of claim as well as the various amendments and supplements filed by Hutchings do not contain any additional documentation or evidence

---

[10] As set forth in paragraph 34, supra, a tenant is not entitled to a claim for pain and suffering based on breach of warranty of habitability.

of any re-filing by Hutchings with the NYSDHCR.[11]  Thus, the Hutchings claim for harassment should be denied.

41.     Moreover, as the litigation between the parties was not baseless and the NYSCHR found no evidence of harassment, Hutchings cannot demonstrate an entitlement to a claim for intentional infliction of emotional distress based on the litigation between the parties.  *See Hartman*, 19 A.D. 3d 240, 240-41 (1st Dept 2005) (landlord did not intentionally inflict emotional distress upon tenant through abusive lawsuits where none of proceedings were brought without justification).

42.     To the extent that a tenant asserted a claim for damages based on negligence, that claim must be dismissed to the extent it failed to identify any specific negligent act or omission. *See Rosario v. 288 St. Nick LLC*, 814 N.Y.S.2d 892 (App. Term, 1st Dept., 2006).

*Legal Fees*

43.     Certain tenants have asserted claims for legal fees. Any such claims should be denied because those tenants have neither attached their respective leases that provide for attorneys' fees nor otherwise demonstrated an entitlement to such fees.   With respect to the Hutchings claims specifically, the demand for $6,5000 in legal fees is asserted in claims 12 and 13 when it appears to be specific to the litigation referenced in claim 11 which was resolved by stipulation.  This demand should therefore be denied and disallowed in connection with claims 12 and 13 (as supplemented by claims 29 and 30).

*James Keegan*

---

[11] A copy of the memorandum and letter are attached as Exhibit D to the Loffredo Declaration, which was filed in support of the Hutchings Objection (Dkt No. 145]. A copy of the Loffredo Declaration and its exhibits are incorporated herein.

44.    Finally, James Keegan asserts that he is owed $73,140 for a signed surrender agreement. There is no basis for the claim because he continues to reside at the property. Moreover, he has failed to pay rent since February 5, 2016 and currently owes $85,009.48. Thus, Mr. Keegan's claim should be reduced to $0.

## Reservation of Rights

45.    The Debtors reserve the right to further amend, supplement, revise or object or otherwise respond to the Tenants Claims on any and all additional factual or legal grounds, and, without limiting the foregoing to (i) amend the Supplemental Objection; (ii) adjourn any hearing scheduled on the Initial Omnibus Claims Objection and Supplemental Objection; (iii) file additional papers in support of the Initial Omnibus Claims Objection and Supplemental Objection; and (iv) take all other appropriate actions to (a) respond to any allegation or defense that may be raised in a response filed by or on behalf of the tenants or other party-in-interest, (b) further object to the Tenants Claims in the event that one or more tenants provides (or attempts to provide) additional documentation or substantiation of their respective claim, and/or (c) further object to the Tenants Claims based on additional information that may be discovered upon further review by the Debtors or through discovery.

**WHEREFORE,** the Debtors respectfully request that the Court disallow and

expunge the Tenant Claims in their entirety.  In the event that the Court does not expunge all

the claims in their entirety, the Debtors request that the Court enter an order reducing  the

Tenant Claims as set forth on  Exhibit A attached hereto, and for such other relief as this

Court finds just and appropriate.

Dated:  New York, New York
       January 28, 2021

                          **ROBINSON BROG LEINWAND GREENE**
                           **GENOVESE & GLUCK P.C.**
                          Attorneys for Debtors
                          875 Third Avenue, 9th Floor
                          New York, New York 10022
                          Telephone No.: (212) 603-6300

                          By:  /s/ A. Mitchell Greene
                                **A. Mitchell Greene**
                                **Steven B. Eichel**
                                **Lori Schwartz**