**ROBINSON BROG LEINWAND GREENE**
**GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022-0123
Tel. No.: 212-603-6300
**A. Mitchell Greene**
**Lori A. Schwartz**
*Attorneys for the Debtors*

**Hearing Date:  February 12, 2021**
**Hearing Time:  10:00 a.m.**

The hearing will be held
telephonically

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:

**EAST VILLAGE PROPERTIES, LLC,**
***et al.*[1]**

                              Debtors.

-------------------------------------------------------X

Chapter 11

Case No.: 17-22453 (RDD)

(Jointly Administered)

### DECLARATION OF DAVID GOLDWASSER IN SUPPORT OF DEBTORS' REQUEST FOR CONFIRMATION OF SECOND AMENDED PLAN OF LIQUIDATION OF EAST VILLAGE PROPERTIES, LLC AND AFFILIATED DEBTORS

David Goldwasser, hereby declares under penalty of perjury, as follows:

1.      I am the Managing Member of GC Realty Advisors LLC, which is in turn the Managing Member of East Village Properties, LLC. ("EVP").  EVP and its affiliated debtors are collectively referred to herein as the "Debtors."

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' taxpayer identification number are as follows:  East Village Properties LLC (1437); 223 East 5th Street LLC (8999); 229 East 5th Street LLC (8348); 231 East 5th Street LLC (4013); 233 East 5th Street LLC (8999); 235 East 5th Street LLC (1702); 228 East 6th Street LLC (2965); 66 East 7th Street LLC (1812); 27 St Marks Place LLC (1789); 334 East 9th Street LLC (7903); 253 East 10th Street LLC (4317); 325 East 12th Street LLC (0625); 327 East 12th Street LLC (7195); 329 East 12th Street LLC (0475); 510 East 12th Street LLC (1469); and 514 East 12th Street LLC (7232).

2.      I submit this declaration ("Declaration") in support of the Debtors' request for an order confirming the Second Amended Joint Plan of Liquidation of East Village Properties, LLC and its affiliated debtors, dated January 11, 2021 (ECF No. 756) (as the same has been or maybe amended, modified, supplemented, or restated, the "Plan") pursuant to section 1129 of the Bankruptcy Code.  I have reviewed, and I am generally familiar with, the terms and provisions of the Plan, the documents comprising the Plan Supplement, the Disclosure Statement relating to the Plan, and the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code.  I was personally involved in the development and negotiations regarding the Plan and its related documents.[2]

3.      Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussion with Debtors' counsel regarding applicable law, information provided to me by Debtors' prior management company, information provided to me by Silverstone Property Group, the entity currently managing the Properties (as defined herein), or my opinions based upon mu experience, knowledge, and information concerning the Debtors' operations and the multifamily residential real estate industry.  If called upon to testify, I could and would testify to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtors.

4.      The Debtors own 15 residential multifamily apartment buildings located in the East Village area in New York City, which properties are located at 27 St. Marks Place, 514 East 12th Street, 223 East 5th Street, 229 East 5th Street, 231 East 5th Street, 233 East 5th Street, 235 East 5th Street, 66 East 7th Street, 253 East 10th Street, 510 East 12th Street, 228 East 6th Street,

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the *Second Amended Joint Plan of Liquidation of East Village Properties LLC and Affiliated Debtors.*

325 East 12th Street, 327 East 12th Street, 329 East 12th Street and 334 East 9th Street (collectively, the "Properties").

5.      The Debtors' Properties are encumbered by five mortgages granted to the secured creditor EVF1 LLC ("EVF1" or "Secured Creditor"). As of the Petition Date, the Debtors were in default under each of the five notes and mortgages and owed the Secured Creditor as of the Petition Date the sum of $145,428,538.38.  A mortgage foreclosure proceeding was commenced by EVF1 which proceeding was stayed upon the Debtors' filing their chapter 11 cases and seeking the protections afforded them by the Bankruptcy Code.

6.      On March 28, 2017, (the "Petition Date") the Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") by filing 16 voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered.

7.      To the best of my knowledge, information and belief, since the Petition Date, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court during the course of these Chapter 11 Cases. Pursuant to the Plan, holders of Allowed Claims will receive creditor distributions on account of their Allowed Claims from the Plan Fund to be established and funded by EVF1 which shall be distributed in accordance with the Plan and in accordance with the priorities established by the Bankruptcy Code.   The Plan contemplates a pro rata distribution to unsecured creditors, including Allowed Tenant Claims with no funds to be distributed to the Debtors' equity holders.

8.      The Debtors filed a series of plan and disclosure statements starting on May 30, 2017 when the Debtors filed their Joint Plan of Reorganization of East Village Properties LLC and Affiliated Debtors (ECF No. 93) and accompanying Disclosure Statement for Joint Plan of Reorganization of East Village Properties LLC and its Affiliated Debtors CECF No. 94).

9.      On June 23, 2017, the Debtors filed their First Amended Joint Plan of Reorganization of East Village Properties LLC and Affiliated Debtors (ECF No. 125) and accompanying First Amended Disclosure Statement for Joint Plan of Reorganization of East Village Properties LLC and its Affiliated Debtors (ECF No. 126).

10.      On July 5, 2017, the Debtors filed their Second Amended Joint Plan of Reorganization of East Village Properties LLC and Affiliated Debtors (ECF No. 134) and accompanying Second Amended Disclosure Statement for Joint Plan of Reorganization of East Village Properties LLC and its Affiliated Debtors (ECF No. 135).

11.      On October 10, 2017, the Debtors filed their Third Amended Joint Plan of Reorganization of East Village Properties LLC and Affiliated Debtors (ECF No. 248).

12.      On December 14, 2020, the Debtors filed their Joint Plan of Liquidation of East Village Properties LLC and Affiliated Debtors (ECF No. 735) and accompanying Third Amended Disclosure Statement for Joint Plan of Liquidation of East Village Properties LLC and its Affiliated Debtors (ECF No. 734).

13.      On December 15, 2020, the Debtors filed their Amended Joint Plan of Liquidation of East Village Properties LLC and Affiliated Debtors (ECF No. 739).

14.      On January 6, 2021, the Debtors filed their Third Amended Disclosure Statement for Joint Plan of Liquidation of East Village Properties LLC and its Affiliated Debtors, as modified (ECF No. 751).

15.      On January 8, 2021, the Debtors filed their Second Amended Joint Plan of Liquidation of East Village Properties LLC and Affiliated Debtors (ECF No. 754) and accompanying Third Amended Disclosure Statement for Joint Plan of Liquidation of East Village Properties LLC and its Affiliated Debtors, as further modified (ECF No. 753).

16.    On January 11, 2021, the Debtors filed their Second Amended Joint Plan of Liquidation of East Village Properties LLC and Affiliated Debtors (ECF No. 756) (the "Liquidating Plan") and accompanying Third Amended Disclosure Statement for Joint Plan of Liquidation of East Village Properties LLC and its Affiliated Debtors (ECF No. 755) (the "Disclosure Statement").

17.    The Liquidating Plan and Disclosure Statement provide, *inter alia*, that EVF1 or its nominee or designee will take title to the Properties and EVF1 will fund the amount of $3,125,000.00 from the Effective Date Payments and the Post Effective Date Payments which will: (i) pay, as provided for in accordance with the terms and conditions set forth in the Liquidating Plan, the Allowed Claims in Classes 1, 3, and 6 (which amount is not inclusive of amounts due for Administrative Claims, Priority Tax Claim, Fee Claims and United States Trustee Fees) (ii) the Manager Administrative Claim; and (iii) to pay the pro rata distribution over time to Allowed Claims in Classes 4 and 5 in accordance with their relative priorities provided for in the Bankruptcy Code.  EVF1 shall also be responsible to fund amounts due to pay Administrative Claims, Priority Tax Claims, Fee Claims and United States Trustee Fees and fund the payment of Disputed Claim Reserve of up to $125,000 (once the claims become Allowed Claims) (collectively, the "Plan Fund");

18.    The means for implementation of the Plan are for the substantive consolidation of the  Debtors the their Estates and the sale of the Properties in accordance with the Purchase Agreement pursuant to Sections 363, 365, 1123(b)(4), 1129(b)(2)(A) and 1146(a) of the Bankruptcy Code.  Pursuant to bidding procedures previously approved by the Court, the Properties were marketed for sale, but the sale process did not result in any qualified bidders for the Properties.  Therefore, EVF1 or its nominee or designee will take title to the Properties and

will receive the Debtors remaining Cash Collateral in full and final satisfaction of EVF1's Secured Claim. The Plan Fund is the cash consideration to be provided by EVF1 as part of the consideration for the transfer of the Properties. The Plan requests Bankruptcy Court approval of the Purchase Agreement and authorizing the Debtors to sell the Properties to EVF1 or its nominee or designee, free and clear of all liens, claims and encumbrances.

19.    On January 12, 2021, the Bankruptcy Court entered an order approving the Disclosure Statement (ECF Nos. 758/759[3]) and granting related relief (the "Scheduling Order") establishing various deadlines related to confirmation of the Plan and fixing the confirmation hearing for February 12, 2021. Debtors' counsel thereafter proceeded in accordance with the Scheduling Order to commence the process of soliciting votes with respect to the Plan.

20.    I was advised by Debtors' counsel that the Plan, Disclosure Statement, Scheduling Order and either a ballot or notification of non-voting status was served by first class mail, and where available, by electronic mail, to all of the Debtors' creditors and other parties in interest. I am further advised by counsel that proof of service has been filed with the Court (ECF doc. no. 764).

21.    I have been provided with copies of the ballots cast by Class 2 and Class 4 creditors voting to accept the Plan along with the ballot certification filed with the Court (the "Ballot Certification") (ECF doc. no. 788) and understand that the Plan has been accepted by all Class 2 and Class 4 creditors entitled to vote. I am advised that the Plan also provides that the Debtors are to request that Class 5 Tenant Claims, who failed to cast any ballots in connection with the Plan, be deemed by the Court to have accepted the Plan. Counsel further advises that in the event the Court declines to deem Class 5 an accepting impaired voting class, that the Debtors

---

[3] The ECF docket reflects entry of 2 orders approving the Disclosure Statement. Document no. 758 is the controlling document as it includes all exhibits referenced in the order.

shall request confirmation of the Plan to proceed pursuant to Section 1129(b) of the Bankruptcy Code.

22.    Debtors' counsel advises that the deadline to cast a ballot to accept or reject the Plan or to object to confirmation of the Plan was fixed at Friday, February 5, 2021 and that no objections were filed.  Debtors' counsel also advises that prior to the objection deadline, counsel to New York State requested certain revisions to language contained in Sections 4.2 and 5.9 of the Plan regarding sales tax which will be addressed in the proposed confirmation order.

23.    Debtors' counsel also advises that the Scheduling Order contained a provision fixing the deadline for the filing of administrative claims against the Debtors' Estates at February 5, 2021, which deadline was extended at the request of Tenants' counsel until February 9, 2021 at 5p.m.  I am advised that one (1) administrative claim was filed.

24.    I am aware that Debtors' counsel filed an application seeking approval of interim compensation and have no objection to the amount of fees and expenses requested.

25.    The Plan is the product of arms-length negotiations between the Debtors and its creditors, and specifically, counsel to EVF1 and the Office of the Attorney General of the State of New York.  I interacted regularly with Debtors' counsel retained by this Court during the course of the Debtors' Chapter 11 Cases, including in preparing the Plan.

26.    On the basis of my responsibilities on behalf of the Debtors, my participation in the Plan process, and my regular discussions with the Debtors' counsel, I believe that the Plan which Debtors have requested be confirmed has been proposed in good faith.  I strongly support confirmation of the Plan over any other alternatives that have been considered to date and to the best of my knowledge and understanding, the provisions of the Plan are in compliance with the applicable laws and orders of this Court.

27.     I have reviewed the Ballot Certification filed in connection with the confirmation

hearing.  I have been advised by Debtors' counsel that Priority Claims in Class 1, Other Secured

Claims in Class 3 and the Attorney General Claim in Class 6 are unimpaired and therefore votes

for these classes of claims were not solicited.  I am also advised that the payment due to the

Attorney General in accordance with the previously approved settlement agreement was timely

made on January 27, 2021.  I am also advised that the EVF1 Secured Claim in Class 2,

Unsecured Claims in Class 4 and Tenant Claims in Class 5 are impaired and were provided with

a ballot to accept or reject the Plan.  I am further advised that Class 7 Existing Equity Interests

are not receiving any distribution under the Plan and are deemed to have rejected the Plan.  I

understand that the Plan has been accepted by voting creditors in Classes 2 and 4 and that the

court may deem the Class 5 Tenant Claims to be an accepting impaired class pursuant to Section

3.5 of the Plan.  I am informed that in the event the Court declines to deem Class 5 Tenant

Claims to be an accepting impaired class, that notwithstanding the rejection of the Plan by Class

5 Tenant Claims and the deemed rejection of the Plan by Class 7 Existing Equity Interests, that

the Plan can be confirmed and that the Debtors may proceed with confirmation of the Plan

because, to the best of my knowledge as informed by counsel for the Debtors, the Plan does not

discriminate unfairly and is fair and equitable with respect to each class of claims as required by

section 1129(b)(1) of the Bankruptcy Code.

### The Plan Satisfies Section 1129 of the Bankruptcy Code

28.     On the basis of my understanding of the Plan, the events that have occurred prior

to and during the Debtors' Chapter 11 Cases, and discussions I have had with the Debtors'

counsel regarding various orders entered during these Chapter 11 Cases and the requirements of

the Bankruptcy Code, I believe that the Plan satisfies all of the applicable requirements of

section 1129(a) of the Bankruptcy Code as described in this Declaration.

29.     Bankruptcy Code Section 1129(a)(1).   On the basis of my understanding of the Bankruptcy Code, I believe the Plan complies with section 1129(a)(1) of the Bankruptcy Code because the Plan complies with Bankruptcy Code Sections 1122 and 1123.

30.     Bankruptcy Code Section 1122.   The Plan designates the classification of Claims and Interests.  The Plan provides for the separate classification of Claims against and Interests in the Debtors based upon the differences in legal nature and/or priority of such Claims and Interests.  In total, there are six (6) Classes of Claims against and one (1) Class of Interests in the Debtors as follows: Class 1 (Other Priority Claims); Class 2 (EVF1 Secured Claims); Class 3 (Other Secured Claims); Class 4 (General Unsecured Claims); Class 5 (Tenant Claims); Class 6 (Attorney General Claim); and Class 7 (Existing Equity Interests).  Each Class contains only Claims or Interests that are substantially similar to one another.  The classification scheme was not proposed to create a consenting impaired Class or to manipulate voting.

31.     Bankruptcy Code Section 1123(a)(1).  The Plan designates Classes of Claims, other than Claims of the type described in sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code.   The Plan makes provisions for certain unclassified claim, including administrative claims, priority tax claims and statutory fees due the Office of the United States Trustee.

32.     Bankruptcy Code Section 1123(a)(2).  The Plan identifies each Class of Claims and Interests that is not impaired under the Plan.

33.     Bankruptcy Code Section 1123(a)(3).   The Plan sets forth the treatment of impaired Claims and Interests.

34.     Bankruptcy Code Section 1123(a)(4).   The Plan provides that, except as

otherwise agreed to by a holder of a particular Claim or Interest, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

35.    Bankruptcy Code Section 1123(a)(5).    The Plan provides adequate means for implementation of the Plan as required by section 1123(a)(5) through, among other things: (i) substantive consolidation of the Debtors' estates, (ii) payment of Claims and Interests through the Plan Fund and (iii) transfer of the Properties to EVF1.  The Plan also contains miscellaneous provisions to aid in its implementation such as the process for objecting to claims, assumption or rejection of executory contracts and post-confirmation appointment of the Plan Administrator.

36.    Bankruptcy Code Section 1123(a)(6).    Section 1123(a)(6) does not apply because, after the Effective Date, Plan Administrator shall, at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to the Debtors, dissolve the Debtors and complete the winding down of such Debtors without the necessity for any other or further actions to be taken by or on behalf of the Debtors or their members or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities.

37.    Bankruptcy Code Section 1123(a)(7).    In accordance with section 5 of the Plan, after the Effective Date, I will be the Plan Administrator, which appointment has been disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.  I believe that the Plan provisions governing the manner of selection of any officer or manager under the Plan are consistent with the interests of creditors and equity security holders and with public policy.

38.    Bankruptcy Code Section 1123(b)(1).    The Plan describes the treatment for the

following Unimpaired Classes: Class 1 (Other Priority Claims), Class 3 (Other Secured Claims) and Class 6 (Attorney General Claim). The Plan also describes the treatment for the following Impaired Classes: Class 2 (EVF1 Secured Claims), Class 4 (General Unsecured Claims), Class 5 (Tenant Claims), and Class 7 (Existing Equity Interests).

39.    <u>Bankruptcy Code Section 1123(b)(2)</u>. The Plan provides for the assumption or rejection of executory contracts and unexpired leases that have not been previously assumed or rejected under section 365 of the Bankruptcy Code which are to be specifically identified in the Purchase Agreement.

40.    <u>Bankruptcy Code Section 1123(b)(3)</u>. The Plan preserves for the Post-Effective Date Debtors, any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date, except as otherwise provided in the Plan, which the Plan Administrator shall have the right to pursue.

41.    <u>Bankruptcy Code Section 1123(b)(5)</u>. The Plan modifies the rights of holders of Claims in Class 2 (EVF1 Secured Claims), Class 4 (General Unsecured Claims), Class 5 (Tenant Claims) and Class 7 (Existing Equity Interests), and leaves unaffected the rights of holders of Claims in Class 1 (Other Priority Claims), Class 3 (Other Secured Claims) and Class 6 (Attorney General Claim).

42.    <u>Bankruptcy Code Section 1123(b)(6)</u>. The Plan contains certain release and exculpation provisions, which, on the basis of my understanding, are consistent with the Bankruptcy Code and existing case law. The Plan also contains a release in favor of EVF1 in exchange for EVF1's prior funding of the Debtors' operating expenses during these Chapter 11 Cases and for its going forward funding commitment under the Plan and its financial and other commitments pursuant to the Settlement Agreement with the Attorney General. These

provisions, to the best of my knowledge and understanding are fair and reasonable and are given for valuable consideration and the Debtors submit they are warranted and should be approved. I understand that the Plan does not provide the Debtors with a discharge.

43.     Bankruptcy Code Section 1123(d). Under section 9.1 of the Plan, all executory contracts and unexpired leases not previously rejected, assumed or assumed and assigned will be automatically deemed assumed pursuant to section 365 and 1123 of the Bankruptcy Code unless such executory contract or unexpired lease (1) is specifically described in the Purchase Agreement as being rejected under the Plan or the Purchase Agreement; (2) as of the Effective Date is subject to a pending motion to reject such Unexpired Lease or Executory Contract; (3) was previously assumed or assumed and assigned to a third party during the pendency of the Chapter 11 Cases; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan..

44.     Based upon the foregoing, I believe the Plan complies fully with the requirements of sections 1122 and 1123. Therefore, the Plan satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

45.     Bankruptcy Code Section 1129(a)(2). I believe that the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and plan solicitation. The Debtors, with the assistance of their professionals, expended a significant amount of time and effort preparing the Disclosure Statement. On January 12, 2021, the Court approved the Disclosure Statement as having adequate information for a hypothetical investor to make an informed decision regarding the Plan and entered the Scheduling Order (ECF doc. no. 758).

46.     To the best of my knowledge, information and belief, the Debtors have also

complied with all other orders of the Bankruptcy Court entered during the pendency of these Chapter 11 Cases.  The Debtors will continue to file operating reports and/or post confirmation reports as applicable and as required by the Office of the United States Trustee until the Chapter 11 Cases are closed.

47.     In addition, the Debtors have solicited and tabulated votes with respect to the Plan in accordance with the Scheduling Order. Accordingly, based on my understanding of the Bankruptcy Code, I believe the Debtors have complied with section 1129(a)(2) of the Bankruptcy Code.

48.     Bankruptcy Code Section 1129(a)(3).  I believe the arms-length negotiations among the parties in interest, their respective advisers and counsel, leading to the Plans' formulation that fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code of maximizing asset values and paying creditors provides independent evidence of the Debtors' good faith in proposing the Plan.

49.     Bankruptcy Code Section 1129(a)(4).  It is my understanding that all payments for services provided to the Debtors during the Chapter 11 Cases must be approved by the Court as reasonable and the Plan satisfies this requirement.

50.     Bankruptcy Code Section 1129(a)(5).  I have been advised that section 1129(a)(5) does not apply in this case as the Debtor will be selling all of its assets on the Effective Date and winding down its affairs under the auspices of the Plan Administrator. However, to the extent it does apply, based on my understanding of the Bankruptcy Code, the Debtors have satisfied the requirements of Bankruptcy Code section 1129(a)(5) because after the Effective Date, I will be appointed Plan Administrator . As I have served as the Manager of the

Debtors during these Chapter 11 Cases, I believe that my continued services during the winding

down of these Chapter 11 Cases is consistent with the interests of creditors and public policy.

51.     <u>Bankruptcy Code Section 1129(a)(6).</u>   The Plan does not provide for any rate

changes by the Debtors.

52.     <u>Bankruptcy Code Section 1129(a)(7).</u>   I believe that the Liquidation Analysis

contained in the Disclosure Statement demonstrates that the Plan satisfies the requirements of

section 1129(a)(7) of the Bankruptcy Code. I understand that the Bankruptcy Code requires that,

with respect to each impaired Class of Claims and Interests, each holder of a claim or equity

interest must either (a) accept the plan or (b) receive or retain under the plan property having a

present value, as of the effective date of the plan, that is not less than the amount such holder

would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

For purposes of determining whether the Plan meets this requirement, the Debtors' counsel

prepared an estimated liquidation analysis as set forth at pages 63-65 of the Disclosure Statement

(the "Liquidation Analysis"), which I reviewed and hereby incorporate by reference.

53.     As described in more detail in the Liquidation Analysis, under chapter 7 of the

Bankruptcy Code, I believe that the cash available for distribution to creditors would consist of

the proceeds resulting from the sale of the Debtors' Properties. Such cash amount would be

reduced by the costs and expenses of the liquidation, including, but not limited to, the

appointment of a trustee and the trustee's employment of attorneys and other professionals, and

transaction fees related to the sale of the Properties. The recovery of value under a chapter 7

liquidation may also be limited by projected market impediments, including reduced recoveries

from discounts buyers would require given a shorter due diligence period, negative perceptions

involved in liquidation sales and the "bargain hunting" mentality of liquidation sales, the current

state of the capital markets, and the limited universe of prospective buyers, especially given the large purchase price for the Properties. The Liquidation Analysis assumes an orderly and expedited liquidation of the Debtors' assets and assumes that the liquidation would occur following the appointment or election of a chapter 7 trustee.

54.     As set forth in the Liquidation Analysis, it is my belief the best interests test is satisfied as to every single holder of a Claim against or Interest in the Debtors. Specifically, I believe that the Liquidation Analysis demonstrates that all Classes of Claims or Interests will recover value under the Plan equal to or in excess of what such Claims or Interests would receive in a hypothetical chapter 7 liquidation. Significantly, I believe that holders of Claims in Class 4 (General Unsecured Claims) and Class 5 (Tenant Claims) would receive no distribution in a chapter 7 liquidation as opposed to the distribution proposed under the Plan. Likewise, I believe that holders of Claims in Class 2 (EVF1 Secured Claims) are expected to receive a recovery of approximately 50% under the Plan and would receive less than that in Chapter 7 liquidation due to expenses in a hypothetical chapter 7 liquidation.

55.     Bankruptcy Code Section 1129(a)(8).  Holders of Claims in Class 1 (Other Priority Claims), Class 3 (Other Secured Claims) and Class 6 (Attorney General Claim) are not impaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Additionally, as evidenced by the Ballot Certification, the Plan has been accepted by more than two-thirds in amount and one-half in number of holders of Claims in Class 2 (EVF1 Secured Claims) and Class 4 (General Unsecured Claims) entitled to vote and who voted on the Plan. Indeed, the Plan was unanimously accepted by Classes 2 and 4. Moreover, as noted in paragraph 27 herein the Court may deem the Plan accepted by the holders of Tenant Claims in impaired Class 5. Pursuant to section 3.5 of the

Plan, because no holder of Class 5 Tenant Claims voted to accept or reject the Plan, the Debtors

shall request that, at the confirmation hearing, the Bankruptcy Court deem the Plan accepted by

the holders of such Tenant Claims in Class 5.   Thus, based on my understanding of the

Bankruptcy Code, as to such Classes, the requirements of section 1129(a)(8) have been satisfied.

Alternatively, in accordance with the Debtors' request for relief under section 1129(b) of the

Bankruptcy Code (see, section 14.15 of the Plan), the Debtors would request confirmation of the

Plan under 1129(b) notwithstanding the non-acceptance by Class 5 Tenant Claims as well as the

deemed rejection by Class 7 Existing Equity Interests.

56.    Holders of Interests in Class 7 (Existing Equity Interests) are impaired, will not

receive any distribution under the Plan or retain any interests in the Debtors and are therefore

deemed to have rejected the Plan.    As noted in paragraph 55 above, I am advised that  despite

the deemed rejection by Class 7, the Debtors may proceed with confirmation of the plan because,

to the best of my knowledge, as informed by Debtors' counsel, the Plan does not discriminate

unfairly and is fair and equitable with respect to each class of claims and interests as required by

Section 1129(b) of the Bankruptcy Code.

57.    <u>Bankruptcy Code Section 1129(a)(9).</u>    Based on my understanding of the

Bankruptcy Code, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.  The Plan

provides that, except for Fee Claims, holders of allowed Administrative Expense Claims under

section 503(b) of the Bankruptcy Code will be paid in full, in Cash, on the later of the Effective

Date and the first Business Day after the date that is thirty (30) calendar days after the date such

Claim becomes Allowed, unless such holder agrees to less favorable treatment.   Moreover,

the Plan provides that, unless a holder agrees to less favorable treatment, holders of Allowed

Other Priority Claims under section 507(a) of the Bankruptcy Code will be paid in full, in

Cash, on the later of the Effective Date, the date on which such Priority Claim becomes Allowed and the date such Allowed Other Priority Claim is due and payable to the ordinary course of business, or as soon as reasonably practical thereafter. Based on my understanding of the Bankruptcy Code, I believe, therefore, that the Plan satisfies the requirements of section 1129(a)(9)(A) and (B).

58.    The Plan also satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code in respect of the treatment of Priority Tax Claims under section 507(a)(8). Under the Plan, except as otherwise may be agreed, holders of Allowed Priority Tax Claims will be paid in cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is Allowed on the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes Allowed, or (iii) the date such Claim is due and payable in the ordinary course as such obligation becomes due.

59.    <u>Bankruptcy Code Section 1129(a)(10).</u>    I believe that the Plan satisfies Bankruptcy Code section 1129(a)(10).  As set forth in the Ballot Certification, Class 2 (EVF1 Secured Claims) is a non-insider impaired class that has accepted the Plan.

60.    <u>Bankruptcy Code Section 1129(a)(11).</u>    I believe that the Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code as the Plan proposes the liquidation of the Debtors through the transfer of the Properties to EVF1 or its nominee or designee and EVF1 will establish and fund the Plan Fund which shall be utilized to make Plan payments.

61.    <u>Bankruptcy Code Section 1129(a)(12).</u>    The Plan provides that on the Effective Date, and thereafter as may be required, all fees payable under section 1930 of title 28

of the U.S. Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code, shall be paid by the Debtors or the Plan Administrator until such time as a final decree is entered closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed.

62.   <u>Bankruptcy Code Section 1129(a)(13).</u>  The Debtors have no retiree benefit plans and accordingly, section 1129(a)(13) is inapplicable.

63.   <u>Bankruptcy Code Section 1129(a)(14).</u>  The Debtors are not responsible for any domestic support obligations and accordingly, section 1129(a)(14) is inapplicable.

64.   <u>Bankruptcy Code Section 1129(a)(15).</u>  The Debtors are not an individual and accordingly, section 1129(a)(15) is not applicable.

65.   <u>Bankruptcy Code Section 1129(a)(16).</u>  The Debtors are a moneyed corporation and thus section 1129(a)(16) is not applicable.

66.   <u>Bankruptcy Code Section 1129(b).</u>  To the extent the Court does not deem Class 5 Tenant Claims to have accepted the Plan and as Class 7 Existing Equity Interests are deemed to have rejected the Plan, I am advised that the requirements of Section 1129(a)(8) are not satisfied. However, I am advised that the Debtors may seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.  To the best of my knowledge, as informed by counsel to the Debtors, the Plan does not discriminate unfairly and is fair and equitable with respect to each class of Claims and interests as required by Section 1129(b) of the Bankruptcy Code.

67.   Specifically, with respect to unsecured creditors, as I am informed by counsel for the Debtor, "fair and equitable" means that the claimant will receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim or that no class junior to the unsecured creditor class will receive any distribution.

68.     With respect to equity interests, as I am informed by counsel for the Debtors, "fair and equitable" in this case means that no creditor or interest holder junior in right of priority to Class 7 Equity Interests will receive or retain any property on account of their interests.

69.     In these Chapter 11 Cases, with respect to Class 4, no class junior to the unsecured creditor class will receive any distribution.  With respect to Class 7, Existing Equity Interests, equity would receive nothing in a chapter 7 liquidation and are not receiving any distribution from the Plan Fund.  No creditor or interest holder junior in right of priority to Class 7 Existing Equity Interests will receive or retain any property on account of their interests.  I therefore submit that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 4 General Unsecured Claims and Class 7 Existing Equity Interests.

70.     Based on the foregoing, I believe to the best of my knowledge, information and belief that to the extent applicable, the Plan satisfies the requirements of Section 1129(a) (other than Section 1129(a)(8)) and 1129(b) of the Bankruptcy Code.

71.     <u>Substantive Consolidation.</u> The Plan provides for the substantive consolidation of the Debtors and their estates for purposes of implementing the Plan. I am informed by counsel that substantive consolidation is a process by which the assets and liabilities of different debtor entities are consolidated and the various debtor entities are treated as a single entity. The consolidated assets create a single fund from which all of the claims against the consolidated debtors are satisfied.  Creditors of single entities before consolidation become creditors of the consolidated debtors, sharing in the assets of the consolidated estate.  Substantive consolidation also eliminates intercompany claims of the debtor companies and duplicate claims against the related debtors.   In addition, creditors of the consolidated entities are combined for purposes of voting on a plan of reorganization for the consolidated entity.

72.    If the Bankruptcy Court approves the Plan: (1) each of the Debtors and their respective estates shall be substantively consolidated for purposes of classification and distribution under the Plan, pursuant to Section 1123(a)(5)(C) of the Bankruptcy Code, and (2) all Allowed Claims in a particular Class shall be treated on a *pari passu* basis.  As a result of such consolidation, the Existing Equity Interests in the Debtors shall be deemed cancelled and surrendered, and all Claims of any of the Debtors against another Debtor shall be deemed cancelled.

73.    I believe the following facts support substantive consolidation of the Debtors and their respective estates.  First, the Debtors operated their business through one main operating entity, East Village Properties LLC. There was one operating account for all the Debtors. Second, the Debtors generally kept consolidated books and financial records, although the rent and expenses were allocated separately by Debtor entity.  Third, the Debtors shared the same officers and members.  All Debtors were owned by East Village Properties LLC.  Fourth, the payroll of management was for multiple properties.  Fifth, the service contracts with vendors were for more than one entity.  Sixth, the Debtors have many of the same creditors.  Seventh, the EVF1 loans were cross-collateralized on all of the Properties.

74.    All of the collections on accounts receivable made before the filing of the petitions were used by the various Debtors' estates to support the operations of the Debtors as a whole and to pay the expenses of the operating entities on an as needed basis. Virtually all expenses paid by the Debtors before the filing were paid by East Village Properties LLC and not by the other Debtor entities. Although the Debtors have kept separate books and accounts with respect to intercompany transactions, the unwinding of such transactions now would be impracticable and constitute an enormous expense to these estates.

75.     By consolidating the Debtors' Estates and creating a single Plan Fund to be distributed pursuant to the Plan, the Creditors of all Debtors benefit from the cost savings of the lower costs of the drafting and solicitation of a single Plan, as opposed to administering different plans for each Debtor, and the lower costs of administrating any litigation to recover on Estate claims and other Causes of Action. In addition, I believe that distributions to holders of Allowed Claims under the Plan providing for substantive consolidation will not be materially different than distributions under the Plan if it did not provide for substantive consolidation. Accordingly, I believe that substantive consolidation of the Debtors' Estates is warranted in these cases.

76.     In summary, to the best of my knowledge, information and belief, the Debtors have formulated, negotiated and proposed a Plan that treats all Classes of Claims and Interests fairly, equitably, and reasonably, and effectively accomplishes the liquidation of the Debtors through the sale of the Properties to EVF1 or its nominee or designee with EVF1 establishing and funding the Plan Fund for distribution in accordance with Bankruptcy Code priorities as set forth in the Plan.  To the best of my knowledge, information and belief, confirmation and consummation of the Plan is in the best interests of the Debtors' Estate and will maximize the return available to creditors. Accordingly, I respectfully request that the Plan be confirmed

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 10, 2021 at New York, New York.


/s/ David Goldwasser
David Goldwasser, Managing Member